**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

| | |
|---|---|
| PAUL J. MANAFORT, JR.<br>10 St. James Drive<br>Palm Beach Gardens, FL  33418 | )<br>)<br>)<br>) |
| *Plaintiff,* | )<br>)<br>) |
| v. | )<br>) |
| UNITED STATES DEPARTMENT<br>OF JUSTICE,<br>950 Pennsylvania Avenue, N.W.<br>Washington, D.C.  20004, | )<br>)<br>)<br>)<br>)<br>) |
| ROD J. ROSENSTEIN,<br>*in his official capacity as*<br>ACTING ATTORNEY GENERAL,<br>United States Department of Justice<br>950 Pennsylvania Avenue, N.W.<br>Washington, D.C.  20004, | )<br>)<br>)<br>)<br>)<br>)<br>) |
| and | )<br>) |
| ROBERT S. MUELLER III,<br>*in his official capacity as*<br>SPECIAL COUNSEL<br>Office of Special Counsel<br>395 E Street, S.W.<br>Washington, D.C.  20024,<br>        and<br>950 Pennsylvania Avenue, N.W.<br>Washington, D.C.  20004<br>        *Defendants.* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civ. No. 1:18-cv-00011

**COMPLAINT FOR**
**DECLARATORY AND**
**INJUNCTIVE RELIEF**

---

        Plaintiff Paul J. Manafort, Jr., brings this Complaint against defendants the United States

Department of Justice; Rod J. Rosenstein, in his official capacity as Acting Attorney General;

and Robert S. Mueller III, in his official capacity as Special Counsel, alleging as follows:

## NATURE OF THE ACTION

1.      This is a civil action under the Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq.*; the Declaratory Judgment Act, 28 U.S.C. § 2201; and for injunctive relief to restrict public officers to their lawful authority, against the United States Department of Justice ("DOJ"), Acting Attorney General Rod J. Rosenstein, and Robert S. Mueller III.

## BACKGROUND

2.      The principle that government must be both limited in power and accountable to the people lies at the core of our constitutional traditions.  That principle must be zealously guarded against creeping incursions.  One of the most notorious violations—the "wolf" that famously came "as a wolf"—was the now-defunct independent counsel law from the Ethics in Government Act of 1978, Pub. L. No. 95-521, 92 Stat. 1824.  *Morrison v. Olson*, 487 U.S. 654, 699 (1988) (Scalia, J., dissenting).  That law gave expansive prosecutorial authority to lawyers who were outside the Justice Department and thus lacked political accountability for their choices.

3.      The independent counsel law is now widely seen as "misguided" because it created "unaccountable prosecutors wielding infinite resources whenever there is a plausible allegation of a technical crime."  Gerard E. Lynch, *The Problem Isn't in the Starrs But in a Misguided Law*, WASH. POST, Feb. 22, 1998, at C3.  Because it permitted delegations of almost unbridled prosecutorial authority, the independent counsel regime is broadly recognized today as "utter[ly] incompatib[le] . . . with our constitutional traditions."  *Morrison*, 487 U.S. at 709 (Scalia, J., dissenting).

4.      The independent counsel statute expired in 1999 when Congress refused to reauthorize it.  That refusal reflected a "bipartisan judgment . . . that the Independent Counsel

was a kind of constitutional Frankenstein's monster, which ought to be shoved firmly back into the ice from which it was initially untombed."  Adrian Vermeule, Morrison v. Olson *Is Bad Law*, LAWFARE (June 9, 2017).

5.      Kenneth Starr, after serving as an independent counsel under the statute, urged Congress in testimony before the Senate to abandon the independent counsel project, calling it a "structurally unsound" and "constitutionally dubious" effort "to cram a fourth branch of government into [a] three-branch system."  Attorney General Janet Reno put her criticism of the independent counsel system in her testimony before the Senate even more bluntly:  "It can't get any worse."

6.      DOJ responded to Congress's decision not to re-authorize the independent counsel statute by promulgating regulations that give the Attorney General authority to appoint "special counsel" in connection with matters that may present a conflict of interest for the Department of Justice or the Executive Branch.  Given the constitutionally problematic nature of unlimited grants of investigatory and prosecutorial authority—and Congress's resulting decision to abolish the independent counsel regime—the Justice Department regulations carefully circumscribe that appointment authority and the scope of any appointments under it.

7.      This case arises from an appointment in excess of that limited authority—specifically, Acting Attorney General Rod J. Rosenstein's order appointing Robert S. Mueller III as Special Counsel in May 2017 ("the Appointment Order"), attached hereto as Exhibit A.

8.      Consistent with DOJ's special counsel regulations, the Appointment Order gives Mr. Mueller authority to investigate a specific matter: "links and/or coordination between the Russian government and individuals associated with the campaign of President Donald Trump." But the Appointment Order then purports to grant Mr. Mueller the additional authority to pursue

"any matters that arose or may arise directly from" that investigation.  As explained below, that exceeds the scope of Mr. Rosenstein's authority to appoint special counsel as well as specific restrictions on the scope of such appointments.  Indeed, the Appointment Order in effect purports to grant Mr. Mueller *carte blanche* to investigate and pursue criminal charges in connection with ***anything*** he stumbles across while investigating, no matter how remote from the specific matter identified as the subject of the Appointment Order.

9.      As a result of the *ultra vires* Appointment Order, Mr. Mueller's investigation of Mr. Manafort has extended far beyond "links and/or coordination between the Russian government and individuals associated with the campaign of President Donald Trump."  The investigation has focused on Mr. Manafort's offshore business dealings that date back to as early as 2005—about a decade before the Trump presidential campaign launched—and have been known to the United States government for many years.

10.      On October 27, 2017, the Office of the Special Counsel caused an indictment against Mr. Manafort to be returned.  The indictment does not charge any links between Mr. Manafort and the Russian government.  Instead, the Special Counsel has constructed an indictment that, at its essence, concerns failing to file certain informational reports of offshore bank accounts and failing to register as a foreign agent.  None of the charges relate to Mr. Manafort's activities during his brief stint in 2016 as the campaign manager for the Trump presidential campaign.

11.      The actions of DOJ and Mr. Rosenstein in issuing the Appointment Order, and Mr. Mueller's actions pursuant to the authority the Order granted him, were arbitrary, capricious, and not in accordance with the law under 5 U.S.C. § 706.  By this action, Mr. Manafort asks this Court to hold those actions *ultra vires* and set them aside.  *Id.*  Like the independent counsel

statute that came before it, this Appointment Order "ought to be shoved firmly back into the ice from which it was initially untombed."

## THE PARTIES

12.    Plaintiff Paul J. Manafort, Jr., is a United States citizen and natural person who resides in Palm Beach Gardens, Florida.  From late March 2016 until early August 2016, he served as the campaign manager for then-presidential candidate Donald J. Trump.

13.    Defendant United States Department of Justice is an executive agency of the United States responsible for the enforcement of federal civil and criminal laws.

14.    Defendant Rod J. Rosenstein is the current Deputy Attorney General of the United States.  At all times relevant to the facts alleged herein, Mr. Rosenstein served as the Acting Attorney General of the Department of Justice.  Mr. Rosenstein is sued in his official capacity.

15.    Defendant Robert S. Mueller III is the Special Counsel appointed in the May 17, 2017 Appointment Order.  Mr. Mueller is sued in his official capacity.

## JURISDICTION AND VENUE

16.    This is an action seeking relief under the APA, 5 U.S.C. §§ 701 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. § 2201.  Because this action arises under the laws of the United States, this Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331.

17.    This Court has personal jurisdiction over all defendants pursuant to D.C. Code § 13-423(a)(1) because they transact substantial business in this district.

18.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e) because this is an action against an agency and officers of the United States, and a substantial part of the events giving rise to the claims alleged herein occurred in this district.

## STATUTORY AND REGULATORY BACKGROUND

19.     Section 515(a) of Title 28 of the U.S. Code provides that all attorneys who conduct legal proceedings under the Attorney General's authorization must be "specially appointed by the Attorney General under law" and "specifically directed by the Attorney General."

20.     DOJ has promulgated regulations implementing that provision—and restricting the scope of appointment authority—to protect against the excesses the Nation experienced under the independent counsel regime.  Those DOJ special counsel regulations appear at 28 C.F.R. §§ 600.1-600.10.

21.     DOJ's special counsel regulations specify (a) the scope of the original jurisdiction the Attorney General or Acting Attorney General (hereinafter "Attorney General") may grant to a special counsel, and (b) the mechanism by which that jurisdiction may be extended later on.

22.     With respect to the "original jurisdiction" of special counsel, DOJ's special counsel regulations provide as follows:

> (a)     *Original jurisdiction.*  The jurisdiction of a Special Counsel shall be established by the Attorney General.  The Special Counsel will be provided with a specific factual statement of the matter to be investigated.  The jurisdiction of a Special Counsel shall also include the authority to investigate and prosecute federal crimes committed in the course of, and with intent to interfere with, the Special Counsel's investigation, such as perjury, obstruction of justice, destruction of evidence, and intimidation of witnesses; and to conduct appeals arising out of the matter being investigated and/or prosecuted.

28 C.F.R. § 600.4(a).

23.     With respect to "additional jurisdiction," DOJ's special counsel regulations provide:

   (b)   *Additional jurisdiction.*  If in the course of his or her investigation the Special Counsel concludes that additional jurisdiction beyond that specified in his or her original jurisdiction is necessary in order to fully investigate and resolve the matters assigned, or to investigate new matters that come to light in the course of his or her investigation, he or she shall consult with the Attorney General, who will determine whether to include the additional matters within the Special Counsel's jurisdiction or assign them elsewhere.

28 C.F.R. § 600.4(b).

24.    DOJ's special counsel regulations thus carefully limit the "[o]riginal jurisdiction" the Attorney General can give special counsel, requiring "a ***specific*** factual statement" by the Attorney General of "the matter to be investigated."  28 C.F.R. § 600.4(a) (emphasis added).  The regulations automatically provide further "authority to investigate and prosecute federal crimes committed ***in the course of, and with intent to interfere with***, the Special Counsel's investigation" such as obstruction, perjury, etc.  *Id.* (emphasis added).  But any "additional jurisdiction" beyond that—to investigate or prosecute matters outside the "specific factual statement of the matter to be investigated" or obstruction and perjury designed to interfere with the investigation—can be granted only ***after*** the special counsel "consult[s] with the Attorney General, who will determine whether to include the additional matters within the Special Counsel's jurisdiction or assign them elsewhere."  *Id.* § 600.4(a), (b).

25.    Those carefully crafted jurisdictional limitations serve critical values.  They ensure that the scope of an investigation is limited to specific matters identified in advance by a politically accountable official—the Attorney General.  They ensure that any additional matters beyond that are specifically approved by a politically accountable official—the Attorney General.  Those limitations prevent the special counsel from becoming an unaccountable roving

commission, with virtually unlimited resources, that can delve into citizens' lives in search of criminality unrelated to the specific matters the special counsel was appointed to address.

26.     This suit arises from an appointment and the exercise of authority in defiance of those jurisdictional limitations.  Whether DOJ's special counsel regulations themselves "create any rights," 28 C.F.R. § 600.10, they bind DOJ and the officers within DOJ.  DOJ and its officials cannot grant a special counsel jurisdiction where DOJ regulations, such as 28 C.F.R. § 600.4, deny DOJ and its officials power to do so.  Nor can the special counsel exercise jurisdiction that otherwise binding DOJ regulations prohibit.  Those, however, are precisely the circumstances here.

## FACTUAL ALLEGATIONS

### *The Appointment Order*

27.     By early 2017, DOJ had publicly revealed that it was investigating allegations that President Trump's campaign colluded with Russian government officials and/or representatives to sway the outcome of the 2016 presidential election.

28.     Attorney General Jeff Sessions recused himself from the matter in March 2017.

29.     With the Attorney General's recusal, Deputy Attorney General Rod J. Rosenstein became the highest-ranking DOJ official with authority over the investigation.

30.     Rather than have DOJ itself continue the investigation, on May 17, 2017, Mr. Rosenstein issued the Appointment Order authorizing Mr. Mueller—then an attorney in private practice—to conduct an investigation as special counsel.

31.     Providing the required "specific factual statement of the matter to be investigated," 28 C.F.R. § 600.4(a), paragraph (b)(i) of the Appointment Order gives Mr. Mueller

original jurisdiction to investigate "any links and/or coordination between the Russian government and individuals associated with the campaign of President Donald Trump."

32.    Consistent with 28 C.F.R. § 600.4(a)—which provides that special counsels "shall also" have "authority to investigate and prosecute federal crimes committed in the course of, and with intent to interfere with," their investigations—paragraph (b)(iii) of the Appointment Order provides that Mr. Mueller may also pursue "any other matters within the scope of 28 C.F.R. § 600.4(a)."

33.    But paragraph (b)(ii) of the Appointment Order purports to grant Mr. Mueller further authority to investigate and prosecute "***any matters*** that ***arose or may arise*** directly from the investigation."   That grant of authority is not authorized by DOJ's special counsel regulations.  It is not a "specific factual statement of the matter to be investigated."  Nor is it an ancillary power to address efforts to impede or obstruct investigation under 28 C.F.R. § 600.4(a).

34.    DOJ's special counsel regulations do address "new matters that come to light in the course of" the special counsel's "investigation," but not by authorizing a grant of original jurisdiction to pursue them.  28 C.F.R. § 600.4(b).  To the contrary, DOJ's special counsel regulations specify that, whenever the special counsel "concludes that additional jurisdiction" is required to address "new matters that come to light in the course of" an investigation, the special counsel must "consult with the Attorney General," who must then "determine whether to include the additional matters within the Special Counsel's jurisdiction or assign them elsewhere." *Id.*

35.    The effort to convey that "additional" authority to pursue any matters that might come to light, as part of the grant of original jurisdiction, without the required consultation and decision by the Attorney General, exceeds the scope of appointment authority under 28 C.F.R. § 600.4.  It also defies the principles of limited power and accountability that animate those limits

on the Attorney General's appointment authority.   Under the Appointment Order, the Special

Counsel's authority is not confined to the specific matters identified by politically accountable

officials:   The Appointment Order purports to grant authority to the Special Counsel to expand

the scope of his investigation to new matters without the consent of—indeed, without even

consulting—any politically accountable officer of the United States.

### *Mr. Mueller's Investigation of Matters Beyond His Original Jurisdiction*

36.     Early in the process, Mr. Mueller's investigation diverged from its focus on

alleged collusion between the Russian government and President Trump's campaign toward Mr.

Manafort, who served as President Trump's campaign manager for a few months in 2016.

37.     The investigation of Mr. Manafort is completely unmoored from the Special

Counsel's original jurisdiction to investigate "any links and/or coordination between the Russian

government and individuals associated with the campaign of President Donald Trump."   It has

instead focused on unrelated, decade-old business dealings—specifically, Ukraine political

campaign consulting activities of Mr. Manafort.

38.     The Special Counsel has paid particular attention to the involvement of Mr.

Manafort's company in a lobbying campaign that ***ended in 2014***, Mr. Manafort's bank accounts

and tax filings ***through 2014***, and the personal expenditures Mr. Manafort allegedly made using

funds earned from his political consulting work.

39.     Those alleged dealings had no connection whatsoever to the ***2016*** presidential

election or even to Donald Trump.   Nor were they uncovered in the course of the Special

Counsel's probe into President Trump's campaign.   On the contrary, those allegations had been

widely known since at least 2007, when prominent news outlets reported that, in 2005, Mr.

Manafort had begun working for Viktor Yanukovych, a Ukrainian politician, to reinvent his

public image.  Other reports around the same time claimed that Mr. Manafort's company never registered as a lobbying entity for Mr. Yanukovych even though Mr. Manafort met with the United States Ambassador on Mr. Yanukovych's behalf.

40.     On July 30, 2014, Mr. Manafort voluntarily met with DOJ prosecutors and FBI agents to discuss his offshore political consulting activities.  During the interview, Mr. Manafort provided a detailed explanation of his activities in Ukraine, including his frequent contact with a number of previous U.S. Ambassadors in Kiev and his efforts to further U.S. objectives in Ukraine on their behalf.   He further discussed his offshore banking activity in Cyprus. Throughout the process, DOJ maintained that they were assisting the Ukrainian government in locating stolen assets.  The investigation focused on the activities of a former Ukraine President and was closed soon after Mr. Manafort's interview.

41.     The Office of the Special Counsel charged Mr. Manafort with the very conduct he voluntarily disclosed to DOJ almost three years prior to the appointment of Mr. Mueller as Special Counsel.  The charged conduct does not relate to the specific matter designated in the Appointment Order, nor did it arise from the Special Counsel's investigation.   The Special Counsel's investigation and indictment resulted from a violation of numerous DOJ policies and procedures and otherwise far exceeds any lawful authority to investigate links between individuals associated with the Trump campaign and the Russian government.

42.     Again pursuing conduct with no relationship to the 2016 election, or collusion with Russians, in July 2017, Mr. Mueller applied for, obtained, and caused to be executed a search warrant of Mr. Manafort's home in Alexandria, Virginia.  The Special Counsel justified that search by asserting that the Appointment Order grants him jurisdiction and authority to obtain materials that purportedly evidence potential criminal tax and white-collar crimes

committed on or after *January 1, 2006*.  In August 2017, Mr. Mueller issued more than one hundred subpoenas related to Mr. Manafort, requesting records dating back to *January 1, 2005.*

43.     Prosecutors in Mr. Mueller's office have admitted that the Special Counsel's investigation of Mr. Manafort concerns conduct that has nothing to do with the charges in the Appointment Order's original jurisdiction clause.  On August 3, 2017, a lead prosecutor in Mr. Mueller's office represented to then-counsel for Mr. Manafort that the Special Counsel was authorized to prosecute Mr. Manafort for crimes committed during the *tax year 2010*—five years before Mr. Trump launched his campaign on June 16, 2015.

44.     On September 12, 2017, undersigned counsel for Mr. Manafort sent a letter to Mr. Rosenstein requesting that he confirm or deny that, prior to July 26, 2017, he granted Mr. Mueller additional jurisdiction to investigate Mr. Manafort for potential tax crimes and other white-collar criminal offenses dating back to January 1, 2006, and that prior to August 3, 2017, he authorized Mr. Mueller to prosecute Mr. Manafort for tax crimes related to the 2010 tax year. Mr. Rosenstein has not responded; nor has anyone else from his office.

### *Mr. Manafort's Indictment*

45.     On October 27, 2017, Mr. Mueller signed an indictment, attached hereto as Exhibit B, charging Mr. Manafort and a business associate with several offenses pertaining to business dealings that, with limited exceptions, predate Mr. Trump's campaign.

46.     The indictment charged Mr. Manafort with the following offenses, many of which began nearly a decade before the Trump campaign launched:

- one count of conspiracy against the United States between *2006* and 2017;

- one count of conspiracy to launder money between *2006* and 2016;

- four counts of failure to file reports of foreign bank and financial accounts for calendar years *2011-2014*;

- one count of being an unregistered agent of a foreign principal (*i.e.*, "the Government of Ukraine, the Party of Regions, and Yanukovych") between *2008 and 2014*;

- one count of making a false and misleading Foreign Agents Registration Act statement in 2016 and 2017 in a document furnished to the Attorney General; and

- one count of making a false statement in 2016 and 2017.

47.    The indictment centers on an alleged scheme that began in *2006* when Mr. Manafort and a business associate started a company that engaged principally in political consulting and lobbying work on behalf of foreign clients, including the Government of Ukraine. According to the indictment, Mr. Manafort wired sums of money from offshore accounts into the United States, failed to report that money as income from his business, and failed to pay taxes on that money.  Those allegations have nothing to do with the 2016 presidential election or any alleged collusion with Russian officials.

48.    The indictment also alleged that from *2006 until 2014*, Mr. Manafort and his company engaged in a lucrative lobbying campaign in the United States at the direction of the Government of Ukraine, a Ukrainian political party, and Mr. Yanukovych, without registering that they had acted as agents of those entities, as required by law.  That charge likewise has nothing to do with the 2016 presidential campaign or alleged collusion with Russian officials.

49.    To date, Mr. Manafort has suffered economic injury, reputational harm, and invasion of his privacy—including unconsented entry into his home—as a result of those *ultra vires* acts.  Mr. Manafort has also been forced to expend substantial sums of money defending

against the investigation and indictment.  Those harms will continue unabated unless Mr. Manafort obtains the relief requested herein.

## COUNT ONE
### (*Ultra Vires* Appointment Order
### Against DOJ and Mr. Rosenstein Only)

50.     Plaintiff re-alleges the allegations set forth in paragraphs 1-49 above as if fully set forth herein.

51.     This action challenges the Appointment Order Mr. Rosenstein issued in his capacity as Acting Attorney General.  The issuance of that order constitutes final agency action that is reviewable under the APA.

52.     The Appointment Order exceeds the Deputy Attorney General's authority under DOJ's special counsel regulations.  Specifically, DOJ and Acting Attorney General Rod J. Rosenstein exceeded the authority provided by 28 C.F.R. § 600.4 by purporting to give Special Counsel Robert S. Mueller III original jurisdiction to address any new matters that come to his attention during the course of the investigation, without consulting or obtaining approval from the Attorney General or Acting Attorney General.  The Appointment Order is thus arbitrary and capricious, an abuse of discretion, and otherwise not in accordance with law.  It must be set aside under the APA.

53.     Because the Appointment Order itself exceeds the DOJ's authority, insofar as it purports to authorize an investigation beyond links between the Trump campaign and the Russian government, all actions taken pursuant to the authority it purports to grant the Special Counsel are likewise *ultra vires* and must be set aside.

54.     This action satisfies all procedural requirements for an APA claim.

55.     DOJ constitutes an "agency" whose actions are reviewable under the APA.

56.     The Appointment Order constitutes "final agency action" that is subject to judicial review because it is a final order through which Mr. Rosenstein consummated his selection and appointment of Mr. Mueller as Special Counsel and in which he fully set out the Special Counsel's jurisdiction.

57.     Other than the relief requested, there is no adequate remedy in a court for the harm caused Mr. Manafort by the *ultra vires* Appointment Order.

58.     Mr. Manafort is "adversely affected or aggrieved" and damaged in his legal rights by the Appointment Order because it subjects him to an *ultra vires* exercise of authority and has caused him to suffer significant reputational harm, financial expense, and invasion of his personal privacy.

59.     As a target of the *ultra vires* investigation, Mr. Manafort is within the zone of interests protected by the special counsel regulations and the relevant statutory provisions governing DOJ.

**COUNT TWO**
**(Conduct Beyond Original Jurisdiction**
**Against Mr. Mueller Only)**

60.     Plaintiff re-alleges the allegations set forth in paragraphs 1-59 above as if fully set forth herein.

61.     This action challenges the conduct of Mr. Mueller as beyond his jurisdiction under the Appointment Order.  The actions of the Special Counsel are reviewable under the Declaratory Judgment Act and under the long-recognized authority of the federal courts to grant equitable relief to prevent injurious acts by public officers.

62.     The Appointment Order purports to give Mr. Mueller jurisdiction over conduct unrelated to and predating the Trump campaign if it "arose . . . directly from the investigation"

into "links and/or coordination between the Russian government and individuals associated with the [Trump] campaign."

63.     Even if that grant of authority were lawful, Mr. Mueller's investigation and the resulting indictment exceed it.   The indictment raises stale allegations DOJ must have been aware of for nearly a decade; they are not matters that "arose  . . . from the investigation" into the 2016 election and alleged collusion with the Russian government.  By ignoring the boundaries of the jurisdiction granted to the Special Counsel in the Appointment Order, Mr. Mueller acted beyond the scope of his authority.  Mr. Mueller's actions must be set aside.

64.     For the same reasons, Mr. Mueller should be enjoined from further investigating any alleged conduct by Mr. Manafort that is unrelated to and predates his involvement with the Trump campaign, as well as any conduct that does not arise directly from the limited investigation authorized by the original jurisdiction clause of the Appointment Order.

65.     Mr. Manafort has been injured by Mr. Mueller's actions in excess of the jurisdiction conferred by the Appointment Order, which have caused him significant reputational harm, have exposed him to invasions of his personal privacy, and have forced him to incur substantial costs and expenses to defend himself.

66.     Other than the relief requested, there is no adequate remedy at law for the harm caused Mr. Manafort by the Special Counsel's *ultra vires* conduct.

67.     For the reasons set forth above, Mr. Manafort should be awarded injunctive relief should he prevail on the merits:   He has suffered irreparable injury, remedies at law are inadequate to compensate for that injury, the balance of hardships warrants injunctive relief, and the public interest would not be disserved by a permanent injunction.

## **PRAYER FOR RELIEF**

WHEREFORE, judgment should be entered in favor of Plaintiff and against Defendants, jointly and severally, and the Court should grant the following relief:

a.    an order and judgment setting aside the Appointment Order and declaring it invalid, arbitrary and capricious, an abuse of discretion, and otherwise not in accordance with law;

b.    an order and judgment declaring *ultra vires* and setting aside all actions taken against Mr. Manafort pursuant to the Appointment Order;

c.    an order and judgment declaring that Mr. Mueller lacks authority to investigate business dealings not arising from the original jurisdiction set out in the Appointment Order;

d.    an order and judgment enjoining Mr. Mueller from investigating matters beyond the scope of the grant of jurisdiction in the Appointment Order; and

e.    any other relief as may be just and proper.


Dated: January 3, 2018                                      Respectfully submitted,


                                                                          /s/ Kevin M. Downing
                                                                          Kevin M. Downing
                                                                          (D.C. Bar #1013894)
                                                                          815 Connecticut Ave., N.W.,
                                                                          Suite 730
                                                                          Washington, D.C.  20006

                                                                          Thomas E. Zehnle
                                                                          (D.C. Bar #415556)
                                                                          Frank P. Cihlar
                                                                          (D.C. Bar #102459)