**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

PAUL J. MANAFORT, JR.,

       *Plaintiff*,

   v.

U.S. DEPARTMENT OF JUSTICE, ROD J. ROSENSTEIN, and ROBERT S. MUELLER III,

       *Defendants*.

No. 1:18-cv-00011-ABJ

## <u>DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS</u>

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. ii

TABLE OF AUTHORITIES .......................................................................................... iv

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................. 3

I.       Legal Framework ................................................................................................ 3

II.      Factual and Procedural History ......................................................................... 6

         A.       Special Counsel Mueller's Appointment and Ongoing Investigation ................... 6

         B.       Criminal Proceedings Against Manafort ................................................ 7

         C.       Procedural History of This Civil Case ................................................... 8

STANDARD OF REVIEW ............................................................................................. 9

ARGUMENT ................................................................................................................. 10

I.       Civil Lawsuits Cannot Be Used to Collaterally Attack Ongoing Criminal
         Prosecutions .................................................................................................... 11

         A.       Federal Courts Are Prohibited from Interfering with Ongoing Criminal
                  Prosecutions ........................................................................................ 11

         B.       The Rule Against Interference in an Ongoing Criminal Matter Compels
                  Dismissal of the Present Civil Action ................................................... 16

                  1.       Manafort's Underlying Criminal Action Provides an Adequate
                           Forum for His Arguments ....................................................... 16

                  2.       This Lawsuit Plainly Seeks to Interfere with Manafort's Ongoing
                           Criminal Prosecution .............................................................. 18

II.      Count I Should Be Dismissed Because it Fails to Satisfy Threshold Requirements
         for APA Review ................................................................................................ 19

         A.       An APA Claim is Unavailable Because Manafort Has an Alternate,
                  Adequate Remedy in His Underlying Criminal Action ......................... 20

         B.       Manafort Cannot Use the APA to Challenge Internal DOJ Procedures for
                  Prosecutorial Assignments ................................................................... 21

1.    The Special Counsel Regulations Provide No Enforceable Rights .......... 22

2.    Manafort Cannot Bring an APA Claim Because He Is Outside the
      Zone of Interests of the Relevant Statutes ................................................ 24

3.    Manafort Is Not Challenging Any Final Agency Action .......................... 26

III.   Count II Should Be Dismissed Because the Declaratory Judgment Act Does Not
       Itself Provide a Basis for Judicial Review, and *Ultra Vires* Review is Unavailable ........ 28

       A.    The Declaratory Judgment Act Does Not Provide for Judicial Review ............... 28

       B.    An *Ultra Vires* Cause of Action is Also Unavailable ........................................... 29

CONCLUSION ....................................................................................................................... 34

# TABLE OF AUTHORITIES

## <u>CASES</u>

*Air Transp. Ass'n of Am. v. FAA*,
   169 F.3d 1 (D.C. Cir. 1999) ................................................... 24

*Al-Aulaqi v. Panetta*,
   35 F. Supp. 3d 56 (D.D.C. 2014) ........................................... 10

*Ali v. Rumsfeld*,
   649 F.3d 762 (D.C. Cir. 2011) ........................................... 28-29

*Ali v. United States*,
   2012 WL 4103867 (W.D.N.Y. Sept. 14, 2012) ....................... 14

*Aluminum Co. of Am. v. United States*,
   790 F.2d 938 (D.C. Cir. 1986) ............................................... 28

*Am. Fed'n of Gov't Emps., AFL-CIO v. Rumsfeld*,
   321 F.3d 139 (D.C. Cir. 2003) ............................................... 25

*Anderson v. United States*,
   764 F.2d 849 (Fed. Cir. 1985) ............................................... 18

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................. 9

*Ass'n of Civilian Technicians, Inc. v. FLRA*,
   283 F.3d 339 (D.C. Cir. 2002) ............................................... 32

*3021 6th Ave. N., Billings, MT v. United States*,
   237 F.3d 1039 (9th Cir. 2001) ............................................... 15

*Bannum, Inc. v. Sawyer*,
   251 F. Supp. 2d 7 (D.D.C. 2003) ..................................... 27, 28

*Bd. of Governors of Fed. Reserve Sys. v. MCorp Fin., Inc.*,
   502 U.S. 32 (1991) ................................................................. 30

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................. 9

*Bennett v. Spear*,
   520 U.S. 154 (1997) ............................................................... 26

*Brown v. Gen. Servs. Admin.*,
   425 U.S. 820 (1976) ........................................................................................... 18

*Campbell v. Medalie*,
   71 F.2d 671 (2d Cir. 1934) ................................................................................. 14

*Citizens for Responsibility & Ethics in Wash. (CREW) v. Dep't of Justice*,
   846 F.3d 1235 (D.C. Cir. 2017) .................................................................... 20, 21

*Christoforu v. United States*,
   842 F. Supp. 1453 (S.D. Fla. 1994) .................................................................... 14

*Chrysler Corp. v. Brown*,
   441 U.S. 281 (1979) ........................................................................................... 26

*Comm. on Oversight & Gov't Reform v. Holder*,
   979 F. Supp. 2d 1 (D.D.C. 2013) ....................................................................... 29

*Dart v. United States*,
   848 F.2d 217 (D.C. Cir. 1988) ........................................................................... 32

*\*Deaver v. Seymour*,
   822 F.2d 66 (D.C. Cir. 1987) ..................................................................... *passim*

*Deaver v. United States*,
   483 U.S. 1301 (1987) ......................................................................................... 13

*Defs. of Wildlife v. Jackson*,
   791 F. Supp. 2d 96 (D.D.C. 2011) ..................................................................... 24

*Detroit Int'l Bridge Co. v. Gov't of Canada*,
   133 F. Supp. 3d 70 (D.D.C. 2015) ..................................................................... 29

*DiBella v. United States*,
   369 U.S. 121 (1962) ........................................................................................... 15

*Doe v. U.S. Parole Comm'n*,
   602 F. App'x 530 (D.C. Cir. 2015) .................................................................... 29

*Dugan v. Rank*,
   372 U.S. 609 (1963) ........................................................................................... 31

*EEOC v. St. Francis Xavier Parochial Sch.*,
   117 F.3d 621 (D.C. Cir. 1997) ........................................................................... 10

*Exxon Chemicals Am. v. Chao*,
  298 F.3d 464 (5th Cir. 2002) ......................................................................... 31

*Fla. Health Scis. Ctr., Inc. v. Sec'y of Health & Human Servs.*,
  830 F.3d 515 (D.C. Cir. 2016) .................................................................. 32, 33

*FTC v. Standard Oil Co. of Cal.*,
  449 U.S. 232 (1980) ............................................................................. 27, 27-28

*Garcia v. Vilsack*,
  563 F.3d 519 (D.C. Cir. 2009) .................................................................. 20, 21

*Glenn v. Thomas Fortune Fay*,
  222 F. Supp. 3d 31 (D.D.C. 2016) ............................................................... 29

*Griffith v. FLRA*,
  842 F.2d 487 (D.C. Cir. 1988) .................................................................. 30, 32

*Hartford Assocs. v. United States*,
  792 F. Supp. 358 (D.N.J. 1992) ................................................................ 14, 16

*Heckler v. Chaney*,
  470 U.S. 821 (1985) ....................................................................................... 24

*Herron v. Fannie Mae*,
  861 F.3d 160 (D.C. Cir. 2017) ........................................................................ 9

*\*In re Al-Nashiri*,
  835 F.3d 110 (D.C. Cir. 2016) ....................................................... 2, 13, 14, 16

*\*In re Sealed Case*,
  829 F.2d 50 (D.C. Cir. 1987) ........................................................... 4, 13, 19

*In re Sealed Case*,
  131 F.3d 208 (D.C. Cir. 1997) ...................................................................... 34

*In re Sealed Case*,
  716 F.3d 603 (D.C. Cir. 2013) ...................................................................... 15

*Jankovic v. Int'l Crisis Grp.*,
  494 F.3d 1080 (D.C. Cir. 2007) .................................................................... 10

*Jernigan v. State of Mississippi*,
  812 F. Supp. 688 (S.D. Miss. 1993) ............................................................. 14

*Kajtazi v. Johnson-Skinner*,
   2017 WL 436038 (S.D.N.Y. Jan. 30, 2017) ............................................................. 14

*Kugel v. United States*,
   947 F.2d 1504 (D.C. Cir. 1991) ............................................................................... 23

*Kugler v. Helfant*,
   421 U.S. 117 (1975) ................................................................................................. 14

*Larson v. Domestic & Foreign Commerce Corp.*,
   337 U.S. 682 (1949) ........................................................................................... 30, 31

*Leedom v. Kyne*,
   358 U.S. 184 (1958) ...................................................................................... 30, 31, 32

*Lepre v. Dep't of Labor*,
   275 F.3d 59 (D.C. Cir. 2001) ................................................................................... 30

*Lexmark Int'l Inc. v. Static Control Components, Inc.*,
   134 S. Ct. 1377 (2014) ........................................................................................ 24, 25

*Lopez v. FAA*,
   318 F.3d 242 (D.C. Cir. 2003) ................................................................................. 22

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*,
   567 U.S. 209 (2012) ................................................................................................. 24

*McKinney v. White*,
   291 F.3d 851 (D.C. Cir. 2002) ................................................................................. 18

*Metz v. BAE Sys. Tech. Solutions & Servs. Inc.*,
   774 F.3d 18 (D.C. Cir. 2014) ................................................................................... 29

*Miranda v. Gonzales*,
   173 F. App'x 840 (D.C. Cir. 2006) .......................................................................... 13

*Mohamed v. Select Portfolio Servicing, Inc.*,
   215 F. Supp. 3d 85 (D.D.C. 2016) ........................................................................... 29

*Morrison v. Olson*,
   487 U.S. 654 (1988) ................................................................................................... 4

*Nat'l Air Traffic Controllers Ass'n AFL-CIO v. Fed. Serv. Impasses Panel*,
   437 F.3d 1256 (D.C. Cir. 2006) ............................................................................... 32

*Nat'l Ass'n of Home Builders v. Norton,*
  415 F.3d 8 (D.C. Cir. 2005) ........................................................ 28

*Nat'l Fed'n of Fed. Emps. v. Cheney,*
  883 F.2d 1038 (D.C. Cir. 1989) ................................................... 25

*Nichols v. Reno,*
  124 F.3d 1376 (10th Cir. 1997) ............................................... 23-24

*NLRB v. United Food & Commercial Workers Union,*
  484 U.S. 112 (1987) .................................................................... 21

*\*North v. Walsh,*
  656 F. Supp. 414 (D.D.C. 1987) ........................................ 13, 16, 17, 19

*Nyunt v. Chairman, Broad. Bd. of Governors,*
  589 F.3d 445 (D.C. Cir. 2009) ................................................ 29, 30

*Pa. Mun. Authorities Ass'n v. Johnson,*
  No. 04-5073, 2005 WL 2491482 (D.C. Cir. June 3, 2005) .................. 31

*Physicians Nat'l House Staff Ass'n v. Fanning,*
  642 F.2d 492 (D.C. Cir. 1980) ................................................ 31, 32

*Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n,*
  324 F.3d 726 (D.C. Cir. 2003) ................................................... 27

*Reporters Comm. for Freedom of Press v. AT&T Co.,*
  593 F.2d 1030 (D.C. Cir. 1978) ................................................. 16

*Rodriguez v. Shulman,*
  843 F. Supp. 2d 96 (D.D.C. 2012) ............................................. 23

*Schilling v. Rogers,*
  363 U.S. 666 (1960) .................................................................... 28

*Schlegel v. Holder,*
  2014 WL 12607718 (D. Minn. May 21, 2014) .............................. 14

*Schroer v. Billington,*
  525 F. Supp. 2d 58 (D.D.C. 2007) ............................................. 29

*Schweiker v. Hansen,*
  450 U.S. 785 (1981) ............................................................. 22, 24

*Seized Prop. Recovery, Corp. v. U.S. Customs & Border Prot.*,
   502 F. Supp. 2d 50 (D.D.C. 2007) ........................................................... 29

*Superlease Rent-A-Car, Inc. v. Budget Rent-A-Car of Md.*,
   1989 WL 39393 (D.D.C. Apr. 13, 1989)................................................... 29

*Town of Stratford v. FAA*,
   285 F.3d 84 (D.C. Cir. 2002) .................................................................. 25

*Trudeau v. FTC*,
   456 F.3d 178 (D.C. Cir. 2006) ................................................................ 29

*United Space All., LLC v. Solis*,
   824 F. Supp. 2d 68 (D.D.C. 2011) ......................................................... 22

*United States v. Armstrong*,
   517 U.S. 456 (1996)...................................................................... *passim*

*United States v. Blackley*,
   167 F.3d 543 (D.C. Cir. 1999) ........................................................ 23, 24

*United States v. Caceres*,
   440 U.S. 741 (1979)............................................................................... 22

*United States v. Craveiro*,
   907 F.2d 260 (1st Cir. 1990) .................................................................. 24

*United States v. Fernandez*,
   231 F.3d 1240 (9th Cir. 2000) ............................................................... 23

*United States v. Fitzhugh*,
   78 F.3d 1326 (8th Cir. 1996) .............................................................26-27

*United States v. Hollywood Motor Car Co.*,
   458 U.S. 263 (1982)............................................................................... 15

*United States v. Instruments, S.A.*,
   807 F. Supp. 811 (D.D.C. 1992) ........................................................... 29

*United States v. Lee*,
   274 F.3d 485 (8th Cir. 2001) ................................................................. 24

*United States v. Libby*,
   429 F. Supp. 2d 27 (D.D.C. 2006) ..................................................... 4, 26

*United States v. Nixon,*
    418 U.S. 683 (1974) .................................................................... 4

*United States v. Piervinanzi,*
    23 F.3d 670 (2d Cir. 1994) ........................................................ 24

*United States v. Tucker,*
    78 F.3d 1313 (8th Cir. 1996) ...................................................... 4

*United States v. U.S. Dist. Ct. for N. Mariana Islands,*
    694 F.3d 1051 (9th Cir. 2012) .................................................. 26

*United States v. Wilson,*
    413 F.3d 382 (3d Cir. 2005) ...................................................... 23

*United States v. Wrigley,*
    520 F.2d 362 (8th Cir. 1975) .................................................... 26

*Wash. Metro. Area Transit Auth. v. Ragonese,*
    617 F.2d 828 (D.C. Cir. 1980) .................................................. 16

*Wayte v. United States,*
    470 U.S. 598 (1985) .................................................................. 32

*Women's Equity Action League v. Cavazos,*
    906 F.2d 742 (D.C. Cir. 1990) .................................................. 20

*\*Younger v. Harris,*
    401 U.S. 37 (1971) ............................................................ *passim*

## STATUTES

5 U.S.C. § 301 .......................................................................... 25, 26

5 U.S.C. § 701(a)(1) ...................................................................... 21

5 U.S.C § 702 .................................................................................. 24

5 U.S.C. § 704 .................................................................... 20, 21, 26

28 U.S.C § 509 ........................................................................... 6, 25

28 U.S.C § 510 .................................................................. 3, 6, 25, 26

28 U.S.C § 515 ................................................................... 3-4, 6, 26

28 U.S.C. § 516 ............................................................................................................. 3, 26

28 U.S.C. § 517 ................................................................................................................. 26

28 U.S.C. § 519 ............................................................................................................. 2, 26

28 U.S.C. § 1291 ............................................................................................................... 15

28 U.S.C. § 2201 ............................................................................................................... 28

Fed. R. Crim. P. 12(b) ................................................................................................ *passim*

Fed. R. Crim. P. 41(g) ...................................................................................................... 15

## ADMINISTRATIVE MATERIALS

28 C.F.R. §§ 600.1 *et seq.* ................................................................................................. 4

28 C.F.R. § 600.3 .............................................................................................................. 22

28 C.F.R. § 600.4 ..................................................................................................... 4, 6, 7, 8

28 C.F.R. § 600.7 ................................................................................................................ 5

28 C.F.R. § 600.8(b) ....................................................................................................... 5, 10

28 C.F.R. § 600.10 ..................................................................................................... *passim*

*Office of Special Counsel*, 64 Fed. Reg. 37,038 (July 9, 1999) ........................................... *passim*

## OTHER AUTHORITIES

United States Attorneys' Manual (USAM) § 1-13.000, *available at*
    https://www.justice.gov/usam/usam-1-13000-urgent-reports .................................................... 5

Statement of FBI Director James B. Comey, H. Perm. Select Comm. on Intelligence, *Hearing on
    Russian Active Measures Investigation* (Mar. 20, 2017), *available at* https://www.fbi.gov/
    news/testimony/hpsci-hearing-titled-russian-active-measures-investigation ............................ 6

Testimony of Deputy Attorney General Rod J. Rosenstein, H. Comm. on the Judic., *Hearing on
    the Justice Department's Investigation of Russia's Interference in the 2016 Presidential
    Election*, at 28 (Dec. 13, 2017) ................................................................................. 1, 7, 10, 34

## INTRODUCTION

Plaintiff Paul J. Manafort Jr. has filed this civil action seeking to collaterally attack his ongoing criminal prosecution by Special Counsel Robert S. Mueller III, which is currently pending in a separate criminal action in this District.  *See United States v. Manafort*, No. 17-cr-201-ABJ (D.D.C.).   Specifically, Manafort asks this Court to "declare invalid" and "set aside" the appointment of the Special Counsel; to set aside "all actions taken against" him by the Special Counsel; and to enjoin the Special Counsel from conducting investigations into certain topics.  *See* Compl. (ECF No. 1) ¶ 53, Prayer for Relief ¶¶ (a)-(d).  To support this requested relief, Manafort alleges two claims.  First, he alleges that the Acting Attorney General's order directing the Special Counsel to investigate certain matters exceeds the authority provided by the Department of Justice's Special Counsel regulations because the order authorizes the investigation and prosecution of matters that "arose or may arise directly from the investigation."  *See* Compl. ¶¶ 32-35, 52.  Second, Manafort alleges that the investigation and indictment against him exceed the Special Counsel's authority under the Acting Attorney General's order.  *See* Compl. ¶¶ 36-42, 63.

These claims lack merit.  The appointment of the Special Counsel was squarely within the Acting Attorney General's authority and consistent with the Department's Special Counsel regulations.  And the Special Counsel is properly operating within the scope of his authority, including with respect to Manafort's ongoing criminal prosecution.  Indeed, less than two months ago, and after Manafort was indicted, the Acting Attorney General testified before Congress and made this point eminently clear:  "I can assure you that the special counsel is conducting himself consistently with our understanding about the scope of his investigation."  Testimony of Deputy Attorney General Rod J. Rosenstein, H. Comm. on the Judic., *Hearing on the Justice Department's Investigation of Russia's Interference in the 2016 Presidential Election*, at 28 (Dec. 13, 2017) (attached hereto) [hereafter *Rosenstein Testimony*].  The Special Counsel's investigation and

prosecutions are entirely lawful.

This Court, however, need not, and should not, reach the merits of Manafort's claims in this collateral, civil action.  Myriad threshold grounds preclude this Court from adjudicating those issues.  First and most fundamentally, it is a "basic doctrine of equity jurisprudence" that "courts should not exercise their equitable discretion to enjoin criminal proceedings, as long as the defendant has an adequate legal remedy in the form of trial and direct appeal."  *In re Al-Nashiri*, 835 F.3d 110, 118 (D.C. Cir. 2016).  The Supreme Court announced that principle in barring a federal injunction against a state criminal prosecution, *see Younger v. Harris*, 401 U.S. 37 (1971), and the D.C. Circuit has applied the same principle to foreclose equitable relief that would interfere with an ongoing federal prosecution.  *See Deaver v. Seymour*, 822 F.2d 66 (D.C. Cir. 1987).  Those decisions are directly applicable here:  If Manafort believes the Special Counsel lacks authority to prosecute him, he is free to raise that objection in his criminal action by filing a motion to dismiss the indictment pursuant to Rule 12 of the Federal Rules of Criminal Procedure.  But allowing Manafort to proceed with this civil action would enable him to "circumvent federal criminal procedure" and potentially "undermine the final judgment rule" in criminal cases.  *Deaver*, 822 F.2d at 71.

Each of the two Counts in the Complaint fails for several additional threshold reasons.  As for Count I—seeking to challenge the Special Counsel's appointment pursuant to the Administrative Procedure Act (APA)—claims under the APA are precluded when an alternate, adequate remedy exists.  Thus, Manafort's ability to file a motion to dismiss in his criminal action independently forecloses an APA claim as well.  Additionally, the APA cannot be used to challenge internal Government decisions about how to assign responsibility for particular matters among employees within an agency.  The Special Counsel's appointment is no different, and any challenge

to that decision under the APA fails because Manafort has no enforceable rights, he falls outside of the statutory zone of interest, and the order he challenges is not final agency action.

As for Count II—seeking to challenge the Special Counsel's compliance with the authority granted to him—Manafort does not invoke the APA and instead seeks to proceed under the Declaratory Judgment Act and a theory of *ultra vires* non-statutory review.  But the Declaratory Judgment Act does not itself create substantive rights or provide an independent source of federal jurisdiction.  And *ultra vires* review is also unavailable:  The existence of an alternative forum for the claim likewise precludes *ultra vires* review, and Manafort cannot otherwise satisfy the stringent requirements for invoking the doctrine.

Accordingly, both of Manafort's claims fail because they are improper collateral attacks on an ongoing criminal proceeding, and also suffer from additional threshold defects.  Manafort's Complaint should therefore be dismissed.

## BACKGROUND

## I.      Legal Framework

 "The Attorney General and United States Attorneys retain broad discretion to enforce the Nation's criminal laws."  *United States v. Armstrong*, 517 U.S. 456, 464 (1996).  The "conduct of litigation" on behalf of the United States is generally "reserved to officers of the Department of Justice, under the direction of the Attorney General."  28 U.S.C. § 516.  The Attorney General can "make such provisions as he considers appropriate" to authorize others within the Department of Justice to act, *id.* § 510, and also has authority to "specially appoint[]" any attorney to "conduct any kind of legal proceeding, civil or criminal, . . . which United States attorneys are authorized

by law to conduct[.]" *Id.* § 515(a).[1]

Pursuant to statutory authority vested in the Attorney General, Department of Justice regulations specify the procedure by which the Attorney General, for "certain sensitive investigations," may appoint a "Special Counsel." *See Office of Special Counsel*, 64 Fed. Reg. 37,038 (July 9, 1999) (codified at 28 C.F.R. §§ 600.1 *et seq.*). Special Counsels are to have more "day-to-day independence" than U.S. Attorneys and certain protection from removal but, like other Department officials, are to follow "established procedures of the Department" with "ultimate responsibility for the matter and how it is handled . . . rest[ing] with the Attorney General (or the Acting Attorney General if the Attorney General is personally recused in the matter)." *Id.*

When a Special Counsel is appointed under the regulations, his jurisdiction "shall be established by the Attorney General." 28 C.F.R. § 600.4(a). The regulations direct that "[t]he Special Counsel will be provided with a specific factual statement of the matter to be investigated." *Id.* If the Special Counsel determines additional jurisdiction is necessary, the regulations authorize the Special Counsel to seek that additional jurisdiction from the Attorney General. *See id.* § 600.4(b); *see also Office of Special Counsel*, 64 Fed. Reg. at 37,039 (providing examples of situations where the Special Counsel might deem it appropriate to seek additional jurisdiction). The regulations do not require that the initial appointment order, the specific factual statement, or any grant of additional jurisdiction be spelled out in a public document.

The Attorney General maintains ultimate responsibility for the Special Counsel's

---

[1] The Attorney General has previously exercised this statutory authority to specially appoint attorneys to conduct certain investigations on behalf of the Department of Justice. *See, e.g.*, *United States v. Nixon*, 418 U.S. 683, 694 n.8 (1974); *In re Sealed Case*, 829 F.2d 50, 52-53, 55 (D.C. Cir. 1987); *United States v. Libby*, 429 F. Supp. 2d 27, 28-29 (D.D.C. 2006). This statutory authority is separate and distinct from the now-expired Independent Counsel framework. *See Morrison v. Olson*, 487 U.S. 654 (1988); *United States v. Tucker*, 78 F.3d 1313 (8th Cir. 1996).

investigation in several different ways pursuant to the regulations.  For example, "the Attorney General may request that the Special Counsel provide an explanation for any investigative or prosecutorial step, and may after review conclude that the action is so inappropriate or unwarranted under established Departmental practices that it should not be pursued."  28 C.F.R. § 600.7(b). Additionally, the Special Counsel is required to notify the Attorney General of significant events occurring during the course of the investigation "in conformity with the Departmental guidelines with respect to Urgent Reports." *Id.* § 600.8(b); *see also* United States Attorneys' Manual (USAM) § 1-13.000 (setting forth guidelines regarding Urgent Reports), *available at* https://www.justice.gov/usam/usam-1-13000-urgent-reports.  Because Urgent Reports generally must be submitted in advance of a major development (*e.g.*, the filing of criminal charges), *see id.*, this notification requirement ensures a "resulting opportunity for consultation" between the Attorney General and the Special Counsel about the anticipated action.  *Office of Special Counsel*, 64 Fed. Reg. at 37,040.  Finally, the Attorney General can remove the Special Counsel for "misconduct, dereliction of duty, incapacity, conflict of interest, or for other good cause, including violation of Departmental policies."  28 C.F.R. § 600.7(d).

Because the Special Counsel regulations govern only the Department of Justice's internal procedures, the regulations make clear that they "are not intended to, do not, and may not be relied upon to create any rights, substantive or procedural, enforceable at law or equity, by any person or entity, in any matter, civil, criminal, or administrative."  *Id.* § 600.10.  For similar reasons, the regulations were effective immediately upon their promulgation.  *See Office of Special Counsel*, 64 Fed. Reg. at 37,041 (stating that "[t]his rule relates to matters of agency management or personnel," and if governed by rulemaking procedures at all is "a rule of agency organization, procedure, or practice").

II.     **Factual and Procedural History**

A.      **Special Counsel Mueller's Appointment and Ongoing Investigation**

On March 20, 2017, then-Director of the FBI James B. Comey testified before Congress and disclosed the existence of an ongoing counterintelligence investigation regarding, among other things, "the Russian government's efforts to interfere in the 2016 presidential election[.]" Statement of FBI Director James B. Comey, H. Perm. Select Comm. on Intelligence, *Hearing on Russian Active Measures Investigation* (Mar. 20, 2017), *available at* https://www.fbi.gov/news/testimony/hpsci-hearing-titled-russian-active-measures-investigation.     Because Attorney General Jefferson B. Sessions III recused himself, Deputy Attorney General Rosenstein acts as, and performs the functions of, the Attorney General with respect to the investigation (and all other events described in this filing).

On May 17, 2017, Acting Attorney General Rosenstein, pursuant to "the authority vested in [him] as Acting Attorney General, including 28 U.S.C. §§ 509, 510, and 515," appointed Robert S. Mueller III to serve as Special Counsel for the Department of Justice.  *See* Order No. 3915-2017, *Appointment of Special Counsel to Investigate Russian Interference with the 2016 Presidential Election and Related Matters* (May 17, 2017) (Compl. Exh. A, ECF No. 1-1) [hereafter "Appointment Order"].  The Acting Attorney General specified that the Special Counsel "is authorized to conduct the investigation confirmed by then-FBI Director James B. Comey in testimony before the House Permanent Select Committee on Intelligence on March 20, 2017," including:

(i)      any links and/or coordination between the Russian government and individuals associated with the campaign of President Donald Trump; and

(ii)     any matters that arose or may arise directly from the investigation; and

(iii)    any other matters within the scope of 28 C.F.R. § 600.4(a).

*See id.* ¶ (b).  The Acting Attorney General authorized the Special Counsel "to prosecute federal crimes arising from the investigation of these matters."  *Id.* ¶ (c).  And, finally, he made applicable specific provisions of the Special Counsel regulations: "Sections 600.4 through 600.10 of Title 28 of the Code of Federal Regulations are applicable to the Special Counsel."  *Id.* ¶ (d).

Since the Special Counsel's appointment, the investigation into the above matters has been ongoing.  And, consistent with the Special Counsel regulations, the Acting Attorney General has maintained his oversight role with respect to that investigation.  Recently, the Acting Attorney General described that oversight role in testimony before Congress:  "I know what [the Special Counsel is] doing.  I'm properly exercising my oversight responsibilities, and so I can assure you that the special counsel is conducting himself consistently with our understanding about the scope of his investigation."  *Rosenstein Testimony* at 28.

### B.        Criminal Proceedings Against Manafort

As part of the above-described investigation, a grand jury in this District returned a criminal indictment against Plaintiff Paul J. Manafort, Jr.  *See* Compl. ¶¶ 36, 41-42, 45-48; *United States v. Manafort*, No. 17-cr-201-ABJ (D.D.C.).  Manafort was indicted on October 27, 2017, and was charged with twelve counts.  *See* Compl. Exh. B, ECF No. 1-2.

At a status conference held in the criminal matter on December 11, 2017, the parties began discussing scheduling issues for certain pre-trial motions.  *See* Tr. of Dec. 11, 2017 Status Conf. at 6-9.  Subsequently, at a status conference on January 16, 2018, counsel for Manafort stated that he expected to file at least one dispositive pre-trial motion, including a motion alleging a defect in instituting the prosecution pursuant to Fed. R. Crim. P. 12(b)(3)(A).  *See* Tr. of Jan. 16, 2018 Status Conf. at 21.  The Court then entered the following briefing schedule for such a motion:  defense motion(s) due by February 23, 2018; Government response due by March 16, 2018; any replies due by March 30, 2018; and a motions hearing set for April 17, 2018.  *See United States v.*

*Manafort*, No. 17-cr-201 (D.D.C.), Minute Order of Jan. 16, 2018.  The Court also set a schedule for other pre-trial motions, including motions to suppress evidence.  *See id.*, Minute Order of Jan. 17, 2018.

### C.    Procedural History of This Civil Case

On January 3, 2018, Manafort filed the present civil action against Defendants—the United States Department of Justice (DOJ), Acting Attorney General Rosenstein, and Special Counsel Mueller.  *See generally* Compl. ¶¶ 13-15.  The Complaint alleges two claims.

Count I, brought against DOJ and Acting Attorney General Rosenstein, seeks review pursuant to the APA.  *See* Compl. ¶¶ 51, 54-59.  It alleges that the Appointment Order is unlawful because paragraph (b)(ii) allows the Special Counsel to "address any new matters that come to his attention during the course of the investigation, without consulting or obtaining approval from the Attorney General or Acting Attorney General," assertedly contrary to the process established in 28 C.F.R. § 600.4(b) for the Special Counsel to request "additional jurisdiction" over new matters. *See* Compl. ¶ 52.  Thus, "[b]ecause the Appointment Order itself exceeds the DOJ's authority," the Complaint alleges, "all actions taken pursuant to the authority it purports to grant the Special Counsel are likewise *ultra vires* and must be set aside."  *Id.* ¶ 53.

Count II is brought against only the Special Counsel.  *See id.* ¶ 61.  Unlike Count I, Count II is not brought pursuant to the APA, and instead alleges that "[t]he actions of the Special Counsel are reviewable under the Declaratory Judgment Act and under the long-recognized authority of the federal courts to grant equitable relief to prevent injurious acts by public officers."  *Id.*  Count II alleges that even if the Acting Attorney General's original Appointment Order is lawful, the Special Counsel's investigation and indictment of Manafort exceed the scope of the Special Counsel's authority because "[t]he indictment raises stale allegations DOJ must have been aware of for nearly a decade; they are not matters that 'arose . . . from the investigation' into the 2016 election[.]"  *Id.*

¶ 63.  Based on this allegation, Manafort asserts that the Special Counsel "acted beyond the scope of his authority," and the Special Counsel's "actions must be set aside."  *Id.*  Manafort also requests that the Special Counsel "be enjoined from further investigating any alleged conduct by Mr. Manafort that is unrelated to and predates his involvement with the Trump campaign, as well as any conduct that does not arise directly from the limited investigation authorized by the original jurisdiction clause of the Appointment Order."  *Id.* ¶ 64.

Consistent with the above, the Complaint's Prayer for Relief specifically requests "an order and judgment setting aside the Appointment Order and declaring it invalid"; "an order and judgment declaring *ultra vires* and setting aside all actions taken against Mr. Manafort pursuant to the Appointment Order"; and a declaration and injunction setting forth the permissible scope of the Special Counsel's investigations.  *See id.*, Prayer for Relief ¶¶ (a)-(d).

## STANDARD OF REVIEW

The Government hereby moves to dismiss Manafort's Complaint for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (to satisfy the Rule 12(b)(6) standard, the plaintiff's complaint must allege "more than a sheer possibility that a defendant has acted unlawfully").  Although a court must accept all factual allegations as true, the court is "not bound to accept as true a legal conclusion couched as a factual allegation[.]"  *Twombly*, 550 U.S. at 555.  Additionally, a motion under Rule 12(b)(6) "tests the legal sufficiency of a plaintiff's complaint[.]"  *Herron v. Fannie Mae*, 861 F.3d 160, 173 (D.C. Cir. 2017).

In evaluating the sufficiency of the complaint, the Court may consider "the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of

which [the court] may take judicial notice." *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d

621, 624 (D.C. Cir. 1997).  That includes the Court's ability to take judicial notice of "public record

information."  *Jankovic v. Int'l Crisis Grp.*, 494 F.3d 1080, 1088 (D.C. Cir. 2007); *see also Al-*

*Aulaqi v. Panetta*, 35 F. Supp. 3d 56, 67-68 (D.D.C. 2014).[2]

## ARGUMENT

The fundamental premise of Manafort's lawsuit is that the Appointment Order gives the

Special Counsel "*carte blanche* to investigate and pursue criminal charges in connection with

*anything* he stumbles across while investigating[.]"  Compl. ¶ 8.  That premise is wrong.  While

the Special Counsel is given jurisdiction over matters that arose or may arise directly out of the

investigation, *see* Appointment Order ¶ (b)(ii), that authority is subject to the overall regulatory

framework, including the notification requirement and the "resulting opportunity for consultation"

that such notification provides.  *Office of Special Counsel*, 64 Fed. Reg. at 37,040; *see* 28 C.F.R.

§ 600.8(b).  Based on a proper understanding of the framework, then, Manafort is wrong—and his

Complaint does not plausibly allege—that the Special Counsel is given *carte blanche* to pursue

criminal charges "without consulting or obtaining approval from the Attorney General or Acting

Attorney General."  Compl. ¶ 52.

Nor does Manafort's Complaint plausibly allege that the Special Counsel has exceeded the

scope of his jurisdiction, *see id.* ¶ 63, particularly in light of the Appointment Order's terms.

Indeed, the Acting Attorney General recently confirmed that the Special Counsel is operating fully

within his jurisdiction.  *See Rosenstein Testimony* at 28-33, 146.  Thus, Manafort's claims lack

merit, even under the deferential review of a Rule 12(b)(6) motion.

---

[2] Given this procedural posture—in which the Complaint's factual allegations must be accepted as true—this memorandum should not be construed as admitting or denying the truth of any of the matters alleged in the Complaint.

The merits of Manafort's claims, however, are not properly before the Court. The appropriate forum for litigating those issues is in Manafort's underlying criminal action. In this civil case, Manafort is precluded from raising his challenges, and this lawsuit should be dismissed for any one or all of the threshold reasons discussed below.

## I.   Civil Lawsuits Cannot Be Used to Collaterally Attack Ongoing Criminal Prosecutions

The clear object of Manafort's civil suit is to interfere with his ongoing criminal prosecution. Under well-established Supreme Court and D.C. Circuit authority, however, a civil lawsuit cannot be used to collaterally attack an ongoing criminal prosecution. Manafort's claims fall squarely within this prohibition and should therefore be dismissed.

### A.   Federal Courts Are Prohibited from Interfering with Ongoing Criminal Prosecutions

It is a fundamental principle of equity that civil courts cannot enjoin criminal prosecutions. This doctrine is rooted in core principles of separation of powers, comity, and sound judicial administration.

**1.**   The leading case in this area is *Younger v. Harris*, 401 U.S. 37 (1971), in which the plaintiff, already indicted in California state court, "filed a complaint in the Federal District Court, asking that court to enjoin . . . the District Attorney of Los Angeles County[] from prosecuting him[.]" *Id.* at 38-39. The Supreme Court rejected the claim, noting "the basic doctrine of equity jurisprudence that courts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief." *Id.* at 43-44. In a criminal case, that adequate remedy exists by virtue of the ability to present defenses in the underlying criminal action. *See id.* at 49. Moreover, relief is not warranted when the claim of irreparable harm is only "the cost, anxiety, and inconvenience of having to defend against a single criminal prosecution[.]" *Id.* at 46. Collectively,

these principles "prevent erosion of the role of the jury and avoid a duplication of legal proceedings and legal sanctions where a single suit would be adequate to protect the rights asserted." *Id.* at 44.

To be sure, the Supreme Court's decision in *Younger* was also influenced by federalism concerns—*i.e.*, avoiding undue federal interference in ongoing state proceedings. *See id.* at 44-45. But those concerns were not the exclusive basis for the holding in *Younger*, as the D.C. Circuit has now confirmed by extending *Younger* to prohibit federal court intervention in ongoing *federal* criminal investigations and prosecutions.

In *Deaver v. Seymour*, 822 F.2d 66 (D.C. Cir. 1987), in anticipation of a forthcoming indictment, the plaintiff filed a federal civil action "seeking declaratory and injunctive relief" from the "continued exercise of prosecutorial authority." *Id.* at 66. The plaintiff alleged that the prosecutor—an independent counsel—was acting in excess of constitutional authority because the independent counsel's appointment was invalid, *see id.* at 67-68, and therefore the plaintiff was, in effect, "being forced to defend himself against criminal charges brought by a mere private citizen—a vigilante." *Id.* at 70.

The D.C. Circuit ordered that the case be dismissed. *Id.* at 68. The court noted that although *Younger* arose in the context of state proceedings, "in no case that we have been able to discover has a federal court enjoined a federal prosecutor's investigation or presentment of an indictment." *Id.* at 69. The D.C. Circuit reasoned that a federal prosecution "afford[s] defendants, after indictment, a federal forum in which to assert their defenses—including those based on the Constitution." *Id.* "Congress has established a comprehensive set of rules governing federal criminal prosecutions," the court explained, "the Federal Rules of Criminal Procedure." *Id.* at 71. "These rules provide adequate, although limited, opportunities for defendants to challenge shortcomings in prosecutorial authority." *Id.* The court noted that, in particular, "Rule 12(b)(1) of

the Federal Rules of Criminal Procedure permits any defendant to raise by motion, after indictment but before trial, a defense based on 'defects in the institution of the prosecution,'" which therefore "suggests that appellant's constitutional challenge is not to be raised in a preindictment civil injunctive action." *Id.* at 70.  To do so, the court added, would "undermine the final judgment rule" in criminal cases.  *Id.* at 71.  After the D.C. Circuit denied relief, the plaintiff sought a stay in the Supreme Court, and Chief Justice Rehnquist denied the request on similar grounds:  "There will be time enough for applicant to present his constitutional claim to the appellate courts if and when he is convicted of the charges against him."  *Deaver v. United States*, 483 U.S. 1301, 1303 (1987) (Rehnquist, C.J., in chambers).

Since *Deaver*, the D.C. Circuit has re-affirmed its holding—that *Younger* applies to federal investigations and prosecutions—in several cases.  *See In re Al-Nashiri*, 835 F.3d at 126-27 (explaining that the rule applies beyond "court systems that are wholly separate from the federal judicial establishment," and noting that "legal remedies in Article III courts has historically *barred* criminal defendants from receiving pretrial equitable relief"), *cert. denied sub nom. al-Nashiri v. Trump*, 138 S. Ct. 354 (2017); *Miranda v. Gonzales*, 173 F. App'x 840, 841 (D.C. Cir. 2006) ("The district court correctly held that, if indicted, Miranda can protect his rights under the First Amendment and Speech or Debate Clause pursuant to Rule 12(b) of the Federal Rules of Criminal Procedure."); *In re Sealed Case*, 829 F.2d at 62 n.60 ("As we said in *Deaver v. Seymour* . . . courts do not, except in very limited circumstances not alleged here, entertain the claim of a person subject to a criminal investigation that the investigation is unlawful and must therefore be enjoined."); *see also North v. Walsh*, 656 F. Supp. 414, 420 (D.D.C. 1987).  Indeed, what the *Deaver* court said in 1987 remains true today: The Government is unaware of any case in which a "federal court [has] enjoined a federal prosecutor's investigation or presentment of an

indictment." 822 F.2d at 69.  The precedent on this issue is unwavering.[3]

These decisions are equally applicable to situations where the civil and criminal actions are both pending before the same judge.  As an equitable matter, that situation tends to confirm the adequacy of the criminal forum—*i.e.*, a court hearing a civil case is unlikely to conclude that it is "incapable of fairly and fully adjudicating the federal issues" pending on its own criminal docket. *In re Al-Nashiri*, 835 F.3d at 128 (quoting *Kugler v. Helfant*, 421 U.S. 117, 123-24 (1975)).  More fundamentally, the civil and criminal actions remain two separate cases, governed by two separate rules of procedure.  Thus, allowing the civil matter to proceed—regardless of the identity of the judge presiding over it—would still enable criminal defendants to "undermine the final judgment rule." *Deaver*, 822 F.2d at 71.  The *Younger* and *Deaver* holdings therefore apply with equal force even when the same judge presides over both the civil and criminal actions.

**2.**  As the above courts recognize, the rule against civil court interference in ongoing criminal prosecutions is rooted in fundamental principles.  First and foremost is equity; it is a "basic doctrine of equity jurisprudence" that "courts should not exercise their equitable discretion to enjoin criminal proceedings, as long as the defendant has an adequate legal remedy in the form of trial and direct appeal." *In re Al-Nashiri*, 835 F.3d at 118.  A federal criminal proceeding, and the "comprehensive set of rules governing federal criminal prosecutions—the Federal Rules of Criminal Procedure"—provide "adequate, although limited, opportunities for defendants to

---

[3] *See, e.g.*, *Kajtazi v. Johnson-Skinner*, 2017 WL 436038, at *2 (S.D.N.Y. Jan. 30, 2017); *Schlegel v. Holder*, 2014 WL 12607718, at *2 (D. Minn. May 21, 2014), *aff'd*, 593 F. App'x 599 (8th Cir. 2015); *Christoforu v. United States*, 842 F. Supp. 1453, 1456 (S.D. Fla. 1994), *aff'd*, 61 F.3d 31 (11th Cir. 1995); *Jernigan v. State of Miss.*, 812 F. Supp. 688, 692 (S.D. Miss. 1993); *Hartford Assocs. v. United States*, 792 F. Supp. 358, 363-65 (D.N.J. 1992); *see also Ali v. United States*, 2012 WL 4103867, at *1 (W.D.N.Y. Sept. 14, 2012) (collecting additional cases); *Campbell v. Medalie*, 71 F.2d 671, 672 (2d Cir. 1934) ("A bill in equity to enjoin the prosecution of this indictment will not lie.").

challenge shortcomings in prosecutorial authority." *Deaver*, 822 F.2d at 71.  This includes Criminal Rule 12.  *See id.* at 70.

Second, allowing prospective criminal defendants to "bring[] ancillary equitable proceedings" would allow them to "circumvent federal criminal procedure." *Id.* at 71.  Because denial of a motion to dismiss under Criminal Rule 12 "is ordinarily not considered a 'final decision' appealable under 28 U.S.C. § 1291," allowing civil challenges to proceed—with their "attendant rights of appeal"—would "undermine the final judgment rule." *Id.* at 70-71; *see also United States v. Hollywood Motor Car Co.*, 458 U.S. 263, 265 (1982) (per curiam) (noting that the policy of finality is "at its strongest in the field of criminal law").  Indeed, the policy of finality is so strong that even when a party files an independent civil action seeking the suppression of evidence—*i.e.*, not going to the ultimate merits of a criminal case—the Supreme Court has held that the matter is not immediately appealable when there is an ongoing criminal proceeding.  *See DiBella v. United States*, 369 U.S. 121 (1962); *see also In re Sealed Case*, 716 F.3d 603, 605-07 (D.C. Cir. 2013) (extending *DiBella* to motion for return of property during a grand jury investigation).[4]  Regardless of what phase of the criminal proceeding is being challenged, therefore, allowing collateral civil challenges would upset the carefully crafted scheme set forth in the Federal Rules of Criminal Procedure, to the detriment of "the effective and fair administration of the criminal law." *DiBella*, 369 U.S. at 126.

Third, "principles of comity and separation of powers counsel courts against intervening

---

[4] These civil actions seeking the return of property are expressly authorized by Federal Rule of Criminal Procedure 41(g).  The principle announced in *DiBella* ensures that courts, in deciding such motions, do not interfere with ongoing criminal matters.  *See 3021 6th Ave. N., Billings, MT v. United States*, 237 F.3d 1039, 1041 (9th Cir. 2001) (the *DiBella* principle avoids "uncertainty and delay to an ongoing parallel criminal proceeding," but allows courts "to prevent the deprivation of seized property . . . when those deprived *have no other avenues for relief*," *i.e.*, are unconnected to an ongoing criminal matter (emphasis added)).

in a criminal investigation conducted by another branch of government." *North*, 656 F. Supp. at 421. Because "[t]he powers of criminal investigation are committed to the Executive branch," *Reporters Comm. for Freedom of Press v. AT&T Co.*, 593 F.2d 1030, 1065 (D.C. Cir. 1978), and "[i]n the ordinary case" the decision to prosecute "generally rests entirely in [the Executive's] discretion," *Armstrong*, 517 U.S. at 464, allowing civil suits to proceed—with the effect of interfering with ongoing criminal matters—would violate inter-branch comity by "interfer[ing] with the prerogatives of coordinate branches of government." *In re Al-Nashiri*, 835 F.3d at 127; *see also AT&T*, 593 F.2d at 1065; *Hartford Assocs.*, 792 F. Supp. at 365.

Finally, collateral civil suits risk intruding on the Judiciary's intra-branch comity. *Cf. Wash. Metro. Area Transit Auth. v. Ragonese*, 617 F.2d 828, 830 (D.C. Cir. 1980) ("Considerations of comity and orderly administration of justice dictate that two courts of equal authority should not hear the same case simultaneously."). Because nothing compels criminal defendants to file their civil challenges before the same judge (or even in the same District) as their criminal case, allowing civil lawsuits to challenge criminal matters could potentially place two federal district courts in conflict with one another—*e.g.*, if one concludes that the prosecution may proceed, but the other disagrees. Criminal defendants should not get two bites at the apple in two different cases.

**B.      The Rule Against Interference in an Ongoing Criminal Matter Compels Dismissal of the Present Civil Action**

The principles discussed above squarely foreclose this civil lawsuit: Manafort has an adequate forum in which to raise his arguments—the underlying criminal action. Maintaining this lawsuit, therefore, is contrary to the holdings of *Younger* and *Deaver*.

**1.      Manafort's Underlying Criminal Action Provides an Adequate Forum for His Arguments**

Rule 12 of the Federal Rules of Criminal Procedure provides federal criminal defendants "a federal forum in which to assert their defenses," *Deaver*, 822 F.2d at 69-70, which therefore

constitutes "an adequate remedy at law" sufficient to preclude requests for equitable relief from civil courts. *Younger*, 401 U.S. at 43.

Here, there is no question that Manafort has an adequate forum in which to present his defenses. Count I of the Complaint alleges that the Special Counsel was invalidly appointed, and Count II alleges that the Special Counsel's indictment of Manafort exceeds the scope of his authority. *See* Compl. ¶¶ 52, 63. Manafort may seek to advance either of those theories as "a defect in instituting the prosecution" in a motion under Rule 12. *See* Fed. R. Crim. P. 12(b)(3)(A).

The Government's position, of course, is that Manafort's theories lack merit and do not constitute defects warranting dismissal of the indictment. Regardless of whether Manafort's arguments have any merit, however, the relevant point is that Rule 12 provides Manafort a mechanism for raising his same arguments in the underlying criminal action. Indeed, a challenge to the prosecutor's authority was exactly the type of error that the *Deaver* court held should be channeled through Rule 12. *See* 822 F.2d at 71 ("These rules provide adequate, although limited, opportunities for defendants to challenge *shortcomings in prosecutorial authority*." (emphasis added)); *see also North*, 656 F. Supp. at 421-22 (rejecting the argument that civil court intervention in a criminal matter is allowed when the challenge "strikes at the very authority of the investigative body to investigate, rather than at specific actions undertaken by it").

Manafort's Complaint does not even attempt to explain why the underlying criminal action is an inadequate forum for raising his arguments. Nor could Manafort do so, given his expressed intent to file motions to dismiss the indictment in that forum, and the Court's order affording Manafort the time to prepare such motions. *See United States v. Manafort*, No. 17-cr-201 (D.D.C.), Minute Order of Jan. 16, 2018 ("Defense Motions pursuant to Federal Rule of Criminal Procedure 12(b)(3)(A) or (B) shall be filed by 2/23/2018."). If Manafort wishes to challenge the Special

Counsel's authority to prosecute him, the appropriate place to do so is in the criminal proceeding.[5]

> **2.      This Lawsuit Plainly Seeks to Interfere with Manafort's Ongoing Criminal Prosecution**

Perhaps in an effort to avoid the "basic doctrine of equity" discussed above, *Younger*, 401 U.S. at 43, Manafort's counsel previously suggested that this civil lawsuit "does not ask for dismissal of the indictment." *United States v. Manafort*, 17-cr-201 (D.D.C.), Tr. of Jan. 16, 2018 Status Conf. at 37-38.  That assertion is both implausible and irrelevant.

The relief sought in the Complaint includes a request for "an order and judgment setting aside the Appointment Order and declaring it invalid," as well as "an order and judgment declaring *ultra vires* and setting aside *all actions taken against Mr. Manafort* pursuant to the Appointment Order[.]"  Compl., Prayer for Relief ¶¶ (a)-(b) (emphasis added).  To be sure, the Complaint does not spell out what it would mean to "set aside" all actions that the Special Counsel has taken against Manafort.  But any plausible meaning would surely include "setting aside" the indictment.  Indeed, if the Complaint is *not* requesting that the indictment be set aside, it is difficult to understand how the Complaint could even redress the injuries that Manafort has pled.  *See id.* ¶ 65.  At best, the Complaint's chosen phrasing—"set aside" rather than "dismiss"—is just an example of "artful pleading," which generally is not enough to avoid preclusion of a claim.  *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 833 (1976); *see also McKinney v. White*, 291 F.3d 851, 855-56 (D.C. Cir. 2002); *Anderson v. United States*, 764 F.2d 849, 853 (Fed. Cir. 1985).

In any event, it is ultimately irrelevant whether the Complaint requests dismissal of the

---

[5] Manafort's Complaint does allege that he has "suffered economic injury, reputational harm, and invasion of his privacy" as a result of the prosecution.  Compl. ¶ 49.  These injuries, however, are insufficient to justify the extraordinary remedy of equitable relief against an ongoing prosecution.  *See, e.g.*, *Deaver*, 822 F.2d at 69 ("[T]he 'cost, anxiety, and inconvenience of having to defend against a single criminal prosecution' are not recognized as irreparable injuries justifying an equitable remedy." (quoting *Younger*, 401 U.S. at 46)); *see also Younger*, 401 U.S. at 46-47.

indictment; the fundamental principles discussed above are not limited to civil lawsuits requesting such dismissal.  Indeed, in *Younger* itself, the requested remedy was not dismissal but rather "asking [the federal] court to enjoin . . . the District Attorney of Los Angeles County" from prosecuting the plaintiff.  401 U.S. at 39.  Demonstrating the point even more starkly, in *In re Sealed Case* there was not yet even an indictment, but the D.C. Circuit nevertheless relied on the same principles to reject the idea of "entertain[ing] the claim of a person subject to a criminal investigation that the investigation is unlawful and must therefore be enjoined."  829 F.2d at 62 n.60 (citing *Deaver*, 822 F.2d at 67-68; *North*, 656 F. Supp. at 420).  Thus, the exact form of relief sought by the civil complaint is not important; the critical question is whether the relief would interfere with an ongoing investigation or prosecution.

Here, the relief sought would obviously interfere with the Department of Justice's prosecution, which is being conducted by the Special Counsel.  In effect, Manafort seeks a judgment that the Special Counsel lacks authority to prosecute him, and seeks to unwind actions taken against him as part of that prosecution.  *See* Compl., Prayer for Relief ¶¶ (a)-(b).  Moreover, Manafort also seeks a declaration and injunction against further investigations by the Special Counsel.  *Id.*, Prayer for Relief ¶¶ (c)-(d).  On its face, then, the Complaint seeks relief that would substantially interfere with ongoing criminal proceedings—at least to the same degree (if not more) as existed in *Deaver*, *In re Sealed Case*, and *North*.  Manafort's civil claims are thus squarely precluded as an improper attempt to collaterally attack an ongoing criminal proceeding.

## II.    Count I Should Be Dismissed Because it Fails to Satisfy Threshold Requirements for APA Review

Count I fails for reasons in addition to the fundamental defect discussed above.  Count I is brought under the APA and seeks to challenge the Appointment Order.  *See* Compl. ¶ 51.  An APA claim is unavailable, however, when an alternate, adequate remedy exists, and here such a remedy

is clearly available in Manafort's underlying criminal case.  Moreover, Manafort cannot use the APA to challenge DOJ's internal assignment of responsibility for a particular matter; thus, Count I also fails under a variety of different threshold APA doctrines.

### A.    An APA Claim is Unavailable Because Manafort Has an Alternate, Adequate Remedy in His Underlying Criminal Action

The APA provides for judicial review only when "there is no other adequate remedy in a court[.]"  5 U.S.C. § 704; *see generally Citizens for Responsibility & Ethics in Wash. (CREW) v. Dep't of Justice*, 846 F.3d 1235, 1244 (D.C. Cir. 2017) ("Section 704 reflects Congress' judgment that the general grant of review in the APA ought not duplicate existing procedures for review of agency action or provide additional judicial remedies in situations where Congress has provided special and adequate review procedures.").  Here, Manafort has an alternate, adequate remedy for any alleged defects in his prosecution or indictment: the ability to file a motion to dismiss in his criminal case.  *See* Part I.B.1, *supra*.  The instant civil action is therefore precisely the kind of duplicative review prohibited by § 704 of the APA, which provides an independent basis to dismiss Count I.

Even if Manafort argues that the relief sought under his APA claim is different from the relief available in his criminal action, that would not bring Count I outside the § 704 bar.  For an alternative remedy to be considered adequate, it "need not provide relief identical to relief under the APA, so long as it offers relief of the 'same genre.'"  *Garcia v. Vilsack*, 563 F.3d 519, 522 (D.C. Cir. 2009); *see also Women's Equity Action League v. Cavazos*, 906 F.2d 742, 751 (D.C. Cir. 1990) (even if an alternate remedy is "less effective in providing" the desired relief, it is sufficiently adequate to bar an APA claim).

Here, Criminal Rule 12 clearly provides Manafort the opportunity to seek relief "of the same genre" as what he seeks pursuant to his APA claim.  *Compare* Fed. R. Crim. P. 12(b)(3)(A)

(allowing motion to dismiss the indictment for "a defect in instituting the prosecution"), *with*

Compl. ¶¶ 52-53 (arguing that the Appointment Order "must be set aside" and that "all actions

taken pursuant to the authority it purports to grant the Special Counsel . . . must be set aside").

And to the extent that Manafort challenges the warrant-authorized search of his home, *see* Compl.

¶¶ 42, 49, he can file a motion to suppress evidence in the criminal case.  *See* Fed. R. Crim. P.

12(b)(3)(C).   Even if the relief available in a motion brought under Criminal Rule 12 is not

identical to all of the relief sought here, it is nevertheless sufficiently adequate to preclude APA

review.  *See Garcia*, 563 F.3d at 525 (even where a broader lawsuit "would be more effective"

than "situation-specific" litigation, the latter still "affords an adequate, even if imperfect,

remedy").   Thus, even assuming "some mismatch between the relief sought and the relief

available," *CREW*, 846 F.3d at 1246, the Federal Rules of Criminal Procedure provide the "same

genre" of relief, which bars Manafort from bringing a duplicative claim under the APA.[6]

### B.    Manafort Cannot Use the APA to Challenge Internal DOJ Procedures for Prosecutorial Assignments

Agencies make countless decisions relating to their internal management and operations,

including decisions about whom to hire and decisions assigning specific responsibilities or cases

to specific individuals.   These kinds of internal agency decisions are not subject to judicial

challenge by private parties, a result that finds expression in a variety of doctrines, including:

private parties have no enforceable rights in agencies' procedural or organizational rules; private

---

[6] Indeed, the nature of the Federal Rules of Criminal Procedure as "a comprehensive set of rules governing federal criminal prosecutions," *Deaver*, 822 F.2d at 71, suggests that judicial review of Manafort's claim may be entirely precluded under 5 U.S.C. § 701(a)(1).  *Cf.  NLRB v. United Food & Commercial Workers Union*, 484 U.S. 112, 131 (1987) (holding that APA review is precluded because the National Labor Relations Act is "a comprehensive statute concerning the disposition and review of the merits of unfair labor practice charges").  The Court need not resolve the issue here, however, because the Federal Rules, at a minimum, bar review under § 704 because they constitute an alternate, adequate remedy.

parties are outside the relevant zone of interests of the underlying statutes; and internal agency decisions are not final agency action.  Collectively, these doctrines underscore that internal agency processes for allocating personnel are not subject to challenge.

Yet here, Count I of Manafort's Complaint seeks to do exactly that.  Count I challenges the Acting Attorney General's appointment of the Special Counsel, which was, in effect, a decision by the Acting Attorney General to hire Mr. Mueller as a DOJ employee and assign him responsibility for the day-to-day operations of a particular investigation.  *See* Appointment Order; *see also* 28 C.F.R. § 600.3.  The DOJ regulations on which Manafort's claim is based, however, are purely procedural, addressing a matter of internal agency management, and they thus provide Manafort no rights to enforce.  In like fashion, the statutes on which the regulations are based also evince no intent to benefit private parties.  And the Appointment Order is an internal DOJ directive, assigning responsibility for a particular matter to a particular Department employee, and thus is not itself a "final agency action" subject to challenge under the APA.  Each of these reasons demonstrates that the APA does not permit a private party like Manafort to challenge the Department's decision about how to assign responsibility for a particular matter.

### 1.     The Special Counsel Regulations Provide No Enforceable Rights

As discussed above, Count I seeks to challenge the Appointment Order's compliance with the Special Counsel regulations.  *See* Compl. ¶ 52.  Private parties, however, are unable to enforce internal agency rules that are intended solely to benefit the agency.  *See Lopez v. FAA*, 318 F.3d 242, 247 (D.C. Cir. 2003), *as amended* (Feb. 11, 2003); *United Space All., LLC v. Solis*, 824 F. Supp. 2d 68, 83 (D.D.C. 2011); *see also Schweiker v. Hansen*, 450 U.S. 785, 789-90 & n.5 (1981) (per curiam); *United States v. Caceres*, 440 U.S. 741, 753-54 & n.18 (1979).

Here, even assuming that the Special Counsel regulations are the sole source of authority for the Acting Attorney General's appointment of the Special Counsel, the regulations are non-

enforceable because they are purely internal:  They relate only to "matters of agency management or personnel," and represent at most "a rule of agency organization, procedure, or practice."  *Office of Special Counsel*, 64 Fed. Reg. at 37,041.  Indeed, the regulations expressly state that they "are not intended to, do not, and may not be relied upon to create any rights, substantive or procedural, enforceable at law or equity, by any person or entity, in any matter, civil, criminal, or administrative."  28 C.F.R. § 600.10.  Thus, the regulations are not enforceable by a private party like Manafort.

In similar circumstances, the D.C. Circuit and other courts in this District have held that internal DOJ guidelines—*e.g.*, the United States Attorneys' Manual—do not confer any rights on private parties and are therefore not enforceable.  *See, e.g.*, *United States v. Blackley*, 167 F.3d 543, 548-49 (D.C. Cir. 1999) (holding that "violations of Manual policies by DOJ attorneys or other federal prosecutors afford a defendant no enforceable rights," including because "[t]he Manual itself says that it 'is not intended to confer any rights, privileges or benefits'"); *Rodriguez v. Shulman*, 843 F. Supp. 2d 96, 100-01 (D.D.C. 2012) (holding that the Manual "provides no basis upon which Plaintiffs could bring a motion to disqualify" a federal prosecutor who failed to follow DOJ's recusal policy); *cf. Kugel v. United States*, 947 F.2d 1504, 1507 (D.C. Cir. 1991) (holding that DOJ criminal investigation guidelines did not create a duty sufficient for a private individual's tort claim because they "have no legal force").  Other courts of appeals have consistently reached the same conclusion with respect to DOJ policies.[7]

---

[7] *See, e.g.*, *United States v. Wilson*, 413 F.3d 382, 389 (3d Cir. 2005) (collecting cases holding that "Department of Justice guidelines and policies do not create enforceable rights for criminal defendants," and denying relief for potential violation of DOJ *Petite* policy); *United States v. Fernandez*, 231 F.3d 1240, 1246 (9th Cir. 2000) (United States Attorneys' Manual); *United States v. Lee*, 274 F.3d 485, 492-93 (8th Cir. 2001) (DOJ death penalty protocol); *Nichols*

Just as alleged violations of those policies do not provide a basis for private parties to seek relief, the same is true of the Special Counsel regulations, which provide a framework for DOJ's internal decisions over assigning responsibility for certain matters among Department employees. The regulations, moreover, contain an express statement that they create no rights—a "disclaimer" that "[f]ederal courts have held . . . to be effective." *Lee*, 274 F.3d at 493; *see, e.g.*, *Air Transp. Ass'n of Am. v. FAA*, 169 F.3d 1, 8-9 (D.C. Cir. 1999) (relying on similar language); *Blackley*, 167 F.3d at 548-49 (same); *Defs. of Wildlife v. Jackson*, 791 F. Supp. 2d 96, 120-21 (D.D.C. 2011) (same). Such "disclaimers" have been particularly effective with respect to DOJ prosecutorial policies, given that enforcement of the Nation's criminal laws is "a 'special province' of the Executive." *Armstrong*, 517 U.S. at 464 (quoting *Heckler v. Chaney*, 470 U.S. 821, 832 (1985)). This overwhelming authority recognizing that internal DOJ policies confer no rights on private parties thus compels dismissal.

2. **Manafort Cannot Bring an APA Claim Because He Is Outside the Zone of Interests of the Relevant Statutes**

Under the APA a plaintiff must also show that he has been "adversely affected or aggrieved by agency action within the meaning of a relevant statute[.]" 5 U.S.C § 702. Thus, a plaintiff's claim "must be arguably within the zone of interests to be protected or regulated by the statute that he says was violated." *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 224 (2012); *see also Lexmark Int'l Inc. v. Static Control Components, Inc.*, 134 S. Ct.

---

*v. Reno*, 124 F.3d 1376, 1378 (10th Cir. 1997) (same); *United States v. Piervinanzi*, 23 F.3d 670, 682 (2d Cir. 1994) (DOJ policy memorandum requiring consultation prior to bringing certain charges); *United States v. Craveiro*, 907 F.2d 260, 264 (1st Cir. 1990) (DOJ policy requiring pre-trial notice of intent to seek sentence enhancement); *see also Schweiker*, 450 U.S. at 789-90 & n.5 (Social Security Administration Claims Manual).

1377, 1388-89 (2014).[8]

Here, Manafort alleges that he "is within the zone of interests protected by the special counsel regulations and the relevant statutory provisions governing DOJ." Compl. ¶ 59. Manafort cannot rely on the Special Counsel regulations, however, to satisfy the zone of interests test. *See Am. Fed'n of Gov't Emps., AFL-CIO v. Rumsfeld*, 321 F.3d 139, 143-45 (D.C. Cir. 2003) (explaining that "instructions, directives, and regulations" are insufficient for the zone-of-interests inquiry, because they "are not statutes"); *see also Town of Stratford v. FAA*, 285 F.3d 84, 89 (D.C. Cir. 2002); *Nat'l Fed'n of Fed. Emps. v. Cheney*, 883 F.2d 1038, 1043 (D.C. Cir. 1989). And certainly Manafort is not within the zone of interests of a regulation that expressly creates no private rights. *See* 28 C.F.R. § 600.10.

As for "the relevant statutory provisions governing DOJ," Compl. ¶ 59, Manafort makes no effort to explain how his interests fall within any particular statute's zone of interest (or even to identify the particular statutes at issue). This is hardly surprising; the Special Counsel regulations were issued pursuant to 5 U.S.C. § 301 and 28 U.S.C. §§ 509-510, *see* 64 Fed. Reg. at 37,042, and those statutes are clearly not intended to confer rights to any private parties. With respect to § 509, it generally vests in the Attorney General "[a]ll functions . . . of the Department of Justice," and § 510 then permits the Attorney General to delegate his authority as he deems appropriate. These statutes are merely grants of authority to the Attorney General, allowing him to conduct the functions of the Department efficiently. They are not limitations on his authority, and certainly not limitations evincing an intent to benefit private citizens or criminal defendants. *See United States*

---

[8] The Supreme Court's decision in *Lexmark* clarified that the zone-of-interests test is a prerequisite to finding a valid cause of action rather than an aspect of what was previously called prudential standing. 134 S. Ct. at 1387-89 & n.4. But that clarification worked no substantive change in the zone-of-interests required. *See id.* at 1388-89.

*v. Libby*, 429 F. Supp. 2d 27, 33 (D.D.C. 2006) ("[T]he Court concludes that the plain language of Section 510 permits the Attorney General to delegate, as he determines appropriate, any of his functions."); *see also United States v. U.S. Dist. Ct. for N. Mariana Islands*, 694 F.3d 1051, 1059 (9th Cir. 2012), *as amended* (Oct. 16, 2012) ("The delegation to the Attorney General of authority to conduct litigation concerns the allocation of responsibility, within the government, for representing the United States as a party." (citing 28 U.S.C §§ 510, 516-17, 519)).

The same is true of § 515, which was relied upon by the Acting Attorney General in the Appointment Order; that statute simply authorizes the appointment of special attorneys to assist the Attorney General in carrying out his functions.  *See United States v. Wrigley*, 520 F.2d 362, 368 (8th Cir. 1975) ("The statute [§ 515] is not a limitation but a grant of authority that makes the powers of the Attorney General coextensive with his duties.").  Finally, Manafort does not appear to allege that he comes within the zone of interests of 5 U.S.C. § 301.  Nor could he, given that this "housekeeping statute" is "simply a grant of authority to the agency to regulate its own affairs." *Chrysler Corp. v. Brown*, 441 U.S. 281, 309 (1979).  Because Manafort's claim does not come within the zone of interests of any of the relevant statutes, he fails to state a claim under the APA.

### 3.    Manafort Is Not Challenging Any Final Agency Action

Count I also fails because it does not challenge any "final agency action."  5 U.S.C. § 704.  A final agency action must "mark the consummation of the agency's decisionmaking process," and "must be one by which rights or obligations have been determined, or from which legal consequences will flow."  *Bennett v. Spear*, 520 U.S. 154, 178 (1997).  The Appointment Order does not meet these requirements; it was no more "final agency action" than any of the other numerous decisions DOJ routinely makes about whom should be hired, or which employee should be assigned to handle a particular matter.  *Cf. United States v. Fitzhugh*, 78 F.3d 1326, 1330 (8th Cir. 1996) ("Of course, deciding what agent should represent the United States in a criminal

prosecution is primarily a question for the Executive Branch.").

Manafort alleges that the Appointment Order is a final agency action "because it is a final order through which Mr. Rosenstein consummated his selection and appointment of Mr. Mueller as Special Counsel and in which he fully set out the Special Counsel's jurisdiction."  Compl. ¶ 56. But the Appointment Order was, by its own terms, an interim step in an ongoing investigation, and it therefore did not represent the consummation of the agency's decisionmaking with respect to the investigation.  And the Acting Attorney General's decision to appoint a Special Counsel is only "a threshold determination that further inquiry is warranted"—not a "definitive" resolution of the type associated with final agency action.  *FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 241 (1980); *see also Bannum, Inc. v. Sawyer*, 251 F. Supp. 2d 7, 11 (D.D.C. 2003) ("Thus, an agency's initiation of an investigation in and of itself does not constitute final agency action." (modifications omitted)).

The Appointment Order also did not itself determine any legal consequences outside of the Department of Justice—it merely organized the manner in which an ongoing investigation would proceed and determined which Department employee would be responsible for conducting the day-to-day operations of that investigation.  Although Manafort alleges that the Order "fully set[s] out the Special Counsel's jurisdiction," Compl. ¶ 56, there is nothing special about "jurisdictional" issues that allows them to be challenged before the agency has taken action that determines rights and obligations for others.  *See Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n*, 324 F.3d 726, 731-32 (D.C. Cir. 2003) (rejecting judicial review of the "Commission's regulatory jurisdiction" where it had no "direct and immediate" effect on the plaintiffs, who "[i]f the Government brings an enforcement proceeding [could] defend themselves on the ground that the agency lacks jurisdiction"); *see also Standard Oil*, 449 U.S. at 242 (obligations imposed by the

initiation of enforcement proceedings not sufficient to establish "final agency action," despite

being "substantial," because "it is different in kind and legal effect from the burdens . . . considered

to be final agency action"); *Nat'l Ass'n of Home Builders v. Norton*, 415 F.3d 8, 15 (D.C. Cir.

2005) ("[I]f the practical effect of the agency action is not a certain change in the legal obligations

of a party, the action is non-final for the purpose of judicial review."); *Aluminum Co. of Am. v.

United States*, 790 F.2d 938, 942 (D.C. Cir. 1986); *Bannum*, 251 F. Supp. 2d at 12.  Thus, Manafort

cannot escape the principle that investigations and the initiation of enforcement proceedings do

not constitute final agency actions simply by characterizing his claim as challenging the Special

Counsel's jurisdiction.

For the above reasons, Count I would fail even under traditional doctrines of APA review.

Even if Count I could overcome the *Younger/Deaver* abstention argument, therefore, it should

nonetheless be dismissed for failure to state a claim under the APA.

### III.   Count II Should Be Dismissed Because the Declaratory Judgment Act Does Not Itself Provide a Basis for Judicial Review, and *Ultra Vires* Review is Unavailable

In contrast to Count I, Count II does not invoke the APA, but instead seeks review under

the Declaratory Judgment Act and pursuant to non-statutory review of allegedly *ultra vires* acts.

*See* Compl. ¶ 61.  Neither theory provides Manafort with a cause of action, however, and therefore

Count II is also subject to dismissal.

#### A.   The Declaratory Judgment Act Does Not Provide for Judicial Review

The Declaratory Judgment Act, 28 U.S.C. § 2201, does not by itself provide a basis for

judicial review, but instead merely expands the remedies available in an otherwise proper civil

action.  As the Supreme Court has said, the Declaratory Judgment Act "presupposes the existence

of a judicially remediable right," *Schilling v. Rogers*, 363 U.S. 666, 677 (1960).  *See Ali v.

Rumsfeld*, 649 F.3d 762, 778 (D.C. Cir. 2011) ("It is a well-established rule that the Declaratory

Judgment Act is not an independent source of federal jurisdiction.  Rather, the availability of declaratory relief presupposes the existence of a judicially remediable right."); *accord Metz v. BAE Sys. Tech. Solutions & Servs. Inc.*, 774 F.3d 18, 25 n.8 (D.C. Cir. 2014); *Doe v. U.S. Parole Comm'n*, 602 F. App'x 530, 532 n.3 (D.C. Cir. 2015); *Comm. on Oversight & Gov't Reform v. Holder*, 979 F. Supp. 2d 1, 23 (D.D.C. 2013) (the Declaratory Judgment Act does not "create substantive rights that would not exist otherwise, and . . . does not confer federal jurisdiction by itself").  Courts in this District have consistently reaffirmed this feature of the Declaratory Judgment Act.[9]  Thus, it does not provide a basis for judicial review of Count II.

## B.    An *Ultra Vires* Cause of Action is Also Unavailable

Manafort also attempts to obtain review by invoking the doctrine of non-statutory review over *ultra vires* acts, which has previously been described as "a doctrine of last resort," *Schroer v. Billington*, 525 F. Supp. 2d 58, 65 (D.D.C. 2007), and "a Hail Mary pass[.]"  *Nyunt v. Chairman, Broad. Bd. of Governors*, 589 F.3d 445, 449 (D.C. Cir. 2009).  "There certainly is no question that nonstatutory review is intended to be of extremely limited scope[.]" *Trudeau v. FTC*, 456 F.3d 178, 190 (D.C. Cir. 2006).  Given the significant limitations on when *ultra vires* review is available, Manafort cannot obtain such review here:  he has an adequate forum available to pursue his challenge; he does not allege agency action in excess of *statutory* authority; nor does he allege an extreme, obvious error of the type necessary to permit *ultra vires* review.

**1.**  Both the Supreme Court and D.C. Circuit have made clear that an *ultra vires* claim is

---

[9] *See, e.g.*, *Glenn v. Thomas Fortune Fay*, 222 F. Supp. 3d 31, 35 (D.D.C. 2016); *Mohamed v. Select Portfolio Servicing, Inc.*, 215 F. Supp. 3d 85, 97 (D.D.C. 2016); *Detroit Int'l Bridge Co. v. Gov't of Canada*, 133 F. Supp. 3d 70, 88 (D.D.C. 2015), amended on denial of reconsideration, 189 F. Supp. 3d 85 (D.D.C. 2016); *Seized Prop. Recovery, Corp. v. U.S. Customs & Border Prot.*, 502 F. Supp. 2d 50, 64 (D.D.C. 2007); *United States v. Instruments, S.A.*, 807 F. Supp. 811, 814 (D.D.C. 1992); *Superlease Rent-A-Car, Inc. v. Budget Rent-A-Car of Md.*, 1989 WL 39393, at *3 (D.D.C. Apr. 13, 1989).

unavailable where an alternative forum exists in which a plaintiff may pursue the challenge. *See Bd. of Governors of Fed. Reserve Sys. v. MCorp Fin., Inc.*, 502 U.S. 32, 43 (1991) (non-statutory review is available only when a party would be "wholly deprive[d] . . . of a meaningful and adequate means of vindicating its statutory rights"); *Lepre v. Dep't of Labor*, 275 F.3d 59, 72 (D.C. Cir. 2001) (a "critical" requirement for *ultra vires* review is "the lack of *any* alternative means of judicial review for the plaintiffs"); *see also Nyunt*, 589 F.3d at 449. As previously explained, *see* Part I, *supra*, Manafort's criminal action provides an adequate forum in which he can pursue the same arguments he raises in Count II—*viz.*, that his prosecution exceeds the scope of the Special Counsel's authority. *See* Compl. ¶¶ 63-64. Accordingly, Count II fails because any challenge to the Special Counsel's allegedly *ultra vires* actions can be raised in the alternative forum of his criminal case.

**2.** Manafort's Count II "challenges the conduct of Mr. Mueller as beyond his jurisdiction under the Appointment Order." Compl. ¶ 61. This theory is not a cognizable *ultra vires* claim for two additional reasons: Manafort is not challenging agency action in excess of *statutory* authority (instead alleging only a violation of an intra-Executive Branch delegation of authority); and, in any event, the Appointment Order does not provide Manafort any rights to enforce.

A viable non-statutory, *ultra vires* claim must meet two tests: First, the plaintiff must allege agency action in excess of a statutory or constitutional command (and, as discussed below, one that is clear and mandatory); and second, the plaintiff must have alleged a violation of individual rights. *See Griffith v. FLRA*, 842 F.2d 487, 493 (D.C. Cir. 1988); *Leedom v. Kyne*, 358 U.S. 184, 190 (1958) (allowing non-statutory review because "[t]his Court cannot lightly infer that Congress does not intend judicial protection of rights it confers against agency action taken in excess of delegated powers"); *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 689-90, 693

(1949); *see also Dugan v. Rank*, 372 U.S. 609, 620-22 (1963); *Physicians Nat'l House Staff Ass'n v. Fanning*, 642 F.2d 492, 496 (D.C. Cir. 1980) (en banc) ("That the Board may have made an error of fact or law is insufficient; the Board must have acted without statutory authority.").

Here, Manafort's Count II is not alleging a violation of *statutory* authority, but rather a violation of the scope of authority delegated by an internal DOJ directive—*i.e.*, the Appointment Order. *See* Compl. ¶ 61.  Manafort therefore cannot state a valid *ultra vires* claim. *See Pa. Mun. Authorities Ass'n v. Johnson*, No. 04-5073, 2005 WL 2491482, at *1 (D.C. Cir. June 3, 2005) (holding that *ultra vires* review is unavailable where a party "argue[s] only that the [agency officials] are acting in excess of authority delegated to them" but "do[es] not identify any statutory provision that the agency violated"); *see also Exxon Chemicals Am. v. Chao*, 298 F.3d 464, 468 (5th Cir. 2002) (*ultra vires* review is unavailable when "the *agency* has not exceeded the scope of its congressionally delegated authority," and instead the plaintiff "only alleges that a party within the agency exceeded its own authority within the administrative adjudicative process").

Moreover, even if an *ultra vires* claim could arise from an agency's violation of its own internal delegations, the claim still must be founded on the violation of an individual right. *See Kyne*, 358 U.S. at 190; *Larson*, 337 U.S. at 693.  But here, the Appointment Order provides Manafort no rights to enforce at all. *Cf.* Part II.B, *supra*.  The Appointment Order governs the relationship between the Acting Attorney General and the Special Counsel.  Nothing in the Appointment Order indicates an intent to benefit private parties; to the contrary, it incorporates the same regulation expressly stating that no rights are created. *See* Appointment Order § (d) (stating that 28 C.F.R. § 600.10 is applicable to the Special Counsel).  Thus, Manafort's attempt to bring an *ultra vires* claim fails at the outset:  Count II seeks only to enforce an internal Executive Branch delegation of authority, and that internal delegation provides Manafort no rights to enforce.

**3.**   Manafort's Count II also fails because it does not allege the kind of clear, obvious, and extreme error that can be adjudicated through *ultra vires* review.  This form of review is "of extremely limited scope."  *Griffith*, 842 F.2d at 493; *see also Nat'l Air Traffic Controllers Ass'n AFL-CIO v. Fed. Serv. Impasses Panel*, 437 F.3d 1256, 1263 (D.C. Cir. 2006).  Even where a plaintiff alleges that an agency has transgressed its statutory authority (which Manafort has not alleged here), the plaintiff must rely on "a specific prohibition" that is "clear and mandatory." *Leedom*, 358 U.S. at 188; *see Nat'l Air Traffic Controllers Ass'n*, 437 F.3d at 1262.  And the plaintiff "must show a patent violation of agency authority," *i.e.*, one that is "obvious" or "apparent."  *Fla. Health Scis. Ctr., Inc. v. Sec'y of Health & Human Servs.*, 830 F.3d 515, 522 (D.C. Cir. 2016); *see also, e.g.*, *Ass'n of Civilian Technicians, Inc. v. FLRA*, 283 F.3d 339, 344 (D.C. Cir. 2002) (there must be a "clear violation of an unambiguous statutory provision"); *Dart v. United States*, 848 F.2d 217, 222 (D.C. Cir. 1988) (question is "whether the agency action 'on its face' violated a statute"); *Physicians Nat'l House Staff Ass'n*, 642 F.2d at 496 (action must "violate[] some specific command" or "clear statutory mandate").

The bounds of *ultra vires* review must be applied with particular care to claims (like Manafort's) alleging that the charges filed by a criminal prosecutor exceed the prosecutor's authority.  Criminal prosecutions are "a core executive constitutional function," *Armstrong*, 517 U.S. at 465, and it is not always clear how a specific charge relates to a specific investigation, particularly when the full scope of that investigation may not be publicly known.  *Cf. Wayte v. United States*, 470 U.S. 598, 607 (1985) (noting that a "case's relationship to the Government's overall enforcement plan" is "not readily susceptible to the kind of analysis the courts are competent to undertake").  At a minimum, then, an *ultra vires* claim based on a prosecutor's charging decision should be permitted only upon the clearest showing that the prosecutor has acted

contrary to an express, unequivocal limitation on the prosecutor's authority. *See Armstrong*, 517 U.S. at 464 ("[T]he presumption of regularity supports . . . prosecutorial decisions and, in the absence of clear evidence to the contrary, courts presume that [prosecutors] have properly discharged their official duties.").

Manafort's Count II does not meet the high bar for *ultra vires* claims.  Manafort's claim is founded on the Acting Attorney General's Appointment Order, *see* Compl. ¶ 61, but that order does not contain the sort of "specific," "clear," and "mandatory" prohibition that can give rise to *ultra vires* review, nor does Manafort allege "obvious" or "apparent" excess.  Manafort's theory is that the Special Counsel is prohibited from investigating conduct that DOJ was assertedly aware of because such conduct could not be a "matter[] that arose or may arise directly from the investigation" assigned to the Special Counsel.  Appointment Order ¶ (b)(ii); *see* Compl. ¶¶ 61-63.  But the Acting Attorney General directed the Special Counsel to take over "the investigation confirmed by then-FBI Director James B. Comey" on March 20, 2017, *see* Appointment Order ¶ (b), and the Appointment Order did not specify the details of that non-public investigation or what matters arose from it.

Moreover, the provision Manafort relies on ("matters that arose or may arise directly from the investigation") does not establish the kind of specific and unequivocal prohibition necessary for an *ultra vires* claim.  Manafort is, in effect, reading an implicit limit into the Appointment Order—that the Special Counsel may only investigate crimes uncovered for the very first time during his investigation.  The very notion of an implicit limitation shows why Manafort's claim fails.  And whatever DOJ was previously aware of, prior knowledge of Manafort's crimes would not "obviously" establish that the investigation and prosecution of Manafort did not "arise directly from the investigation" assigned to the Special Counsel.  *Fla. Health Scis. Ctr.*, 830 F.3d at 522;

Appointment Order ¶ (b)(ii).  Indeed, by asking the Court to wade into those questions, Manafort is not only well outside of the narrow confines of the *ultra vires* doctrine, but he is also improperly asking the Court to second-guess prosecutorial judgments.

Finally, the Acting Attorney General has now confirmed, under oath, that Manafort's prosecution is properly within the Special Counsel's authority.  *See Rosenstein Testimony* at 28-29 ("I can assure you that the special counsel is conducting himself consistently with our understanding about the scope of his investigation" and to "the extent there was any ambiguity," the Special Counsel has been authorized to include "those matters within his investigation."); *see also id.* at 146.  This only underscores that the Special Counsel's investigation of Manafort does not remotely meet the standard for an *ultra vires* claim to proceed—particularly when that claim seeks to set aside prosecutorial decisions at the heart of Executive discretion.  *Cf. In re Sealed Case*, 131 F.3d 208, 214 (D.C. Cir. 1997) ("The decision to invoke the power of the federal government and the criminal jurisdiction of federal courts rests peculiarly within the province of the Executive").  Count II is therefore not a cognizable claim.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint for failure to state a claim upon which relief can be granted.

Dated: February 2, 2018

Respectfully submitted,

JOHN R. TYLER
Assistant Director

*/s/ Daniel Schwei*
DANIEL SCHWEI (N.Y. Bar)
Senior Trial Counsel
ANJALI MOTGI (TX Bar No. 24092864)
Trial Attorney
United States Department of Justice
20 Massachusetts Avenue, NW

Washington, DC 20530
Tel: (202) 305-8693
Fax: (202) 616-8470
Daniel.S.Schwei@usdoj.gov