**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| PAUL J. MANAFORT, JR., )<br><br>*Plaintiff,* )<br><br>v. )<br><br>UNITED STATES DEPARTMENT OF<br>JUSTICE, *et al.,* )<br><br>*Defendants.* ) | Civ. No. 1:18-CV-00011-ABJ<br><br>Judge Amy Berman Jackson |

## PLAINITFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Kevin M. Downing
(D.C. Bar #1013894)
Thomas E. Zehnle
(D.C. Bar #415556)
601 New Jersey Avenue, N.W.
Suite 620
Washington, D.C.  20001
kevindowning@kdowninglaw.com

*Counsel for Plaintiff*

# TABLE OF CONTENTS

Page

INTRODUCTION ............................................................................................................ 1

BACKGROUND ............................................................................................................. 3

I.     Legal Background ............................................................................................... 3

       A.     The Constitutional Principle of Accountability
              (and a Brief and Disastrous Departure) ................................................. 3

       B.     The Justice Department's Current Special Counsel Regulations ........... 4

II.    The Events Leading to the Filing of the Complaint ........................................... 6

       A.     The Appointment Order of May 17, 2017 ............................................. 6

       B.     The Special Counsel's Investigation ..................................................... 8

III.   The Complaint and Motion To Dismiss ............................................................. 9

STANDARD OF REVIEW ............................................................................................ 10

ARGUMENT ................................................................................................................. 10

I.     The Complaint Properly Seeks To Set Aside an Invalid
       and *Ultra Vires* Appointment Order ................................................................ 11

       A.     This Court Has Authority To Grant Specific Relief That
              May Affect Prospective Prosecutions ................................................. 12

       B.     The Government's Appeal to Other "Fundamental
              Principles" Fails .................................................................................. 18

II.    The Complaint States a Claim Under the APA ................................................ 20

       A.     Mr. Manafort Has Standing Sufficient To Support a
              Claim Under the APA .......................................................................... 20

       B.     APA Review Is Available To Address Actions Taken
              Without Legal Authority and in Excess of Jurisdiction ....................... 27

C.      The Complaint Challenges Final Agency Action ................................................... 30

D.      Mr. Manafort Has No Other Adequate Remedy at Law ....................................... 31

III.    Count II States Claims for Injunctive Relief Against
Federal Officials Acting in Excess of Their Legal Authority........................................... 32

A.      Count II Properly Seeks Declaratory Relief
Against *Ultra Vires* Action ................................................................................. 32

B.      The Acting Attorney General's Congressional Testimony at
Most Raises Factual Disputes Concerning Count II That
Cannot Be Resolved on a Motion To Dismiss....................................................... 37

CONCLUSION.............................................................................................................................. 39

# TABLE OF AUTHORITIES

Page(s)

## CASES

*In re Al-Nashiri,*
  835 F.3d 110 (D.C. Cir. 2016) ......................................................................................16, 17

*Alden v. Maine,*
  527 U.S. 706 (1999) ..............................................................................................................3

*Am. Fed'n of Gov't Emps. v. Rumsfeld,*
  321 F.3d 139 (D.C. Cir. 2003) ............................................................................................25

*Am. Sch. of Magnetic Healing v. McAnnulty,*
  187 U.S. 94 (1902) ........................................................................................................26, 33

*Amgen, Inc. v. Smith,*
  357 F.3d 103 (D.C. Cir. 2004) ............................................................................................20

*Andrade v. Lauer,*
  729 F.2d 1475 (D.C. Cir. 1984) ....................................................................................21, 22

*Appalachian Power Co. v. EPA,*
  208 F.3d 1015 (D.C. Cir. 2000) ..........................................................................................30

*Armstrong v. Exceptional Child Ctr., Inc.,*
  135 S. Ct. 1378 (2015) ........................................................................................................33

*Batterton v. Marshall,*
  648 F.2d 694 (D.C. Cir. 1980) ............................................................................................28

*Bello v. Howard Univ.,*
  898 F. Supp. 2d 213 (D.D.C. 2012) ....................................................................................38

*Bennett v. Spear,*
  520 U.S. 154 (1997) ............................................................................................................31

*Bowen v. Mich. Acad. of Fam. Physicians,*
  476 U.S. 667 (1986) ............................................................................................................20

*Buckley v. Valeo,*
  424 U.S. 1 (1976) ................................................................................................................22

*Cabrera v. Schafer,*
  178 F. Supp. 3d 69 (E.D.N.Y. 2016) ..................................................................................38

*Cal. Human Dev. Corp. v. Brock,*
  762 F.2d 1044 (D.C. Cir. 1985) ..........................................................................29

*Chamber of Commerce of the U.S. v. Reich,*
  74 F.3d 1322 (D.C. Cir. 1996) ............................................................................33

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.,*
  467 U.S. 837 (1984) ...........................................................................................24

*Chi. & S. Air Lines, Inc. v. Waterman S.S. Corp.,*
  333 U.S. 103 (1948) .......................................................................................30, 31

*Chiron Corp. & PerSeptive Biosystems, Inc. v. Nat'l*
  *Transp. Safety Bd.*, 198 F.3d 935 (D.C. Cir. 1999) ...........................................28

*Citizens for Responsibility & Ethics in Wash. v. Dep't of Justice,*
  846 F.3d 1235 (D.C. Cir. 2017) ..........................................................................31

*Clarke v. Sec. Indus. Ass'n,*
  479 U.S. 388 (1987) ......................................................................................20, 21

*Columbia Cas. Co. v. Neighborhood Risk Mgmt. Corp.,*
  No. 14-cv-0048 (AJN), 2015 WL 3999192
  (S.D.N.Y. June 29, 2015) ....................................................................................38

*Croddy v. FBI,*
  Civil Action No. 00-651 (EGS), 2006 WL 2844261
  (D.D.C. Sept. 29, 2006) ......................................................................................24

*Cunningham v. Macon & Brunswick R.R. Co.,*
  109 U.S. 446 (1883) ...........................................................................................26

*Davis v. Dep't of Justice,*
  610 F.3d 750 (D.C. Cir. 2010) ............................................................................15

*Deaver v. Seymour,*
  822 F.2d 66 (D.C. Cir. 1987) ........................................................................ *passim*

*Doran v. Salem Inn, Inc.,*
  422 U.S. 922 (1975) ...........................................................................................13

*Dugan v. Rank,*
  372 U.S. 609 (1963) ...........................................................................................33

*Edmond v. United States,*
  520 U.S. 651 (1997) ...........................................................................................22

*Environmentel, LLC v. FCC,*
    661 F.3d 80 (D.C. Cir. 2011) ........................................................................24

*Erie Boulevard Hydropower, LP v. FERC,*
    878 F.3d 258 (D.C. Cir. 2017) .............................................................24, 29

*Esch v. Yeutter,*
    876 F.2d 976 (D.C. Cir. 1989) ....................................................................29

*Exxon Chems. Am. v. Chao,*
    298 F.3d 464 (5th Cir. 2002) ......................................................................34

*Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.,*
    561 U.S. 477 (2010) ..............................................................................3, 22

*Freytag v. Comm'r,*
    501 U.S. 868 (1991) ....................................................................................22

*Friedler v. Gen. Servs. Admin.,*
    271 F. Supp. 3d 40 (D.D.C. 2017) .............................................................24

*Fuller v. Winter,*
    538 F. Supp. 2d 179 (D.D.C. 2008) ...........................................................24

*Garcia v. Vilsack,*
    563 F.3d 519 (D.C. Cir. 2009) ....................................................................31

*Gen. Elec. Co. v. EPA,*
    290 F.3d 377 (D.C. Cir. 2002) ....................................................................30

*Griffith v. Fed. Labor Relations Auth.,*
    842 F.2d 487 (D.C. Cir. 1988) ....................................................................27

*Huffman v. Pursue, Ltd.,*
    420 U.S. 592 (1975) ....................................................................................13

*Juluke v. Hodel,*
    811 F.2d 1553 (D.C. Cir. 1987) ...................................................... *passim*

*Knox Hill Tenant Council v. Washington,*
    448 F.2d 1045 (D.C. Cir. 1971) ..................................................................33

*Kowal v. MCI Commc'ns Corp.,*
    16 F.3d 1271 (D.C. Cir. 1994) ....................................................................10

*Kugler v. Helfant,*
    421 U.S. 117 (1975) ....................................................................................17

*Larson v. Domestic & Foreign Commerce Corp.*,
  337 U.S. 682 (1948)................................................................................27, 33, 34

*Leedom v. Kyne*,
  358 U.S. 184 (1958)..............................................................................................28

*Malone v. Bowdoin*,
  369 U.S. 643 (1962)..............................................................................................33

*Match-E-Be-Nash-She-Wish Band of
Pottawatomi Indians v. Patchak*,
  567 U.S. 209 (2012)................................................................................20, 21, 23

*McNutt v. Hills*,
  426 F. Supp. 990 (D.D.C. 1977)..........................................................................24

*Mich. Corr. Org. v. Mich. Dep't of Corr.*,
  774 F.3d 895 (6th Cir. 2014) ...............................................................................34

*Mistick PBT v. Chao*,
  440 F.3d 503 (D.C. Cir. 2006)..............................................................................24

*Morrison v. Olson*,
  487 U.S. 654 (1988)..........................................................................................4, 22

*Nat'l Ass'n of Home Builders v. Norton*,
  415 F.3d 8 (D.C. Cir. 2005)...........................................................................30, 31

*Nat'l Audubon Soc'y, Inc. v. Davis*,
  307 F.3d 835 (9th Cir. 2002) ...............................................................................34

*Nat'l Constructors Ass'n v. Marshal*,
  581 F.2d 960 (D.C. Cir. 1978)..............................................................................29

*Nat'l Envtl. Dev. Ass'n's Clean Air Project v. EPA*,
  752 F.3d 999 (D.C. Cir. 2014)..............................................................................24

*Nat'l Fed'n of Fed. Emps. v. Cheney*,
  883 F.2d 1038 (D.C. Cir. 1989)............................................................................25

*N.Y. Tel. Co. v. Sec'y of Army*,
  657 F. Supp. 18 (D.D.C. 1986) ............................................................................23

*Noble v. Union River Logging Co.*,
  147 U.S. 165 (1893)..............................................................................................26

*Pac. Gas & Elec. Co. v. Fed. Power Comm'n*,
  506 F.2d 33 (D.C. Cir. 1974)................................................................................28

vi

*Pa. Mun. Auths. Ass'n v. Johnson*,
    No. 04-5073, 2005 WL 2491482 (D.C. Cir. June 3, 2005) ....................................34

*NB ex rel. Peacock v. District of Columbia*,
    794 F.3d 31 (D.C. Cir. 2015) ...............................................................................10

*Pearson v. Callahan*,
    555 U.S. 223 (2009)...............................................................................................3

*Phelps v. Hamilton*,
    59 F.3d 1058 (10th Cir. 1995) ............................................................................17

*Port of Bos. Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic*,
    400 U.S. 62 (1970)...............................................................................................30

*Rollins Envtl. Servs. v. EPA*,
    937 F.2d 649 (D.C. Cir. 1991) ............................................................................27

*Schilling v. Rogers*,
    363 U.S. 666 (1960)..............................................................................................34

*In re Sealed Case*,
    829 F.2d 50 (D.C. Cir. 1987) ..............................................................................17

*Service v. Dulles*,
    354 U.S. 363 (1957)..............................................................................................29

*Shays v. FEC*,
    414 F.3d 76 (D.C. Cir. 2005) ..............................................................................23

*Shields v. Utah Idaho Cent. R.R. Co.*,
    305 U.S. 177 (1938)......................................................................................18, 33

*Tenn. Elec. Power Co. v. TVA*,
    306 U.S. 118 (1939)..............................................................................................26

*Town of Stratford, Conn. v. FAA*,
    285 F.3d 84 (D.C. Cir. 2002) ..............................................................................25

*United States v. Armstrong*,
    517 U.S. 456 (1996)..............................................................................................19

*Vann v. Dep't of the Interior*,
    701 F.3d 927 (D.C. Cir. 2012) ............................................................................34

*Ex parte Young*,
    209 U.S. 123 (1908)......................................................................................33, 34

*Younger v. Harris*,
  401 U.S. 37 (1971) .......................................................................................... *passim*

## STATUTES & RULES

5 U.S.C. § 702 ........................................................................................................ 25

5 U.S.C. § 703 ........................................................................................................ 19

28 U.S.C. § 501 *et seq.* ........................................................................................... 25

28 U.S.C. § 2201 .................................................................................................... 34

Ethics in Government Act of 1978, Pub. L. No. 95-521, 92 Stat. 1824 ................... 3, 15

Federal Rule of Criminal Procedure 12(b)(1) ..................................................... 15, 16

## LEGISLATIVE MATERIALS

92 Cong. Rec. 2153 (1946) ................................................................................ 25, 26

*The Future of the Independent Counsel Act: Hearing Before the S. Comm. on
  Gov't Affairs*, 106th Cong. 425 (1999) .................................................................. 4

*Hearing Before the H. Comm. on the Judiciary*, 115th Cong. 31 (2017) ................... 38

## REGULATIONS

28 C.F.R. §§ 600.1-600.10 ...................................................................................... 5

28 C.F.R. § 600.1 ........................................................................................ 5, 21, 30

28 C.F.R. § 600.3(a) ............................................................................................. 30

28 C.F.R. § 600.4 .................................................................................................. 5

28 C.F.R. § 600.4(a) ...................................................................................... *passim*

28 C.F.R. § 600.4(b) ...................................................................................... *passim*

28 C.F.R. § 600.7 ................................................................................................ 30

28 C.F.R. § 600.7(a) ............................................................................................ 30

28 C.F.R. § 600.10 ........................................................................................ 28, 35

36 C.F.R. § 50.19(e)(8)(i) ..................................................................................... 12

36 C.F.R. § 50.19(e)(10) ...................................................................................... 12

## ADMINISTRATIVE MATERIALS

Office of the Att'y Gen*., Appointment of Special Counsel To Investigate Government Conduct Relative to Certain Events Occurring in Waco, Texas*, Order No. 2256-99 (Sept. 9, 1999) ..........................................................................30

*Office of Special Counsel*, 64 Fed. Reg. 37,038 (July 9, 1999)....................................................10

## OTHER AUTHORITIES

*The Federalist* (Hamilton) (Rossiter ed., 1961)..............................................................................3

Gerard E. Lynch, *The Problem Isn't in the Starrs But in a Misguided Law*, WASH. POST, Feb. 22, 1998 .......................................................................................................4, 29

Cass R. Sunstein, *Bad Incentives and Bad Institutions*, 86 GEO. L.J. 2267 (1998).......................4

Dick Thornburgh, Mark H. Tuohey III & Michael Davidson, *Attorney General's Special Counsel Regulations*, BROOKINGS (Sept. 15, 1999)...........................................................................................................4, 21, 29

Adrian Vermeule, Morrison v. Olson *Is Bad Law*, LAWFARE (June 9, 2017) .....................................................................................................................4

## **INTRODUCTION**

This case concerns one of the core principles of our constitutional form of government—political accountability.   From the Nation's founding, its laws were enforced by politically accountable members of the Executive Branch.   Following a disastrous, decades-long experiment with prosecution by politically unaccountable "independent counsels," Congress and the Executive Branch returned us to the system of politically accountable law enforcement the Framers had envisioned.   The Ethics in Government Act of 1978, which had created the Office of the Independent Counsel, was abolished.   And while the Department of Justice ("DOJ") retained its authority to employ "special counsel" for particular matters, it established regulations to ensure that politically accountable officials would remain responsible.   Under those regulations, special counsel can be appointed only by politically accountable officers—the Attorney General or Acting Attorney General.   The authority granted in such appointments is limited to specifically identified matters.   And any expansion of the special counsel's jurisdiction beyond those specifically identified matters must be reviewed and authorized by a politically accountable public official as well.

This action challenges the appointment of Special Counsel Robert S. Mueller III as beyond the authority granted by those regulations.   Mr. Mueller was appointed to investigate alleged coordination between the 2016 presidential campaign of Donald J. Trump and the Russian government.   But the Appointment Order added further authority to investigate "any matters that arose or may arise directly from [that] investigation."   Compl. Ex. A ("Appointment Order"), ¶(b)(ii).   Relying on that supposed authority, the Special Counsel has undertaken an extensive investigation that goes well beyond any alleged coordination during the 2016 presidential campaign.   Although Mr. Manafort served as President Trump's campaign chairman for six months in 2016, he is now being investigated for ***previously known*** business conduct that

*long preceded*, and had no connection to, the 2016 presidential election.  And nothing prevents the Special Counsel from threatening Mr. Manafort with further investigations, in additional jurisdictions.  In fact, this suit was filed shortly after and in direct response to the Special Counsel's threats to bring additional charges against Mr. Manafort in venues outside the District of Columbia.  Those imminent threats cannot be denied.

DOJ regulations do not permit the grant of unbounded, *ex ante* authority to investigate collateral matters simply because they "may arise directly from" the authorized investigation. DOJ regulations provide that, if the Special Counsel wishes to investigate matters beyond those specifically identified in the original grant of jurisdiction, he "*shall consult with the Attorney General*, who *will determine whether to include the additional matters* within the Special Counsel's jurisdiction or assign them elsewhere."  28 C.F.R. § 600.4(b) (emphasis added).  That requirement is critical:   It ensures that important decisions regarding the scope of any investigation remain in the hands of politically accountable officials.  This action challenges the relevant portion of the Appointment Order—authorizing pursuit of anything that arises from the investigation—as *ultra vires*, and seeks to restrain the Special Counsel to his lawfully granted authority under the DOJ's own regulations.

The government's motion to dismiss is premised largely on the notion that this Court lacks authority to issue relief that affects an ongoing federal criminal investigation.  However, under binding D.C. Circuit precedent, this Court has the authority to grant precisely the prospective equitable relief requested here.   Contrary to the government's assertions, Mr. Manafort has no adequate legal remedy for the Special Counsel's systemic assertion of *ultra vires* authority against him.   The government seeks to relegate Mr. Manafort to a game of criminal-procedure whack-a-mole that wastes judicial resources; that cannot offer complete (or

even adequate) relief; and that leaves him powerless in any effort to match the government's resources.  Under *Juluke v. Hodel*, 811 F.2d 1553, 1558-59 (D.C. Cir. 1987), relief is appropriate here.

## BACKGROUND

I.  LEGAL BACKGROUND

### A.  The Constitutional Principle of Accountability (and a Brief and Disastrous Departure)

The Founders recognized that, "[i]n framing a government which is to be administered by men over men, the great difficulty lies in this: you must first enable the government to control the governed; and in the next place oblige it to control itself.  A dependence on the people is, no doubt, the primary control on the government; but experience has taught mankind the necessity of auxiliary precautions."  *The Federalist No. 51*, at 322 (Hamilton) (Rossiter ed., 1961).  One of the most critical elements of that system is the "political accountability" of public officers, which is "essential to our liberty and republican form of government."  *Alden v. Maine*, 527 U.S. 706, 751 (1999); *see also Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 483 (2010) ("Since 1789, the Constitution has been understood to empower the President to keep [public] officers accountable."); *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (recognizing as an "important interest[] . . . the need to hold public officials accountable when they exercise power irresponsibly").

In 1978, Congress briefly set political accountability aside, enacting the now-infamous independent counsel statute.  Under that statute, lawyers from outside the Department of Justice ("DOJ") could be granted nearly unlimited prosecutorial authority to investigate highly sensitive matters involving Executive Branch officials.  *See* Ethics in Government Act of 1978, Pub. L. No. 95-521, 92 Stat. 1824; Compl. ¶2.  Kenneth Starr, arguably the most powerful independent

counsel appointed under that statute, urged Congress to abandon the independent counsel project, calling it a "structurally unsound" and "constitutionally dubious" effort "to cram a fourth branch of government into [a] three-branch system." *The Future of the Independent Counsel Act: Hearing Before the S. Comm. on Gov't Affairs*, 106th Cong. 425 (1999) (statement of Kenneth W. Starr). And Attorney General Janet Reno made clear that "[i]t can't get any worse." *Id.* at 261 (testimony of Janet Reno, Att'y Gen. of the United States); *see* Compl. ¶ 5.

The independent counsel statute expired in 1999 when Congress refused to reauthorize it, expressing a "bipartisan judgment . . . that the Independent Counsel was a kind of constitutional Frankenstein's monster, which ought to be shoved firmly back into the ice from which it was initially untombed." Adrian Vermeule, Morrison v. Olson *Is Bad Law*, LAWFARE (June 9, 2017); *see* Compl. ¶ 4. The statute created "unaccountable prosecutors wielding infinite resources whenever there is a plausible allegation of a technical crime." Gerard E. Lynch, *The Problem Isn't in the Starrs But in a Misguided Law*, WASH. POST, Feb. 22, 1998, at C3; *see* Compl. ¶ 3. For that reason, the statute was "utter[ly] incompatib[le] . . . with our constitutional traditions." *Morrison v. Olson*, 487 U.S. 654, 709 (1988) (Scalia, J., dissenting); *see* Compl. ¶ 3. The independent counsel statute has come to be viewed as a "disastrous failure." Cass R. Sunstein, *Bad Incentives and Bad Institutions*, 86 GEO. L.J. 2267, 2281, 2283 (1998).

### B.        The Justice Department's Current Special Counsel Regulations

As the independent counsel statute was set to lapse in 1999, Congress convened a bipartisan project to thoroughly consider actions Congress and the Executive Branch might take to guard against the abuses experienced under the independent counsel regime. *See generally* Dick Thornburgh, Mark H. Tuohey III & Michael Davidson, *Attorney General's Special Counsel Regulations*, BROOKINGS (Sept. 15, 1999). In June 1999, after extensive consideration, the DOJ promulgated regulations governing the Attorney General's authority to appoint an outside

"special counsel" to investigate matters that may present a conflict of interest for the DOJ or the Executive Branch. *See* 28 C.F.R. §§ 600.1-600.10 (the "Special Counsel Regulations"). Although the regulations allow for the appointment of "special counsel" outside the DOJ to investigate and prosecute certain matters, they impose limits on the scope of authority that may be granted so as to ensure proper political accountability.

For example, under the Special Counsel Regulations, a politically accountable federal officer—the Attorney General—is responsible for determining whether to appoint a special counsel.[1] The scope of jurisdiction the Attorney General may grant, moreover, is strictly circumscribed. To ensure that the special counsel does not become a roving commission, the special counsel's jurisdiction must be set forth in specific terms in the appointment order. Under 28 C.F.R. § 600.4(a), when granting "[o]riginal jurisdiction" to a special counsel, the Attorney General must provide ***"a specific factual statement of the matter to be investigated."*** *Id.* (emphasis added). Section 600.4(a) provides that the power to investigate that matter also includes power to address efforts to impede the investigation: The grant of original jurisdiction "shall . . . include the authority to investigate and prosecute federal crimes committed in the course of, and with intent to interfere with, the Special Counsel's investigation." *Id.*

The Special Counsel Regulations separately address how special counsel may acquire "additional jurisdiction" beyond the specific matter identified in the grant of "[o]riginal jurisdiction." *See* 28 C.F.R. § 600.4. In particular, § 600.4(b) provides that, "[i]f in the course of his or her investigation the Special Counsel concludes that additional jurisdiction beyond that specified in his or her original jurisdiction is necessary, . . . he or she ***shall consult with the***

---

[1] Or, as here, "in cases in which the Attorney General is recused, the Acting Attorney General[ ] will appoint a Special Counsel when he or she determines that criminal investigation of a person or matter is warranted." 28 C.F.R. § 600.1.

***Attorney General***, ***who will determine*** whether to ***include the additional matters*** within the Special Counsel's jurisdiction or assign them elsewhere." 28 C.F.R. § 600.4(b) (emphasis added). Thus, any "additional jurisdiction" beyond the special counsel's "original jurisdiction"—beyond the "specific factual statement of the matter to be investigated"—may be granted by the Attorney General only ***after*** the special counsel consults with the Attorney General and ***after*** the Attorney General determines to include those additional matters in the special counsel's jurisdiction.

Those requirements serve a critical role. A central problem with the independent counsel statute was that it provided essentially unlimited funding to conduct investigations that were essentially unlimited in scope. The Special Counsel Regulations, by contrast, are specifically designed to ensure political oversight over special counsels; to specify the scope of their original jurisdiction; to prevent expansion of that jurisdiction except where authorized by politically accountable officials; and to thereby avoid the overbearing pressures that result when prosecutors, with virtually unlimited resources, focus on a singular target with no competing priorities.

## II.   THE EVENTS LEADING TO THE FILING OF THE COMPLAINT

### A.   The Appointment Order of May 17, 2017

By early 2017, the DOJ revealed that it had been investigating allegations that the presidential campaign of Donald J. Trump coordinated with the Russian government to influence the outcome of the 2016 presidential election. Compl. ¶ 27. In March 2017, Attorney General Jeff Sessions recused himself from the matter, making Deputy Attorney General Rod Rosenstein the Acting Attorney General with respect to the investigation. *Id.* ¶¶ 28-29. The Acting Attorney General soon decided that the DOJ should not proceed with the investigation itself. *Id.* ¶ 30. Accordingly, on May 17, 2017, the Acting Attorney General issued the Appointment Order

authorizing Mr. Mueller—then an attorney in private practice—as Special Counsel to conduct an "investigation of the Russian government's efforts to interfere in the 2016 presidential election." Appointment Order.

Consistent with the requirements of the Special Counsel Regulations, Paragraphs (b)(i) and (b)(iii) of the Appointment Order provide a "specific factual statement of the matter to be investigated" under Mr. Mueller's "[o]riginal jurisdiction."  28 C.F.R. § 600.4(a).  In particular, Paragraph (b)(i) of the Appointment Order gives the Special Counsel original jurisdiction to investigate "any links and/or coordination between the Russian government and individuals associated with the campaign of President Donald Trump."   Appointment Order ¶ (b)(i). Consistent with DOJ regulations, Paragraph (b)(iii) gives the Special Counsel jurisdiction over illegal attempts to obstruct his exercise of original jurisdiction:  It authorizes him to pursue "any other matters within the scope of 28 C.F.R. § 600.4(a)," including any perjury and obstruction of justice committed in the course of the Special Counsel's investigation.   Appointment Order ¶ (b)(iii); *see* 28 C.F.R. § 600.4(a).

Paragraph (b)(ii) of the Appointment Order, however, purports to grant the Special Counsel further authority still.  It states that he may also investigate and prosecute "***any matters that arose or may arise*** directly from the investigation."  Appointment Order ¶ (b)(ii) (emphasis added).  The Complaint alleges that the Acting Attorney General lacks authority to grant such jurisdiction under the Special Counsel Regulations.  Those regulations address cases in which the special counsel finds additional matters, beyond the specific factual statement of the matters to be investigated, that the special counsel wishes to address.  *See* 28 C.F.R. § 600.4(b).  The special counsel must "consult with the Attorney General" to obtain that "additional jurisdiction."  *Id.* And the Attorney General must "determine whether to include the additional matters within the

Special Counsel's jurisdiction or assign them elsewhere." *Id.* Granting the Special Counsel *ex ante* authority to pursue any matters that "arose or may arise directly from the investigation" is inconsistent with those requirements. It omits the required consultation; it omits the Attorney General's issue-specific determination; and, with those, it omits the decision by a politically accountable official that the regulations were designed to ensure.

###    B.    The Special Counsel's Investigation

Following the Appointment Order, the Special Counsel turned his attention to Mr. Manafort and decade-old business dealings entirely unmoored from any allegations of coordination between the Russian government and the 2016 presidential campaign of Donald Trump. Compl. ¶¶36-37. In particular, the Special Counsel focused on the involvement of Mr. Manafort's company in a political campaign in Ukraine that *ended in 2014*, Mr. Manafort's bank accounts and tax filings in *2006 through 2014*, and the personal expenditures Mr. Manafort allegedly made using funds earned from political consulting work he performed for a Ukrainian public figure in *2006 through 2014*. *Id.* ¶¶37-38. All of those matters predate the alleged coordination with Russia, and Mr. Manafort's brief 2016 involvement in the Trump campaign, by years.

In July 2017, the Special Counsel applied for, obtained, and caused to be executed a search warrant of Mr. Manafort's home in Alexandria, Virginia. Compl. ¶42. The Special Counsel justified the search by asserting that the Appointment Order grants him jurisdiction and authority to obtain materials that purportedly evidence potential tax and white-collar crimes committed on or after January 1, 2006—more than a decade before the Trump presidential campaign launched. *Id.* In August 2017, Mr. Mueller issued more than 100 subpoenas related to Mr. Manafort, requesting records dating back to January 1, 2005. *Id.* Those actions all related to

alleged dealings that had been widely known since at least 2007, when they were extensively reported in the press. *Id.* ¶ 39.

On October 27, 2017, the Special Counsel signed an indictment charging Mr. Manafort and a business associate with offenses pertaining to business dealings that, with limited exceptions, predate President Trump's campaign. Compl. ¶ 45. That criminal proceeding is currently pending before this Court in *United States v. Manafort, et al.*, No. 17-cr-201-ABJ (D.D.C.).

## III. THE COMPLAINT AND MOTION TO DISMISS

On January 3, 2018, Mr. Manafort filed the present civil action. Count I alleges that the Appointment Order is outside the DOJ's and the Acting Attorney General's authority under the Special Counsel Regulations. Compl. ¶¶ 52-53. Count II alleges that the Special Counsel lacks authority to investigate Mr. Manafort and initiate proceedings against him under Paragraph (b)(ii) of the Appointment Order because that provision was not authorized by law, and because the Special Counsel's actions exceed the facial scope of jurisdiction set forth in the Appointment Order in any event. *Id.* ¶¶ 62-63. The Complaint seeks to "set[] aside the Appointment Order" in relevant part and "enjoin[] Mr. Mueller from investigating matters beyond the scope of the grant of jurisdiction in the Appointment Order." Compl. Prayer for Relief ¶¶ a, d.

On February 2, 2018, the government filed a motion to dismiss the Complaint. The crux of the government's motion is that the Court may not address the Special Counsel's authority because doing so would interfere with an ongoing criminal matter. Gov't Mem. 11-19. The government further argues that Count I fails to state a claim under the APA because, among other reasons, Mr. Manafort has an adequate remedy in the pending criminal proceeding. *Id.* at 19-28. Finally, the government argues that Count II fails to state a claim either under the Declaratory Judgment Act or for non-statutory review of *ultra vires* action, because the

Declaratory Judgment Act does not provide for judicial review, and the challenged conduct does not constitute *ultra vires* action. *Id.* at 28-34.

## STANDARD OF REVIEW

"At the motion-to-dismiss stage," the Court "must accept all factual allegations in the complaint as true." *NB ex rel. Peacock v. District of Columbia*, 794 F.3d 31, 42 (D.C. Cir. 2015). "The complaint should not be dismissed unless [the] plaintiff[ ] can prove no set of facts in support of [his] claim which would entitle [him] to relief. The complaint, moreover, is construed liberally in the plaintiff['s] favor." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). The plaintiff is entitled to "the benefit of all inferences that can be derived from the facts alleged." *Id.*

## ARGUMENT

Having learned the consequences of granting prosecutorial authority without corresponding political accountability, the DOJ promulgated Special Counsel Regulations that limit the Attorney General's authority to appoint and accord jurisdiction to special counsel. Under those regulations, all appointments are made by a politically accountable official. They are confined to specific matters set forth in an appointment order. And jurisdiction beyond those specifically defined matters can be granted only following consultation with, and a decision by, the Attorney General.

The government does not deny that the Special Counsel's "authority is subject to the overall regulatory framework" set out in the Special Counsel Regulations. Gov't Mem. 10 (quoting *Office of Special Counsel*, 64 Fed. Reg. 37,038, 37,040 (July 9, 1999)). That includes the limits on the Special Counsel's original jurisdiction, and the mandatory process for expanding jurisdiction after the fact. *Id.* But the government argues that this Court cannot address whether the Special Counsel has actually been granted lawful authority here—or is

10

acting *ultra vires*—because doing so might "interfer[e] with ongoing criminal matters." *Id.* at 16. That is incorrect. Federal courts may, in the interests of equity, issue equitable relief even if it has a forward-looking impact on criminal prosecutions. *See Juluke v. Hodel*, 811 F.2d 1553, 1558-59 (D.C. Cir. 1987).

The government's argument, moreover, proceeds from the erroneous premise that "[t]he clear object of Manafort's civil suit is to interfere with his ongoing criminal prosecution." Gov't Mem. 11. The Complaint seeks prospective relief: an order declaring invalid the *ultra vires* Appointment Order and enjoining the Special Counsel's future *ultra vires* exercise of authority under that Order. Compl. Prayer for Relief ¶¶a, d. That relief is critical given the incontrovertible threat of repeated prosecution in additional jurisdictions. For the same reason, the government's proposed alternative remedy—seeking to dismiss the currently pending indictment—is not merely inadequate relief; it is tantamount to no relief at all. Finally, Mr. Manafort does not seek retroactive relief in this action through dismissal of the indictment against him. *See* Gov't Mem. 18 ("Manafort's counsel previously suggested that this civil lawsuit 'does not ask for dismissal of the indictment.'").[2] The government's arguments about interfering with a pending criminal proceeding provide no basis to dismiss this suit. The government's remaining arguments likewise fail.

## I.   THE COMPLAINT PROPERLY SEEKS TO SET ASIDE AN INVALID AND *ULTRA VIRES* APPOINTMENT ORDER

The government's primary argument is that, under *Younger v. Harris*, 401 U.S. 37 (1971), "civil courts cannot enjoin criminal prosecutions." Gov't Mem. 11. That argument is

---

[2] To the extent the Complaint can be read to seek dismissal of the indictment in the pending criminal case in this Court, Mr. Manafort expressly waives any such claim for relief in this civil case. Mr. Manafort is willing to amend the Complaint as necessary to clarify the scope of the relief sought.

misplaced.  The D.C. Circuit has long recognized that *federal courts* may award declaratory and injunctive relief on legal issues, even where they may affect *future federal criminal prosecutions*, so long as equity so demands.  Equity demands that outcome here.

A.     **This Court Has Authority To Grant Specific Relief That May Affect Prospective Prosecutions**

The government begins its analysis with *Deaver v. Seymour*, 822 F.2d 66 (D.C. Cir. 1987), and a corresponding analysis of *Younger* abstention.  But the analysis should begin with *Deaver*'s predecessor, *Juluke v. Hodel*, 811 F.2d 1553 (D.C. Cir. 1987).

1.     *Juluke* arose out of the arrests of protestors conducting a sit-in in front of the White House.  (The protestors sought to bring attention to the federal government's failure to upgrade a Washington, D.C. homeless shelter.)  After being arrested for violating 36 C.F.R. § 50.19(e)(8)(i) and (e)(10), they filed a lawsuit "seeking to enjoin the enforcement" of those regulations.  *Juluke*, 811 F.2d at 1555.

In that case, the government argued that the district court had no authority to issue equitable relief because of pending criminal proceedings against plaintiffs.  *Juluke*, 811 F.2d at 1556.  The government makes the same argument here.  Gov't Mem. 11-14.  In *Juluke*, the government relied on *Younger v. Harris*, which proscribed "*federal* court interference with *state* court proceedings."  *Juluke*, 811 F.3d at 1556.  The government again invokes *Younger v. Harris* here.  Gov't Mem. 11-12.  In that case, the D.C. Circuit "flatly reject[ed]" the argument.  *Juluke*, 811 F.3d at 1558.  The court could "find no support for . . . exten[ding] . . . *Younger*" "to cover the situation in which parallel civil and criminal proceedings take place in federal court."  *Id.* at 1556.  "[A]ny such extension," the Court further held, "would be *flatly at odds* with the prevailing case law."  *Id.* (emphasis added); *see also id.* at 1557 ("[*Younger*] *cannot be*

*read* . . . to have required the judge [in that case] to dismiss the civil action merely because of the existence of the criminal proceeding." (emphasis added)).  The same result is appropriate here.

Far from merely being "influenced by federalism concerns," as the government suggests (at 12), "*Younger*, at its core, is a case about the proper relationship between federal and *state* courts." *Juluke*, 811 F.2d at 1556 (emphasis added).  "It is a case *mostly* about considerations of federalism." *Id.* (emphasis added); *see also Huffman v. Pursue, Ltd.*, 420 U.S. 592, 601 (1975) ("Central to *Younger* was the recognition that ours is a system in which 'the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States.' ").  Reliance on *Younger* was misplaced in *Juluke* because the injunctive relief requested stood no chance of affecting a pending *state* criminal proceeding.  It is misplaced for the same reason here.

Under *Juluke*, the existence of an overlapping criminal action does not preclude courts from "consider[ing] the claim for injunctive relief" in appropriate circumstances.  811 F.2d at 1557; *see* Gov't Mem. 12-13.  In *Juluke*, the D.C. Circuit found it proper to consider a civil challenge to the "structures and parcels regulations" the plaintiffs were charged with violating because the plaintiffs "sought to enjoin *future* arrests for violations of th[os]e structures and parcels regulations."  811 F.2d at 1557 (emphasis added).  Because of that threatened future harm, "adjudication of the criminal cases" would not "afford them adequate relief."  *Id.* (emphasis added); *see Doran v. Salem Inn, Inc.*, 422 U.S. 922, 930-31 (1975) (*Younger* does not apply "[i]n the absence of" an "ongoing state criminal proceeding").

*Juluke* makes this an *a fortiori* case.  Mr. Manafort does not seek to enjoin the "existing prosecution" in this District.  He seeks to set aside an *ultra vires* Appointment Order that

subjects him to the threat of investigation after investigation, seizure after seizure, in jurisdiction after jurisdiction, so long as the Special Counsel deems them to have "arisen" out of the investigation.  The decree granting Mr. Manafort that relief might have an ***effect*** on the Special Counsel's willingness and ability to proceed with the existing prosecution.  But that does not distinguish *Juluke*:  Invalidation of the regulations at issue there likewise would have forestalled arrests and prosecution for their violation; that is precisely why the government sought to foreclose the civil suit.  But the D.C. Circuit held it was appropriate to consider equitable relief nonetheless.

That is not to say that *Younger* is irrelevant.  As *Juluke* makes clear, *Younger* is relevant insofar as it reflects the "general principle[] of equity jurisprudence" that "courts of equity should not act, and particularly should not act to restrain a criminal prosecution, ***when*** the moving party [1] has an adequate remedy at law and [2] will not suffer irreparable injury" absent equitable relief.  811 F.2d 1557 (emphasis added) (internal quotation marks omitted).  As explained below, the government's proposed legal relief—moving to dismiss a particular indictment—is anything but adequate.  *See* pp. 16, 31-32, *infra*.  To the contrary, relegating the defendant to seeking relief in a particular criminal case is patently insufficient to redress the repeated exercise of unlawful authority—whether that is unlawful arrests as in *Juluke* or impositions through investigative and prosecutorial authority as here.  *See Juluke*, 811 F.2d at 1557 ("Nor could adjudication of the criminal cases afford them adequate relief.").  And the government does not address irreparable harm at all.

2.      Ignoring *Juluke*, the government relies almost entirely on *Deaver v. Seymour*, 822 F.2d 66 (D.C. Cir. 1987), decided months after *Juluke*.  Contrary to the government's position, *Deaver* does not hold that "*Younger* applies to federal investigations and prosecutions."  Gov't

Mem. 13.  Nor could it have, as *Juluke* held precisely the opposite.  *See Davis v. Dep't of Justice*, 610 F.3d 750, 753 (D.C. Cir. 2010) (three-judge panel cannot overrule another three-judge panel).  In *Deaver*, the target of an independent counsel investigation sought to challenge the constitutionality of the independent counsel provisions of the Ethics in Government Act, 28 U.S.C. §§ 49, 591-98, by filing "a civil complaint in federal district court seeking declaratory and injunctive relief from [the] independent counsel['s] continued exercise of prosecutorial author-ity."  *Deaver*, 822 F.2d at 66.  After a nine-month investigation into Deaver's lobbying activities, the independent counsel had informed Deaver that "he was about to ask the grand jury to return an indictment."  *Id.* at 67.  "The next day," Deaver filed his complaint and "moved to enjoin preliminarily [the independent counsel's] efforts ***to obtain an indictment***, contending that immediate and irreparable harm would befall him if equitable relief were not granted."  *Id.* (emphasis added).  The district court granted a temporary restraining order but denied the preliminary injunction.  *Id.* at 68.  It reasoned that a motion to dismiss the indictment under Federal Rule of Criminal Procedure 12(b)(1) provided an adequate remedy at law, that Deaver was unlikely to succeed on the merits of his constitutional challenge, and that the "public interest required that any possible violations of the criminal law be speedily prosecuted."  *Id.*

The D.C. Circuit affirmed, ruling that Deaver had "no right to an injunction restraining a pending indictment in a federal court."  *Deaver*, 822 F.2d at 68.  Far from holding that *Younger* applies in the federal context, the D.C. Circuit made clear that, because "the *Younger* line of cases constricts federal intervention in ***state*** prosecutions, it does not necessarily control a petition for a federal civil injunction to restrain an ongoing ***federal*** criminal proceeding."  *Id.* at 69 (emphasis added) (citing *Juluke*, 811 F.2d at 1556-57).  Instead, the problem with Deaver's request for injunctive relief was that it was brought to interfere with ***one specific pending case***,

where Deaver had an adequate remedy at law.  *See id.*  Because Deaver could obtain the same relief—*i.e.*, dismissing the imminent indictment—through a motion under Federal Rule of Criminal Procedure 12(b)(1), he had an "adequate, although limited, opportunit[y] . . . to challenge shortcomings in prosecutorial authority." *Deaver*, 822 F.2d at 71.

That fact distinguishes *Deaver* from this case.  Mr. Manafort does not in this action seek to enjoin or dismiss the ongoing criminal action against him—the broadest relief he could obtain under Rule 12(b)(1).  Such relief, moreover, would not be adequate.  Nothing prevents the Special Counsel from subjecting Mr. Manafort to multiple investigations, in multiple jurisdictions, on multiple matters.  Indeed, that is precisely what the Special Counsel has threatened.  The only remedy that would be adequate in this context is one that directly addresses whether the Special Counsel has legal jurisdiction and authority—or whether his purported appointment exceeded the DOJ's authority under its own regulations.  Dismissal of one indictment would be no relief, as the Special Counsel could simply continue to exert his *ultra vires* authority over Mr. Manafort by bringing charges in different districts.[3]

3.     The government's laundry list of additional cases (at 14-15 & n.3) offers it no further support.  For example, in *In re Al-Nashiri*, 835 F.3d 110 (D.C. Cir. 2016), the court of appeals addressed only the propriety of federal-court interference with the Guantánamo Bay military commissions, which were established by Congress in the wake of the September 11 terrorist attacks.  *Id.* at 114-15, 118-28.  Central to the D.C. Circuit's analysis was "whether an 'important countervailing interest' permits a federal court to decline to adjudicate a defendant's

---

[3] For similar reasons, the government errs in invoking several district-court decisions to support its claim that "unwavering" precedent applies *Younger* abstention in this context.  *See* Gov't Mem. 14 n.3.  Those cases, like *Deaver*, are entirely inapt:  They all involve efforts to enjoin a single, ongoing criminal indictment, not to redress a threatened exercise of *ultra vires* authority across a broad spectrum of jurisdictions and matters.

pretrial claim that a military commission lacks subject matter jurisdiction to try his offense." *Id.*
at 124. The D.C. Circuit concluded that a "vital interest" did counsel against such interference:
"the need for federal courts to avoid exercising their equitable powers in a manner that would
unduly impinge on the prerogatives of the political branches in the sensitive realm of ***national
security***." *Id.* (emphasis added); *see also id.* at 125 ("In the realm of national security, the
expertise of the political branches is at its apogee."). The weighty national-security concerns at
the root of the D.C. Circuit's decision in *Al-Nashiri* are in no way implicated here.[4]

Finally, even in the context where *Younger* is relevant—where parties seek to enjoin ***state***
prosecutions—the Supreme Court has excluded cases "where there is a showing of 'bad faith' or
'harassment' by state officials responsible for the prosecution." *Kugler v. Helfant*, 421 U.S. 117,
124 (1975) (quoting *Younger*, 401 U.S. at 49). As noted above, so long as the *ultra vires*
Appointment Order remains in place, the Special Counsel can continue to investigate and pursue
new charges against Mr. Manafort in different districts for conduct that long predates the 2016
presidential election. The Special Counsel has made clear that he intends to do just that. *See*
p. 2, *supra*. For that reason, too, *Younger* abstention does not apply. *See, e.g.*, *Phelps v.
Hamilton*, 59 F.3d 1058, 1065 (10th Cir. 1995) (exception to *Younger* applies where prosecution
was "conducted in such a way as to constitute harassment and an abuse of prosecutorial
discretion, typically through the unjustified and oppressive use of multiple prosecutions"). Thus,
even if *Younger* applied to the parallel civil and criminal proceedings in federal court (which it

---

[4] *In re Sealed Case*, 829 F.2d 50 (D.C. Cir. 1987), is even further afield. *See* Gov't Mem. 19.
That case did not involve a separate suit for civil injunctive relief—or an analysis of *Younger*. It
was an appeal from a contempt order for refusing to comply with a grand jury subpoena issued
pursuant to an independent counsel investigation. *See* 829 F.2d at 53-54, 62. The witness had
refused to comply with the subpoena, urging that the independent counsel's appointment was
unlawful. *See id.* at 53-54. The D.C. Circuit held that the only ripe issue was "the lawfulness of
the specific subpoena issued," not the "other investigative or prosecutorial actions [the
independent counsel] may undertake." *Id.* at 62.

does not), and even if *Younger* extended beyond the context of a single, ongoing criminal proceeding (which it does not), the threat of multiple prosecutions that Mr. Manafort faces at the hands of an *ultra vires* prosecutor would bar the application of *Younger* abstention here.

Eighty years ago, the Supreme Court set forth the relevant rule: "Equity jurisdiction may be invoked when it is essential to the protection of the rights asserted, ***even though*** the complainant seeks to enjoin the bringing of ***criminal actions***." *Shields v. Utah Idaho Cent. R.R. Co.*, 305 U.S. 177, 183 (1938) (emphasis added) (collecting cases). That the relief sought here might affect contemplated or pending criminal prosecutions thus does not preclude this Court's review. If Mr. Manafort satisfies "the traditional test for . . . equitable relief," it should be granted. *Juluke*, 811 F.2d at 1557. The government, however, does not expressly address that test, much less assert that this Court can resolve it on the ***pleadings***.[5] When the issue does arise, Mr. Manafort anticipates that he will be able show an entitlement to equitable and declaratory relief with respect to the *ultra vires* Appointment Order.

## B.     The Government's Appeal to Other "Fundamental Principles" Fails

The government's effort to invoke other "fundamental principles" (at 14) falls short as well. At the outset, the government urges that review here would be contrary to the Federal Rules of Criminal Procedure, including Rule 12. Gov't Mem. 14-15. But the Rules of Criminal Procedure existed when *Juluke* was decided; the D.C. Circuit held that the challenge could proceed nonetheless. The D.C. Circuit had good reason for reaching that result: In light of the threat of repeated arrests, invoking the criminal process would have provided virtually no

---

[5] The government's arguments for dismissal of the APA claim overlap with traditional equitable considerations insofar as the government claims that Mr. Manafort has an adequate remedy at law. Gov't Mem. 20-21. But the government is wrong about that for the reasons given below: The government's proposed alternative, moving to dismiss the pending indictment, would offer Mr. Manafort no relief against new charges the Special Counsel may file against him in this Court or another federal district court. *See* pp. 31-32, *infra*.

remedy at all.  *See* pp. 13-14, *supra*.  Similarly compelling reasons require the same result here.  *See* p. 16, *supra*.  In all events, the APA allows parties to seek relief under its provisions "in the absence" of a statutory alternative or the "inadequacy thereof."  5 U.S.C. § 703.  That was the case in *Juluke* and, as explained below, that is the case here as well.  *See* pp. 31-32, *infra*.

The government fares no better in asserting that this action would "undermine the final judgment rule."  Gov't Mem. 15.  Ordinarily, a Rule 12 motion in a criminal proceeding is not immediately appealable.  *Id.*  But Mr. Manafort does not seek dismissal of the pending indictment.  There is thus no risk of end-running the final-judgment rule.  Moreover, the government's final-judgment-rule argument too runs headlong into *Juluke*, which allowed a civil action like this one to proceed.  Moving to dismiss the indictment would not provide adequate relief because it would not prevent the continued exercise of *ultra vires* investigative and prosecutorial authority.

Finally, the government appeals to "inter-branch comity."  Gov't Mem. 16.  But the prospective relief sought in the Complaint raises no more concerns about comity than *Juluke* did.  And the principles of prosecutorial discretion the government invokes (at 16) have no relevance at all.  Properly appointed, government prosecutors have wide—though not unlimited—discretion in the ***exercise of their authority***.  *See United States v. Armstrong*, 517 U.S. 456, 464-66 (1996) (noting exceptions to prosecutorial discretion).  But the question here is not whether there is a proper exercise of discretion.  It is whether the authority the Special Counsel purports to wield can be—or has been—granted.  One cannot appeal to the prosecutor's "discretion" when the question is whether the prosecutor has legal authority at all.  Nor should there be any concern about intra-judicial comity.  Gov't Mem. 16.  This suit and the criminal action are

pending in the same court.  And the prospective relief sought here does not encompass dismissal of the already-issued indictment.

## II.   THE COMPLAINT STATES A CLAIM UNDER THE APA

Alternatively, the government urges that the Complaint does not meet the prerequisites for a claim under APA.  Those contentions fail as well.

### A.   Mr. Manafort Has Standing Sufficient To Support a Claim Under the APA

The government insists that, as a threshold matter, Mr. Manafort does not have "standing" to bring an APA action.  The argument is difficult to fathom:  Mr. Manafort (a) is adversely affected or aggrieved, **and** (b) has suffered legal wrong within the meaning of the APA.  Each of those is independently sufficient to establish standing.  The government mis-applies the "adversely affected or aggrieved" test, and completely ignores the "legal wrong" test.

1.   The government begins by asserting that a plaintiff claiming to be "adversely affected or aggrieved" must assert an injury that "fall[s] within the zone of interests" of the relevant legal provisions.  *See* Gov't Mem. 24-25.  But the government misapplies the "zone of interests" test.  That test "'is not meant to be especially demanding.'"  *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 225 (2012) (quoting *Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 399 (1987)); *see also Amgen, Inc. v. Smith*, 357 F.3d 103, 111 (D.C. Cir. 2004) ("There is a 'strong presumption that Congress intends judicial review of administrative action . . . .'" (quoting *Bowen v. Mich. Acad. of Fam. Physicians*, 476 U.S. 667, 670 (1986))).  Indeed, the zone of interest test does not "require any 'indication of congressional purpose to benefit the would-be plaintiff.'"  *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians*, 567 U.S. at 225 (quoting *Clarke*, 479 U.S. at 399-400).  The government thus flatly errs when it insists (at 31) on evidence that the law was "inten[ded] to benefit" the complainant.  The "test forecloses suit **only** when a plaintiff's 'interests are so marginally related to or inconsistent

with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit.'" *Id.* (emphasis added) (quoting *Clarke*, 479 U.S. at 399). "[T]he benefit of any doubt goes to the plaintiff." *Id.* Here, the government cannot show that Mr. Manafort's interests are "so marginally related to or inconsistent" with the provisions he invokes as to deprive him of standing.

To the contrary, the interests Mr. Manafort seeks to protect reside in the heartland of the laws he invokes. The Special Counsel Regulations at issue here were enacted to ensure political accountability. *See generally* Dick Thornburgh, Mark H. Tuohey III & Michael Davidson, *Attorney General's Special Counsel Regulations*, BROOKINGS (Sept. 15, 1999). They were enacted in response to the lack of accountability, and resulting abuses, that arose under the prior independent counsel regime. *See id.* For that reason, they require any special counsel to be appointed by politically accountable federal officers. *See* 28 C.F.R. § 600.1 (requiring appointment by "[t]he Attorney General, or in cases in which the Attorney General is recused, the Acting Attorney General"). They require the original jurisdiction granted to be "specific" and limited in scope. *Id*. § 600.4(a). And they require any expansions of jurisdiction to be granted by a politically accountable official following consultation—as opposed to being granted *ex ante*, to be exercised at will by the special counsel himself. *See id.* § 600.4(b).

There can be no serious argument that the **target** of an *ultra vires* special counsel investigation—one that is lacking the supervision and accountability those provisions are designed to ensure—is beyond the zone of interests those provisions are designed to protect. Precedent says the opposite: The D.C. Circuit has repeatedly and resoundingly ruled that, when an individual is subject to adverse action by a federal officer, he has standing to challenge the validity of that person's appointment. Thus, in *Andrade v. Lauer*, 729 F.2d 1475 (D.C. Cir.

1984), the court held that plaintiffs could assert an Appointments Clause challenge to "object to their having been fired by government officials who were constitutionally disqualified from exercising power over them." *Id.* at 1495. That makes sense: The Appointments Clause (like the provision at issue here) protects individual liberty by ensuring that significant actions are taken only by officers who are properly appointed and thus answerable to publicly accountable officials. *See Edmond v. United States*, 520 U.S. 651, 660 (1997) ("[T]he Appointments Clause was designed to ensure public accountability for both the making of a bad appointment and the rejection of a good one."). For similar reasons, the Supreme Court has held that parties subject to adverse action by federal officials can bring separation-of-powers challenges based on the inadequacy of their appointment, control, and supervision. *See, e.g.*, *Buckley v. Valeo*, 424 U.S. 1, 117-18 (1976) (Because "litigants with sufficient concrete interests at stake may have standing to raise constitutional questions of separation of powers with respect to an agency designated to adjudicate their rights," the "appellants' claims as they bear upon the method of appointment of the Commission's members may be presently adjudicated.").

The Supreme Court and the D.C. Circuit thus regularly entertain arguments, by investigation targets, that the actions against them are improper because they were undertaken by defectively appointed or supervised officers. *See, e.g.*, *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 487 (2010) (challenge by "Nevada accounting firm" subject to "formal investigation" by the Public Company Accounting Oversight Board, "argu[ing] that the [enabling statute] contravened the separation of powers by conferring wide-ranging executive power on Board members without subjecting them to Presidential control"); *Morrison v. Olson*, 487 U.S. 654, 668 (1988) (separation-of-powers and Appointments Clause challenges by target of independent counsel investigation); *Freytag v. Comm'r*, 501 U.S. 868, 871 & n.1 (1991)

22

(Appointments Clause challenge by targets of "multimillion dollar tax shelter case"); *Shays v. FEC*, 414 F.3d 76, 83 (D.C. Cir. 2005) (finding it "self-evident that Plaintiffs meet the 'zone of interests' test" because they were "targets of [the] regulation").   As the target of an *ultra vires* special counsel investigation undertaken by an improperly appointed special counsel, Mr. Manafort clearly has standing to challenge that appointment.   The government can make the contrary argument only by ignoring a long line of precedent—and the interests served by its own regulations.

The government's claim that Mr. Manafort lacks standing, moreover, is impossible to reconcile with the government's contention (at 14, 19-21, 30) that Mr. Manafort has an alternative remedy because he can raise this issue in the context of a criminal prosecution.   If Mr. Manafort would ***have standing*** to raise the issue there, it is hard to see why he would ***lack standing*** here.   "Congress's 'evident intent' when enacting the APA" was "'to make agency action presumptively reviewable.'"   *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians*, 567 U.S. at 225.   The government inverts that presumption.

2.      The government's argument mostly reduces to the assertion that "[Mr.] Manafort cannot rely on the Special Counsel regulations . . . to satisfy the zone of interest test" because they are "regulations," not a statute.   Gov't Mem. 25.   That contention is mistaken.   Courts regularly conclude that aggrieved plaintiffs have standing when they challenge an agency's violation of the regulations it enacted to implement a statutory regime.   *See N.Y. Tel. Co. v. Sec'y of Army*, 657 F. Supp. 18, 20-21 (D.D.C. 1986) ("Plaintiff has standing to challenge the [agency action] if it establishes . . . that the injury is one arguably within the zone of interests protected by the applicable statutes ***and regulations*** . . . .   Plaintiff's alleged injury . . . falls within the protection of the statutes ***and regulations*** it suggests are applicable." (emphasis added)); *McNutt*

*v. Hills*, 426 F. Supp. 990, 998 n.19 (D.D.C. 1977) (plaintiff "is, without question, within the zone of interests intended to be protected by the statutes ***and regulations*** involved in this case which forbid and combat employment discrimination" (emphasis added)).

The D.C. Circuit regularly entertains suits where the agency violates not a statute but the agency's own regulations. *See, e.g.*, *Mistick PBT v. Chao*, 440 F.3d 503, 508 (D.C. Cir. 2006). Because "'an agency is bound by its own regulations,'" *Erie Boulevard Hydropower, LP v. FERC*, 878 F.3d 258, 269 (D.C. Cir. 2017) (quoting *Nat'l Envtl. Dev. Ass'n's Clean Air Project v. EPA*, 752 F.3d 999, 1009 (D.C. Cir. 2014)), "an agency action may be set aside" under the APA "if the agency fails to 'comply with its own regulations,'" *Nat'l Envtl. Dev.*, 752 F.3d at 1009 (quoting *Environmentel, LLC v. FCC*, 661 F.3d 80, 85 (D.C. Cir. 2011)); *see also Erie Boulevard*, 878 F.3d at 269; *Friedler v. Gen. Servs. Admin.*, 271 F. Supp. 3d 40, 60-61 (D.D.C. 2017); *Fuller v. Winter*, 538 F. Supp. 2d 179, 186-91 (D.D.C. 2008); *Croddy v. FBI*, Civil Action No. 00-651 (EGS), 2006 WL 2844261, at *6 (D.D.C. Sept. 29, 2006). *A fortiori* a suit is proper when the agency purports to exercise authority that, under its own regulations, it does not have.

The government's effort to distinguish agency regulations from the statute those regulations implement defies the nature of agency authority:   When agencies promulgate regulations that have the force and effect of law, they construe and implement the ***statute*** Congress has entrusted to them for administration. *See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843-44 (1984) ("If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision

of the statute by regulation."").  The agency's violation of its own regulations is also a violation of the agency's own view of the statute.[6]

For that reason, the government's further contention that the relevant statutes (28 U.S.C. § 501 *et seq.*) do not encompass Mr. Manafort's interests is both irrelevant and mistaken.  The DOJ's Special Counsel Regulations represent the ***DOJ***'s implementation of those statutes.  Its decision to restrict appointment authority under those statutes, so as to ensure accountability, demonstrates that the interest of political accountability—and the protection it offers against over-reaching—are not so removed from the statutory goals as to be "marginal" or "contrary" to them.  Thus, while those statutes may give the Attorney General affirmative authority to retain and direct counsel, the government cannot suggest that they were intended to promote unaccountability and over-reaching.  Its own implementation, through regulations that seek to ensure political accountability, is to the contrary.

3.      In all events, the APA establishes ***two*** categories of persons entitled to seek judicial review:  Relief may be sought by any person "[1] suffering legal wrong because of agency action, ***or*** [2] adversely affected or aggrieved by agency action."   5 U.S.C. § 702 (emphasis added).  The government wholly ignores the first category—persons suffering "legal wrong."  As Congress made clear when enacting the APA, "the category described as 'any person suffering legal wrong because of any agency action" includes any person who has

---

[6] The government's cases (at 25) are not to the contrary.  In *National Federation of Federal Employees v. Cheney*, 883 F.2d 1038 (D.C. Cir. 1989), the plaintiffs attempted to rely on a non-binding OMB Circular to bring suit against a different agency, the Department of the Army.  *See id.* at 1043.  Likewise, in *American Federation of Government Employees v. Rumsfeld*, 321 F.3d 139 (D.C. Cir. 2003), the plaintiff sought to enforce OPM regulations against a different agency, the United States Army.  *See id.* at 144-45.  Neither case establishes that an action fails the zone of interests test when an agency violates its own regulations.  And *Town of Stratford, Conn. v. FAA*, 285 F.3d 84 (D.C. Cir. 2002), is even further afield.  In that case, the regulations did not protect the plaintiffs' alleged interests at all, *id.* at 89, and any discussion of whether regulations were relevant to the zone of interests test was unnecessary to the decision.

suffered "an injury," "a tort," or "a violation of legal right."  92 Cong. Rec. 2153 (1946).  It thus "signifies an injury committed to the person or property of another."  *Id.*

The "person suffering legal wrong" formulation reflects a longstanding tradition, predating the APA, of judicial review for cases where, but for the claim of governmental authority, the official's conduct would "invade[ ]" a right "of property" or "one protected against tortious invasion."  *Tenn. Elec. Power Co. v. TVA*, 306 U.S. 118, 137 (1939); *see, e.g.*, *Am. School of Magnetic Healing v. McAnnulty*, 187 U.S. 94, 108, 110-11 (1902); *Noble v. Union River Logging Co.*, 147 U.S. 165, 171-72 (1893); *Cunningham v. Macon & Brunswick R.R. Co.*, 109 U.S. 446, 452 (1883).  This case falls squarely within those precedents.  Among other things, the Special Counsel searched Mr. Manafort's home and seized many of his possessions.  *See* Compl. ¶42; *see also id.* ¶¶49, 58, 65 ("invasion of his privacy," including "unconsented entry into his home").  Whatever else the phrase "a person suffering legal wrong" may encompass, it surely includes someone who has been subjected to such an invasion of property and privacy rights by an individual alleged to lack legal authority to do so.  Nothing stops the Special Counsel from taking further *ultra vires* actions, including executing additional search warrants and seizing property, as part of a continuing investigation.  If Mr. Manafort has not alleged he suffered legal wrong here, it is hard to imagine who could.

While arguing that Mr. Manafort lacks standing under APA, the government nowhere addresses the "legal wrong" category.  It does not claim that, taking the Complaint's allegations as true, Mr. Manafort has identified no legal injury sufficient to satisfy that standard.  For the reasons given above, any such argument must fail.  Further, because the government ignored an entire basis for statutory standing in its motion to dismiss, the issue is waived.  The government cannot choose to address only one of the two categories of persons with standing in its motion to

dismiss, and address the other category for the first time in reply.  *See Rollins Envtl. Servs. v. EPA*, 937 F.2d 649, 653 n.2 (D.C. Cir. 1991) ("Issues may not be raised for the first time in a reply brief.").

### B.    APA Review Is Available To Address Actions Taken Without Legal Authority and in Excess of Jurisdiction

The government's related argument, that the Special Counsel Regulations do not "create any rights . . . enforceable at law or equity," fares no better.  Gov't Mem. 23 & n.7.  That argument misunderstands the nature of this suit.  Mr. Manafort does not claim that the regulations give him ***rights*** he may assert against the government.  He does not seek to correct a government error in its administration of law.  He has filed this action because the relevant regulations ***deny*** the Acting Attorney General ***authority*** to issue Paragraph (b)(ii) of the Appointment Order.  This suit is premised not on the violation of regulations but the ***absence of power***—lack of jurisdiction—under them.

The Supreme Court explained that distinction long ago in *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682 (1948).  There, the Supreme Court emphasized that federal courts have long stood ready to provide review (notwithstanding claims of sovereign immunity) where federal officers or agencies are alleged to have been "acting in excess of . . . authority or under an authority not validly conferred."  *Id.* at 691; *see id.* at 691-92 (distinguishing actions "based upon any lack of delegated power" from actions that challenge agency action as "illegal," "whether or not it be within" the officer's "delegated powers").  That describes ***precisely*** this case:  The essence of this suit is that the authority the Special Counsel purports to be exercising was "not validly conferred" and that the Special Counsel is "acting in excess" of his authority as a result.  Such allegations were a sufficient basis for review in the cases cited by *Larson*.  *Id.* at 692.  They should be sufficient here as well.  *Cf. Griffith v. Fed. Labor Relations Auth.*, 842 F.2d

487, 492 (D.C. Cir. 1988) (identifying "exception" to preclusion of review when "agenc[ies] act[] in excess of [their] jurisdiction"); *Leedom v. Kyne*, 358 U.S. 184, 190 (1958) (Court will not "lightly infer" that Congress intended to afford no "judicial protection of rights . . . against agency action taken in excess of delegated powers").

The government thus misses the point when (at 23) it invokes the disclaimer, at the end of the Special Counsel Regulations, that the regulations are not intended to "create any rights . . . enforceable at law or equity."  28 C.F.R. § 600.10.  The question here is not whether Mr. Manafort somehow has rights under the Special Counsel Regulations.  The question is whether the regulations gave the Acting Attorney General ***authority*** to issue the Appointment Order he issued—Paragraph (b)(ii) in particular—and thus whether the Special Counsel has the authority he purports to exercise.  If the DOJ had intended to foreclose that challenge, it would have had to write § 600.10 very differently.

The government argues that, "[i]n similar circumstances, the D.C. Circuit and other courts in this District have held that ***internal DOJ guidelines***—*e.g.*, the United States Attorneys' Manual—do not confer any rights on private parties and are therefore not enforceable."  Gov't Mem. 23 (emphasis added).  But there is a reason "internal DOJ guidelines," like the U.S. Attorneys' Manual, are not enforceable.  They are merely guidelines that, lacking the force and effect of law, do not bind even the agency.  *See, e.g.*, *Chiron Corp. & PerSeptive Biosystems, Inc. v. Nat'l Transp. Safety Bd.*, 198 F.3d 935, 943-44 (D.C. Cir. 1999) ("Guidance is not a source of law" enforceable against NTSB.); *Batterton v. Marshall*, 648 F.2d 694, 702 n.34 (D.C. Cir. 1980) ("An internal agency 'practice or procedure' is primarily directed toward improving the efficient and effective operations of an agency, not toward a determination of the rights [or] interests of affected parties."); *Pac. Gas & Elec. Co. v. Fed. Power Comm'n*, 506 F.2d 33, 38

(D.C. Cir. 1974) (agency's "general statement of policy . . . is merely an announcement to the public of the policy which the agency hopes to implement in future rulemakings or adjudications").

The Special Counsel Regulations, by contrast, are ***regulations***.  Far from being non-binding guidelines, they have the force and effect of law.  They are the agency's "own regulations," which it is "bound" to follow.  *Erie Boulevard*, 878 F.3d at 269; *see also Esch v. Yeutter*, 876 F.2d 976, 991 & n.163 (D.C. Cir. 1989) ("It is well settled that an agency is legally bound to respect its own regulations . . . ."); *Cal. Human Dev. Corp. v. Brock*, 762 F.2d 1044, 1048 n.28 (D.C. Cir. 1985) ("[I]f an agency decides to promulgate rules, then it is bound by its own regulations even if the action of the agency was discretionary."); *Nat'l Constructors Ass'n v. Marshal*, 581 F.2d 960, 969 n.18 (D.C. Cir. 1978) ("Administrative agencies are legally bound by their own regulations.").  Agency regulations are no less binding simply because they limit the agency's authority.  *See, e.g.*, *Service v. Dulles*, 354 U.S. 363, 373-74 (1957) (finding regulations binding where the agency adopted the regulations to limit its discretion).

Here, the DOJ promulgated the Special Counsel Regulations to limit authority and thereby ensure accountability.  The DOJ sought to avoid the pitfalls of the independent counsel statute and its establishment of "unaccountable prosecutors wielding infinite resources whenever there is a plausible allegation of a technical crime."  Gerard E. Lynch, *The Problem Isn't in the Starrs But in a Misguided Law*, WASH. POST, Feb. 22, 1998, at C3.  To protect against such abuses going forward, the DOJ's Special Counsel Regulations were the product of that careful, deliberate effort to ensure that private attorneys would not wield unlimited authority when conducting investigations.  Dick Thornburgh, Mark H. Tuohey III & Michael Davidson, *Attorney General's Special Counsel Regulations*, BROOKINGS (Sept. 15, 1999).  There is no suggestion

anywhere in those regulations that they were meant merely to be non-binding, friendly advice. Provision after provision is to the contrary.[7]

### C.     The Complaint Challenges Final Agency Action

The Complaint also challenges "final agency action" within the meaning of the APA. Agency action is considered "final" if it meets two requirements.   "First, the action must mark the 'consummation' of the agency's decisionmaking process."  *Appalachian Power Co. v. EPA*, 208 F.3d 1015, 1022 (D.C. Cir. 2000) (quoting *Chi. & S. Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 113 (1948)).  "And second, the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.' "  *Id.* (quoting *Port of Bos. Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic*, 400 U.S. 62, 71 (1970)); *see also Nat'l Ass'n of Home Builders v. Norton*, 415 F.3d 8, 15 (D.C. Cir. 2005) (agency action is "final" "if the practical effect of the agency action is . . . a certain change in the legal obligations of a party").

The Appointment Order readily satisfies both conditions.   The Appointment Order conclusively handed the investigation of Russian efforts to interfere in the 2016 presidential election to the Special Counsel, granting him "authority to investigate" alleged coordination between the Trump campaign and the Russian government.  28 C.F.R. § 600.4(a); *see also id.* §§ 600.1, 600.3(a).  It chose to add, on top of that authority, an improper delegation of power to

---

[7] For example, § 600.7 provides that a special counsel "shall comply with the rules, regulations, procedures, practices and policies of the Department of Justice."   28 C.F.R. § 600.7(a). Moreover, the Appointment Order here (as well as the only other appointment order previously issued pursuant to the Special Counsel Regulations) cites the regulations as "applicable" requirements.   Appointment Order ¶ (d); Office of the Att'y Gen., *Appointment of Special Counsel To Investigate Government Conduct Relative to Certain Events Occurring in Waco, Texas*, Order No. 2256-99 ¶ (d) (Sept. 9, 1999).   Thus, there is every indication that the DOJ intended for the Special Counsel Regulations to impose binding constraints on authority.  *See Gen. Elec. Co. v. EPA*, 290 F.3d 377, 383 (D.C. Cir. 2002) ("agency pronouncement" is "binding" if it "is applied by the agency in a way that indicates it is binding").

investigate and prosecute any other matter arising from the investigation. Appointment Order ¶(b)(ii). That "mark[ed] the 'consummation' of the agency's decisionmaking process" on whether and what to refer to the Special Counsel. *Bennett v. Spear*, 520 U.S. 154, 178 (1997) (quoting *Chi. & S. Air Lines*, 333 U.S. at 113). No further decisions remain.

Second, the Appointment Order clearly generates legal consequences. It purports to grant a private attorney from outside the DOJ—who would otherwise lack any claim to act under color of law—full legal authority to investigate private citizens and compel them to comply with his investigative demands. For individuals associated with the Trump campaign, those legal demands were virtually guaranteed to follow, as they did for Mr. Manafort. *See* Compl. ¶ 42. Thus, the "practical effect" of the Appointment Order was a "certain change" in Mr. Manafort's "legal obligations." *Nat'l Ass'n of Home Builders*, 415 F.3d at 15.

### D.  Mr. Manafort Has No Other Adequate Remedy at Law

Finally, contrary to the government's contentions, Mr. Manafort has no other adequate remedy at law. "When considering whether an alternative remedy is 'adequate' and therefore preclusive of APA review," the D.C. Circuit "look[s] for 'clear and convincing evidence' of 'legislative intent' to create a special, alternative remedy and thereby bar APA review." *Citizens for Responsibility & Ethics in Wash. v. Dep't of Justice*, 846 F.3d 1235, 1244 (D.C. Cir. 2017) (quoting *Garcia v. Vilsack*, 563 F.3d 519, 523 (D.C. Cir. 2009)).

No such clear and convincing evidence can be gleaned from Federal Rule of Criminal Procedure 12, which would allow Mr. Manafort to move to dismiss the indictment. *See* Gov't Mem. 20-21 & n.6. Nothing in the Federal Rules of Criminal Procedure evinces a legislative intent to preclude APA review of final agency action even if an indictment results. *Juluke* is clear on that. *See* pp. 12-13, *supra*. And nothing in the Federal Rules of Criminal Procedure

would provide Mr. Manafort the relief he needs—relief from being continuously subjected to the Special Counsel's *ultra vires* authority.

The Federal Rules of Criminal Procedure may be "comprehensive" with respect to a particular criminal prosecution. *Deaver*, 822 F.2d at 71. But they do not provide any mechanism to address the potentially perpetual exercise of *ultra vires* authority asserted in the Complaint. The broadest relief that Mr. Manafort could secure in the pending criminal suit against him is dismissal of that single proceeding. *See* p. 16, *supra*. But the Special Counsel could continue to investigate and bring new charges against Mr. Manafort, either in this Court or any other federal district court—as he has threatened to do. Through this civil action, Mr. Manafort seeks relief as to those future proceedings, by having the Appointment Order set aside in relevant part and having the Special Counsel's conduct in excess of his lawful authority enjoined. A motion to dismiss the indictment in the pending criminal action could not afford Mr. Manafort that relief. *See, e.g.*, *Juluke*, 811 F.2d at 1557 ("adjudication of criminal cases" could not "afford plaintiffs adequate relief" where "they sought to enjoin *future* arrests" (emphasis added)). Nor would Mr. Manafort be able to obtain that relief by repeatedly litigating the *ultra vires* nature of the Special Counsel's authority in future criminal proceedings against him.

## III. COUNT II STATES CLAIMS FOR INJUNCTIVE RELIEF AGAINST FEDERAL OFFICIALS ACTING IN EXCESS OF THEIR LEGAL AUTHORITY

Count II—which incorporates all of the allegations that precede it—seeks relief against the Special Counsel for the exercise of *ultra vires* action. Count II likewise states a claim.

### A.   Count II Properly Seeks Declaratory Relief Against *Ultra Vires* Action

The government begins by seeking to dismiss Count II for want of a cause of action. According to the government, the Declaratory Judgment Act "does not by itself provide a basis

for judicial review," and "non-statutory review over *ultra vires* acts, which has previously been described as 'a doctrine of last resort,'" is not available here. Gov't Mem. 28-29.

1.      The government largely ignores "the long-recognized authority of the federal courts to grant equitable relief to prevent injurious acts by public officers." Compl. ¶ 61; *Armstrong v. Exceptional Child Ctr., Inc.*, 135 S. Ct. 1378, 1384 (2015). For more than a century, plaintiffs have filed federal actions against officers in their official capacities to proscribe conduct that violates or is unauthorized by federal law. *See Ex parte Young*, 209 U.S. 123 (1908). That is "true not only with respect to violations of federal law by state officials, but also with respect to violations of federal law by federal officials." *Armstrong*, 135 S. Ct. at 1384. Under *Larson*, 337 U.S. at 689-90, there is a cause of action where "[a] federal officer, against whom injunctive relief is sought, allegedly acted in excess of his legal authority." *Chamber of Commerce of the U.S. v. Reich*, 74 F.3d 1322, 1329 (D.C. Cir. 1996); *see* pp. 27-28, *supra*; *Dugan v. Rank*, 372 U.S. 609, 621-22 (1963); *Malone v. Bowdoin*, 369 U.S. 643, 647 (1962); *Shields v. Utah Idaho Cent. R.R. Co.*, 305 U.S. 177, 183 (1938); *Am. Sch. of Magnetic Healing*, 187 U.S. at 110; *Knox Hill Tenant Council v. Washington*, 448 F.2d 1045, 1052 n.8 (D.C. Cir. 1971).

Count II properly invokes that cause of action. As noted above, Count I (incorporated by reference into Count II) alleges that the **DOJ and the Acting Attorney General** issued the Appointment Order in excess of their authority under the Special Counsel Regulations. Compl. ¶¶ 52, 60. Count II in turn alleges that the Special Counsel is acting *ultra vires*, both because the Appointment Order on which he relies is *ultra vires* and because—even assuming the Appointment Order's validity—he is acting in excess of the Order's clear terms. Compl. ¶¶ 61-

62.   Under *Larson*, Mr. Manafort may sue to enjoin federal officers, acting in their official capacities, from continuing to flout the bounds of their authority.  337 U.S. at 689-90.

Because those cases create a "judicially remediable right," relief under the Declaratory Judgment Act, 28 U.S.C. § 2201, is available.  *Schilling v. Rogers*, 363 U.S. 666, 677 (1960); *see, e.g.*, *Mich. Corr. Org. v. Mich. Dep't of Corr.*, 774 F.3d 895, 902 (6th Cir. 2014) (recognizing that "a right of action under *Ex parte Young*" may provide "a preexisting right enforceable in federal court" for which the Declaratory Judgment Act "create[s] a remedy").  In addition, a plaintiff bringing suit under *Larson* to restrain federal officers to their lawful authority is entitled to declaratory and injunctive relief.  *See, e.g.*, *Vann v. Dep't of the Interior*, 701 F.3d 927, 928-29 (D.C. Cir. 2012) ("declaratory or injunctive relief" available in suits "against government officials in their official capacities"); *Nat'l Audubon Soc'y, Inc. v. Davis*, 307 F.3d 835, 847-48 (9th Cir. 2002) (declaratory as well as injunctive relief available in *Ex parte Young* suit).

2.     Echoing some of its objections to Count I, the government appears to argue that the *ultra vires* doctrine does not apply where a party challenges "an agency's violation of its own **internal** delegations."  Gov't Mem. 31 (emphasis added).  It thus cites cases in which **internal** agency officials are alleged to have exceeded their **individual** authority under agency rules—but the action being challenged was within the **agency's** authority nonetheless.  *Id.* (citing *Pa. Mun. Auths. Ass'n v. Johnson*, No. 04-5073, 2005 WL 2491482, at *1 (D.C. Cir. June 3, 2005) (unpublished disposition); *Exxon Chems. Am. v. Chao*, 298 F.3d 464, 468 (5th Cir. 2002)).  Count II alleges something very different.  As noted above, it alleges that the DOJ and the Acting Attorney General exceeded their authority—the **agency's** authority—in the Appointment Order by extending the Special Counsel's original jurisdiction to **any new matters** that might

come to light during the course of his investigation.  Compl. ¶¶ 33-35, 52, 62.  For that reason alone, the Special Counsel does not have jurisdiction over those matters.  The Special Counsel cannot exercise jurisdiction that the DOJ and Acting Attorney General cannot grant him.  Further, Count II alleges that the Special Counsel has exceeded the scope of any jurisdiction that was lawfully granted.  *Id.* ¶ 63.  These are not allegations about "internal" delegations *within* the DOJ.  They concern the scope of authority exercised by an official *outside* the DOJ.  The government cites no case precluding an *ultra vires* challenge in that context.[8]

3.      The government's argument (at 32-33) that Count II does not allege a "clear, obvious, and extreme error" suffers from a similar defect.  The problem is not an error; it is an absence of authority.  *See* p. 27, *supra*.  And the lack of authority is clear.  As an initial matter, the Special Counsel Regulations could not be clearer about the original jurisdiction that can be granted.  The Attorney General may grant a special counsel "[o]riginal jurisdiction" by providing "a *specific factual statement* of the matter to be investigated."  28 C.F.R. § 600.4(a) (emphasis added).  But any "additional jurisdiction" beyond that may be granted only *after* the special counsel "consult[s] with the Attorney General" and *after* the Attorney General "determines whether to include the additional matters within the Special Counsel's jurisdiction or assign them elsewhere."  *Id.* § 600.4(b).  That measured process is designed to ensure that a politically accountable official—the Attorney General or Acting Attorney General—is responsible for the matters to be investigated at *each step of the investigation*.

The Appointment Order is completely contrary to those regulations' clear commands.  Paragraph (b)(i) first grants the Special Counsel "[o]riginal jurisdiction" by providing a "specific

---

[8] The government reprises (at 31) its argument that, under 28 C.F.R. § 600.10, the Special Counsel Regulations create no enforceable rights.  The answer to that argument is the same:  Mr. Manafort is not asserting the regulations give him rights.  He is arguing that they deny the defendants authority.  *See* p. 27, *supra*.

factual statement of the matter to be investigated," 28 C.F.R. §600.4(a)—"any links and/or coordination between the Russian government and individuals associated with the campaign of President Donald Trump," Appointment Order ¶(b)(i).  But Paragraph (b)(ii) then purports to grant the Special Counsel additional jurisdiction to investigate "*any matters* that arose *or may arise*" in the course of the Special Counsel's inquiry into allegations of coordination between the Trump campaign and the Russian government.  Appointment Order ¶(b)(ii) (emphasis added). That blanket provision of additional jurisdiction *ab initio* plainly contravenes the Special Counsel Regulations' requirement that further authority to investigate anything outside the "specific factual statement of the matters to be investigated" can be granted only following consultation with the Attorney General and the Attorney General's authorization to pursue such matters.  28 C.F.R. §600.4(b).  Because the DOJ and the Acting Attorney General had no authority to grant the Special Counsel such blanket additional jurisdiction in the original Appointment Order, the Special Counsel has no authority to exercise it.  The government does not even attempt to defend Paragraph (b)(ii) as consistent with the Special Counsel Regulations, and with reason—the regulations are crystal clear.

The government focuses instead (at 33) on the allegation that the Special Counsel has gone beyond the facial scope of the Appointment Order by addressing matters that did not "arise directly from the investigation" assigned to him.  The government seems to argue that the scope of the Special Counsel's authority is ambiguous.  *See* Gov't Mem. 33-34.  The Special Counsel, it argues, was directed to take over the investigation formerly being conducted by then-FBI Director James Comey.  *Id.* at 33.  But that ignores whether supposed tax and white-collar crimes committed on or after ***January 1, 2006—more than a decade before the Trump presidential campaign was launched***—could conceivably be thought to "arise out of" either Mr. Comey's or

the Special Counsel's investigation (especially when those matters were well known to the government before the Russia investigation began).  *See* pp. 8-9, *supra*.  Again, the government offers no construction under which pre-existing matters, known to the government, could possibly have arisen out of an investigation that started almost a decade later.  Indeed, there is no indication that the Special Counsel has *ever* investigated Mr. Manafort for the specific matters within the Special Counsel's original jurisdiction—alleged "coordination [with] the Russian government" in connection with the 2016 presidential campaign.  Appointment Order ¶(b)(i).  The Special Counsel's actions against Mr. Manafort could not have "arise[n] directly from" an underlying investigation that never took place.

**B.    The Acting Attorney General's Congressional Testimony at Most Raises Factual Disputes Concerning Count II That Cannot Be Resolved on a Motion To Dismiss**

Finally, the government attacks part of Count II on the merits, urging that the Acting Attorney General's congressional testimony proves that he in fact has authorized an expansion of the Special Counsel's jurisdiction.  Gov't Mem. 34.  But the Acting Attorney General's testimony at most raises factual disputes.

As an initial matter, the government does not—and cannot—argue that the testimony has any relevance to the validity of the Appointment Order and its scope (including Paragraph (b)(ii) in particular).  Instead, the government urges (at 34) that the Acting Attorney General testified that he approved the Special Counsel's conduct in the pending criminal proceeding, expanding his jurisdiction.  But that particular prosecution is not at issue here.  *See* p. 11 & n.2, *supra*.  And the cited testimony is procedurally and substantively insufficient in any event.

As a matter of procedure, the government cannot simply append congressional testimony to a motion to dismiss and ask the Court to accept the testimony as true.  The fact of the testimony may be judicially noticeable.  But the Court cannot be asked to judicially notice as

"true" out-of-court statements that are nowhere incorporated into the Complaint, much less to do so for the benefit of the moving party. *Cabrera v. Schafer*, 178 F. Supp. 3d 69, 73 (E.D.N.Y. 2016) ("To take judicial notice of such testimony at this juncture would . . . cut off any attempt by the Plaintiff to introduce information to rebut the truth of that testimony and the import of its meaning to this case."); *Columbia Cas. Co. v. Neighborhood Risk Mgmt. Corp.*, No. 14-cv-0048 (AJN), 2015 WL 3999192, at *4 (S.D.N.Y. June 29, 2015) ("[I]t is improper to take judicial notice of . . . testimony for the truth of its contents (as opposed to the existence of such testimony) . . . ."); *Bello v. Howard Univ.*, 898 F. Supp. 2d 213, 223 n.5 (D.D.C. 2012) (taking judicial notice of "the fact that [an individual] testified at [another] procceding[ ]" but not "for the truth of the matters asserted" in the testimony).

Substantively, the Acting Attorney General's testimony is wholly ambiguous, repeatedly eliding the distinction between the Special Counsel's original jurisdiction and additional jurisdiction. For example, when asked multiple times whether he ever "expand[ed] the scope of the original jurisdiction" set out in the Appointment Order, the Acting Attorney General testified that he did not know the answer. *Hearing Before the H. Comm. on the Judiciary*, 115th Cong. 31 (2017) (statement of Rod J. Rosenstein, Acting Att'y Gen. of the United States) ("I'll need to check and get back to you as to whether or not we considered particular issues to be a clarification [of the Special Counsel's original jurisdiction] or an expansion."). The Acting Attorney General's uncertainty as to the nature of the authorization highlights critical questions about when, if at all, he granted the Special Counsel additional jurisdiction, as well as what that additional jurisdiction may have encompassed. That is significant because the Special Counsel Regulations preclude the Special Counsel from pursuing matters beyond his original jurisdiction without ***first*** consulting with the Attorney General and awaiting the Attorney General's decision.

*See* 28 C.F.R. §600.4(b).  If the Court wishes to consider the Acting Attorney General's testimony, it must allow for proper development of the record.  It cannot pretermit the process by judicially noting ambiguous extra-judicial testimony and deeming it dispositive.

## CONCLUSION

For the foregoing reasons, the motion to dismiss should be denied.


Dated:  February 16, 2018                                    Respectfully submitted,


                                                             /s/ Kevin M. Downing
                                                             Kevin M. Downing
                                                             (D.C. Bar #1013894)
                                                             Thomas E. Zehnle
                                                             (D.C. Bar #415556)
                                                             601 New Jersey Avenue, N.W.
                                                             Suite 620
                                                             Washington, D.C.  20001
                                                             kevindowning@kdowninglaw.com