**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| PAUL J. MANAFORT, JR., *Plaintiff*, v. U.S. DEPARTMENT OF JUSTICE, ROD J. ROSENSTEIN, and ROBERT S. MUELLER III, *Defendants*. | No. 1:18-cv-00011-ABJ |

## DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. ii

TABLE OF AUTHORITIES............................................................................................ iv

INTRODUCTION ........................................................................................................... 1

ARGUMENT .................................................................................................................. 2

I.      Manafort Cannot Use a Civil Lawsuit to Challenge His Ongoing Criminal
        Proceedings or Hypothetical Future Charges ..................................................... 2

        A.      Manafort's Attempt to Re-Characterize His Requested Relief Does Not
                Save His Complaint from Dismissal ....................................................... 3

        B.      Manafort Mischaracterizes the Governing Abstention Principles .......... 7

                1.      The D.C. Circuit's *Juluke* Decision Is Inapplicable.................... 7

                2.      Manafort Fails to Distinguish *Deaver* and Other Binding D.C.
                        Circuit Precedents ...................................................................... 9

                3.      The Underlying Principles Confirm that This Case Must Be
                        Dismissed ................................................................................. 11

        C.      There Is No Bad-Faith Harassment Warranting an Exception to *Younger* ........... 13

II.     Count I Should Be Dismissed Because it is Not a Cognizable APA Claim...................... 14

        A.      Manafort Has an Adequate Remedy Available in His Criminal Action................ 14

        B.      The APA Does Not Permit a Private Party to Challenge DOJ Prosecutorial
                Assignments ............................................................................................ 15

                1.      The Special Counsel Regulations Provide No Rights to Manafort .......... 15

                2.      Manafort Does Not Satisfy the Zone of Interests Requirement................ 17

                3.      The Appointment Order Does Not Constitute Final Agency Action ........ 20

III.     Count II Should Be Dismissed Because *Ultra Vires* Review is Unavailable ................... 21

    A.     Manafort's Claim that the Special Counsel Has Exceeded the Scope of
        Authority Granted by the Appointment Order Fails ............................................. 21

    B.     Manafort Should Not Be Permitted to Raise a New *Ultra Vires* Theory that
        Likewise Is Not Cognizable.................................................................................... 24

    C.     Judicial Notice of the Testimony Is Proper But Also Unnecessary ...................... 25

CONCLUSION........................................................................................................................ 25

# TABLE OF AUTHORITIES

## CASES

*31 Foster Children v. Bush*,
   329 F.3d 1255 (11th Cir. 2003) ............................................................................ 5, 12

*Air Transp. Ass'n of Am. v. FAA*,
   169 F.3d 1 (D.C. Cir. 1999) .................................................................................... 16

*Am. Farm Lines v. Black Ball Freight Serv.*,
   397 U.S. 532 (1970) ................................................................................................ 17

*Am. Fed'n of Gov't Emps., AFL-CIO v. Rumsfeld*,
   321 F.3d 139 (D.C. Cir. 2003) ............................................................................... 17

*Andujar v. City of New York*,
   2012 WL 5177515 (S.D.N.Y. Oct. 16, 2012) ........................................................... 4

*Armstrong v. Exceptional Child Ctr., Inc.*,
   135 S. Ct. 1378 (2015) ........................................................................................... 22

*Arpaio v. Obama*,
   797 F.3d 11 (D.C. Cir. 2015) ................................................................................... 6

*Ballard v. Wilson*,
   856 F.2d 1568 (5th Cir. 1988) ................................................................................. 4

*Bd. of Governors of Fed. Reserve Sys. v. MCorp Fin., Inc.*,
   502 U.S. 32 (1991) ................................................................................................. 22

*Bice v. La. Pub. Def. Bd.*,
   677 F.3d 712 (5th Cir. 2012) ................................................................................... 5

*Bond v. United States*,
   564 U.S. 211 (2011) ............................................................................................... 18

*Christoforu v. United States*,
   842 F. Supp. 1453 (S.D. Fla. 1994), *aff'd*, 61 F.3d 31 (11th Cir. 1995) ............... 4, 9

*Cinema Blue of Charlotte, Inc. v. Gilchrist*,
   887 F.2d 49 (4th Cir. 1989) ..................................................................................... 5

*Citizens for Responsibility & Ethics in Wash. (CREW) v. Dep't of Justice*,
   846 F.3d 1235 (D.C. Cir. 2017) .......................................................................... 14, 19

*City of Oakland v. Lynch*,
   798 F.3d 1159 (9th Cir. 2015) ................................................................................. 21

*Cobbledick v. United States*,
  309 U.S. 323 (1940) ........................................................................................... 20

*Colonial First Properties, LLC v. Henrico Cty.*,
  166 F. Supp. 2d 1070 (E.D. Va. 2001) ................................................................. 4

*Council of and for the Blind of Del. Cty. Valley, Inc. v. Regan*,
  709 F.2d 1521 (D.C. Cir. 1983) .......................................................................... 15

*Deakins v. Monaghan*,
  484 U.S. 193 (1988) ............................................................................................. 4

*Deaver v. Seymour*,
  656 F. Supp. 900 (D.D.C. 1987) ..................................................................... 5, 10

*\*Deaver v. Seymour*,
  822 F.2d 66 (D.C. Cir. 1987) ...................................................................... *passim*

*Deaver v. United States*,
  483 U.S. 1301 (1987) .......................................................................................... 11

*Defs. of Wildlife v. Jackson*,
  791 F. Supp. 2d 96 (D.D.C. 2011) ...................................................................... 16

*Di Bella v. United States*,
  369 U.S. 121 (1962) ............................................................................................ 12

*Doran v. Salem Inn, Inc.*,
  422 U.S. 922 (1975) .............................................................................................. 8

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
  528 U.S. 167 (2000) .............................................................................................. 5

*FTC v. Standard Oil Co. of Cal.*,
  449 U.S. 232 (1980) ............................................................................................ 21

*Garcia v. Vilsack*,
  563 F.3d 519 (D.C. Cir. 2009) ............................................................................ 15

*Gardner v. Luckey*,
  500 F.2d 712 (5th Cir. 1974) .............................................................................. 12

*Gerstein v. Pugh*,
  420 U.S. 103 (1975) ............................................................................................ 13

*Gilbertson v. Albright*,
  381 F.3d 965 (9th Cir. 2004) ................................................................................ 5

*Hartford Assocs. v. United States*,
   792 F. Supp. 358 (D.N.J. 1992) ............................................................................. 9

*Hicks v. Miranda*,
   422 U.S. 332 (1975) .................................................................................... 6, 13

*Hurd v. Dist. of Columbia*,
   864 F.3d 671 (D.C. Cir. 2017) .............................................................................. 25

*\*In re Al-Nashiri*,
   835 F.3d 110 (D.C. Cir. 2016), *cert denied*, 135 S. Ct. 354 (2017) ............................... 3, 10, 11

*\*In re Sealed Case*,
   829 F.2d 50 (D.C. Cir. 1987) ........................................................................... 11, 17

*Joseph A. ex rel. Corrine Wolfe v. Ingram*,
   275 F.3d 1253 (10th Cir. 2002) ............................................................................. 5

*Juidice v. Vail*,
   430 U.S. 327 (1977) ...................................................................................... 12

*Juluke v. Hodel*,
   811 F.2d 1553 (D.C. Cir. 1987) .................................................................... 1, 7, 8, 9

*Kingman Park Civic Ass'n v. Gray*,
   27 F. Supp. 3d 142 (D.D.C. 2014) ..................................................................... 3, 24

*Kugler v. Helfant*,
   421 U.S. 117 (1975) ...................................................................................... 13

*Larson v. Domestic & Foreign Commerce Corp.*,
   337 U.S. 682 (1949) .................................................................................... 16, 23

*Leedom v. Kyne*,
   358 U.S. 184 (1958) .................................................................................... 16, 23

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
   134 S. Ct. 1377 (2014) ................................................................................. 17, 19

*Lopez v. FAA*,
   318 F.3d 242 (D.C. Cir. 2003), *as amended* (Feb. 11, 2003) .................................... 17

*Lujan v. Nat'l Wildlife Fed'n*,
   497 U.S. 871 (1990) ...................................................................................... 20

*Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*,
   457 U.S. 423 (1982) ....................................................................................... 6

*Miranda v. Gonzales*,
   173 F. App'x 840 (D.C. Cir. 2006) ........................................................................... 11

*Moore v. Sims*,
   442 U.S. 415 (1979) ................................................................................................ 12

*Nat'l Fed'n of Fed. Emps. v. Cheney*,
   883 F.2d 1038 (D.C. Cir. 1989) ............................................................................. 18

*Navegar, Inc. v. United States*,
   103 F.3d 994 (D.C. Cir. 1997) ................................................................................. 7

*North v. Walsh*,
   656 F. Supp. 414 (D.D.C. 1987) ........................................................................... 11

*O'Shea v. Littleton*,
   414 U.S. 488 (1974) ........................................................................................... 4, 12

*Pa. R.R. Co. v. Dillon*,
   335 F.2d 292 (D.C. Cir. 1964) ............................................................................... 20

*Palmer v. City of Chicago*,
   755 F.2d 560 (7th Cir. 1985) ................................................................................. 12

*Pennzoil Co. v. Texaco, Inc.*,
   481 U.S. 1 (1987) .................................................................................................... 12

*Perez v. Ledesma*,
   401 U.S. 82 (1971) .................................................................................................. 13

*Phelps v. Hamilton*,
   59 F.3d 1058 (10th Cir. 1995) ............................................................................... 14

*Prisology v. Fed. Bureau of Prisons*,
   74 F. Supp. 3d 88 (D.D.C. 2014), *aff'd*, 852 F.3d 1114 (D.C. Cir. 2017) ................ 5

*Redner v. Citrus Cty.*,
   919 F.2d 646 (11th Cir. 1990) ................................................................................. 4

*Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n*,
   324 F.3d 726 (D.C. Cir. 2003) ............................................................................... 21

*Reporters Comm. for Freedom of Press v. AT&T Co.*,
   593 F.2d 1030 (D.C. Cir. 1978) ............................................................................. 13

*Samuels v. Mackell*,
   401 U.S. 66 (1971) ................................................................................................... 4

*Spargo v. N.Y. State Comm'n on Judicial Conduct*,
   351 F.3d 65 (2d Cir. 2003) ............................................................. 12

*Susan B. Anthony List v. Driehaus*,
   134 S. Ct. 2334 (2014) ...................................................................... 6

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007)......................................................................... 25

*Town of Stratford v. FAA*,
   285 F.3d 84 (D.C. Cir. 2002) ......................................................... 17

*United Books, Inc. v. Conte*,
   739 F.2d 30 (1st Cir. 1984) .............................................................. 4

*United States v. Caceres*,
   440 U.S. 741 (1979).......................................................................... 17

*Williams v. Lew*,
   819 F.3d 466 (D.C. Cir. 2016) ....................................................... 25

*Women's Equity Action League v. Cavazos*,
   906 F.2d 742 (D.C. Cir. 1990) ....................................................... 15

*\*Younger v. Harris*,
   401 U.S. 37 (1971)............................................................................. 2

## STATUTES

5 U.S.C. § 301 ................................................................................... 19

5 U.S.C. § 702 ................................................................................... 20

5 U.S.C. § 704 ................................................................................... 14

28 U.S.C. §§ 509-510 ........................................................................ 19

28 U.S.C. § 515(b) ............................................................................ 23

28 U.S.C. § 516 ................................................................................. 22

28 U.S.C. § 547 ................................................................................. 22

## RULES

Fed. R. Crim. P. 12(b)(3)(A) .............................................................. 8

**REGULATIONS**

28 C.F.R. § 600.3 ..................................................................................................... 23

28 C.F.R. § 600.4 ..................................................................................................... 25

28 C.F.R. § 600.7 ..................................................................................................... 25

28 C.F.R. § 600.8 ..................................................................................................... 24

28 C.F.R. § 600.10 ................................................................................................... 16

*Office of Special Counsel*,
   64 Fed. Reg. 37,038 (July 9, 1999) ............................................................ 17, 19, 25

**OTHER AUTHORITIES**

United States Attorneys' Manual (USAM) § 6-4.200 .................................................. 25

United States Attorneys' Manual (USAM) § 9-90.710 ................................................ 25

Wright & Miller, Fed. Prac. & Proc. § 4252 ........................................................... 4, 8

## INTRODUCTION

Plaintiff Paul J. Manafort Jr. is now a defendant in two criminal prosecutions brought by Special Counsel Robert S. Mueller, III.   *See United States v. Manafort*, No. 17-cr-201-ABJ (D.D.C.); *United States v. Manafort*, No. 18-cr-83-TSE (E.D. Va.).   This civil lawsuit seeks to collaterally attack those ongoing criminal prosecutions.   Manafort does not deny that, as a general rule, such collateral attacks are improper.   Instead, he contends that this civil suit is outside the general rule because it "was filed shortly after and in direct response to the Special Counsel's threats to bring additional charges against Mr. Manafort in venues outside the District of Columbia."   Pl.'s Opp. to Mot. to Dismiss (ECF No. 24) at 2 [hereafter "Pl.'s Opp."].   In particular, Manafort asserts that relief is necessary because the Special Counsel is threatening to "subject[] Mr. Manafort to multiple investigations, in multiple jurisdictions, on multiple matters."   *Id.* at 16.

These arguments lack merit.   Manafort's Complaint contains no allegations regarding potential future prosecutions, let alone improper threats of such prosecutions.   Although Manafort is now indicted in two separate venues—in the District of Columbia and in the Eastern District of Virginia—that fact does not change the analysis; Manafort is barred from collaterally attacking both prosecutions.   And the Special Counsel's compliance with venue requirements does not constitute harassment allowing judicial review.   Manafort is being prosecuted in two Districts because his conduct occurred in multiple Districts, and he refused to waive venue to allow all of the charges to proceed in a single case.

Apart from distorting the factual context in which this lawsuit arises, Manafort also misconstrues the governing legal framework.   Manafort relies heavily on the D.C. Circuit's decision in *Juluke v. Hodel*, 811 F.2d 1553 (D.C. Cir. 1987), but that decision is inapplicable because the relevant civil plaintiffs in that case were asserting their right to engage in future conduct, and they were not already being prosecuted.   Thus, the relevant authorities here are

*Younger v. Harris*, 401 U.S. 37 (1971), and *Deaver v. Seymour*, 822 F.2d 66 (D.C. Cir. 1987), which foreclose civil suits, like Manafort's, seeking equitable relief that would interfere with ongoing criminal proceedings.  Manafort's claims should therefore be dismissed at the outset.

Dismissal would still be required, moreover, even if Manafort's claims could overcome this barrier to review.  With respect to Count I, Manafort's claim under the Administrative Procedure Act (APA) fails because his criminal cases provide an alternate, adequate remedy.  Although Manafort may prefer to seek broad relief through this civil suit, binding precedent confirms that individual, situation-specific relief is considered sufficiently "adequate" to preclude an APA claim.  Additionally, Manafort's claim fails under various APA doctrines, all pointing to the conclusion that a private party cannot challenge an internal Government decision about how to assign responsibility for a particular matter among employees within an agency.

Finally, with respect to Count II, Manafort cannot satisfy the stringent requirements for *ultra vires* review.  Manafort cannot invoke the doctrine when he has an alternative forum for his claims, nor can he rely on the doctrine to challenge a purported violation of internal agency delegations.  Manafort also has not identified the type of clear prohibition or obvious error necessary to state an *ultra vires* claim.  For all of these threshold reasons, both of Manafort's claims should be dismissed.

## ARGUMENT

### I.      Manafort Cannot Use a Civil Lawsuit to Challenge His Ongoing Criminal Proceedings or Hypothetical Future Charges

Under well-established Supreme Court and D.C. Circuit authority, civil lawsuits cannot be used to collaterally attack ongoing criminal proceedings.  *See* Defs.' Mem. in Supp. of Mot. to Dismiss (ECF No. 16-1) at 11-19 [hereafter "MTD Mem."].  In particular, a civil suit "seeking declaratory and injunctive relief" from the "continued exercise of prosecutorial authority" cannot

proceed where an adequate forum already exists for those claims, such as the ability to assert defenses in a criminal case. *Deaver*, 822 F.2d at 66, 69-71.

### A.   Manafort's Attempt to Re-Characterize His Requested Relief Does Not Save His Complaint from Dismissal

Manafort attempts to evade this "basic doctrine of equity jurisprudence," *In re Al-Nashiri*, 835 F.3d 110, 118 (D.C. Cir. 2016), by trying to re-characterize the relief he seeks. Manafort now disclaims "dismissal of the indictment," Pl.'s Opp. at 11 n.2, and urges that his suit may proceed because it is focused solely on other, unspecified "future" criminal proceedings that could be initiated by the Special Counsel. *See id.* at 11, 13-14, 32. This attempt at artful pleading fails.

**1.** As an initial matter, Manafort's newly requested relief is contrary to the Complaint itself. For example, the Complaint requests "an order . . . setting aside all actions taken against Mr. Manafort pursuant to the Appointment Order." Compl., Prayer for Relief ¶ (b). Manafort offers no explanation for how this request can be construed as anything other than "seek[ing] retroactive relief . . . through dismissal of the indictment against him." Pl.'s Opp. at 11. And it is "well settled law that a plaintiff cannot amend his or her complaint by the briefs in opposition to a motion to dismiss." *Kingman Park Civic Ass'n v. Gray*, 27 F. Supp. 3d 142, 160 n.7 (D.D.C. 2014).

**2.** Manafort's description of his requested relief as purely "prospective," Pl.'s Opp. at 11, is both incorrect and immaterial under *Younger* abstention principles. Manafort "seeks to set aside" the order that grants the Special Counsel authority to conduct criminal prosecutions, including the two pending prosecutions. Pl.'s Opp. at 13; *see also id.* at 30-31. As a practical matter, "setting aside" the Appointment Order would clearly interfere with the ongoing criminal proceedings—at a minimum because this civil court would be deciding the same issues that Manafort could raise as defenses in the underlying criminal cases. Indeed, Manafort acknowledges that granting his relief may "have an *effect* on the . . . existing prosecution." *Id.* at 14 (emphasis in original).

Recognizing that such nominally "prospective" relief does not avoid interference with ongoing criminal proceedings, courts have rejected the argument that *Younger* abstention can be avoided simply by seeking relief only as to future prosecutions.  *See, e.g.*, *Ballard v. Wilson*, 856 F.2d 1568, 1570 (5th Cir. 1988) ("Although Ballard confines his request for relief to future prosecutions, we cannot ignore the fact that any injunction or declaratory judgment issued by a federal court would affect the course and outcome of the pending state proceedings."); Wright & Miller, Fed. Prac. & Proc. § 4252 ("[I]f a criminal prosecution is pending, the defendant in that action cannot escape the bar of *Younger* by suing in federal court only to enjoin future state prosecutions[.]").[1]  These decisions are rooted in the principle that a criminal defendant cannot accomplish indirectly what *Younger* prohibits directly.  *See O'Shea v. Littleton*, 414 U.S. 488, 500 (1974) (rejecting relief that "would indirectly accomplish the kind of interference that *Younger v. Harris* and related cases sought to prevent" (internal citation omitted)); *Samuels v. Mackell*, 401 U.S. 66, 73 (1971) (holding that *Younger* precludes declaratory judgments as much as injunctions, because "the basic policy against federal interference with pending state criminal prosecutions will be frustrated as much by a declaratory judgment as it would be by an injunction"); *see also Deakins v. Monaghan*, 484 U.S. 193, 207-08 (1988) (White, J., concurring) (explaining that *Younger* requires staying damages actions due to ongoing criminal proceedings, because "[a] judgment in the federal damages action may decide several questions at issue in the state criminal proceeding").  Thus, *Younger* abstention principles do not turn on whether relief is sought directly against the

---

[1] *See also, e.g.*, *Redner v. Citrus Cty.*, 919 F.2d 646, 648 (11th Cir. 1990); *United Books, Inc. v. Conte*, 739 F.2d 30, 32-33 (1st Cir. 1984); *Andujar v. City of New York*, 2012 WL 5177515, at *3 (S.D.N.Y. Oct. 16, 2012); *Colonial First Properties, LLC v. Henrico Cty.*, 166 F. Supp. 2d 1070, 1079 (E.D. Va. 2001); *Christoforu v. United States*, 842 F. Supp. 1453, 1456 (S.D. Fla. 1994).

ongoing prosecution, but instead on whether the civil case would interfere with the prosecution as a practical matter.[2]

Indeed, in *Deaver* itself, the plaintiff sought relief broader than merely enjoining the forthcoming criminal prosecution. *See* 822 F.2d at 66 (seeking relief from the "continued exercise of prosecutorial authority"); *Deaver v. Seymour*, 656 F Supp. 900, 901 (D.D.C. 1987) (describing the complaint as seeking, among other things, to "permanently enjoin all further activity of the Independent Counsel directed towards him"); *see also* Part I.B.2, *infra*. Yet nothing in the decision suggests that the outcome would have been different if the plaintiff had simply dropped a footnote "waiv[ing] any . . . claim" for "dismissal of the indictment." Pl.'s Opp at 11 n.2. Under Manafort's theory, however, such a civil suit could have proceeded notwithstanding the obvious "*effect* on the . . . existing prosecution" of a decision invalidating the prosecutor's appointment. *Id.* at 14.

**3.** Finally, even if Manafort were genuinely seeking relief that was not tied to or would not have any effect on the pending prosecutions, he would lack standing to seek such relief against hypothetical future prosecutions. "[A] plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000). And standing must be evaluated according to the "face of the complaint." *Prisology v. Fed. Bureau of Prisons*, 74 F. Supp. 3d 88, 93 (D.D.C. 2014) (Jackson, A.B., J.), *aff'd*, 852 F.3d 1114 (D.C. Cir. 2017). Here, Manafort's Complaint makes no attempt to allege any threatened future prosecutions, let alone any certainly impending injury-in-fact stemming from the

---

[2] Several courts of appeals have likewise recognized that indirect interference with an ongoing criminal prosecution is sufficient to apply *Younger*. *See, e.g.*, *Bice v. La. Pub. Def. Bd.*, 677 F.3d 712, 717 (5th Cir. 2012); *Gilbertson v. Albright*, 381 F.3d 965, 968 (9th Cir. 2004) (en banc); *31 Foster Children v. Bush*, 329 F.3d 1255, 1276 (11th Cir. 2003); *Joseph A. ex rel. Corrine Wolfe v. Ingram*, 275 F.3d 1253, 1272 (10th Cir. 2002); *Cinema Blue of Charlotte, Inc. v. Gilchrist*, 887 F.2d 49, 53 (4th Cir. 1989).

threat of future prosecutions.

Manafort's opposition repeatedly invokes the Government's asserted "threat[] to bring additional charges" in other venues.  *E.g.*, Pl.'s Opp. at 2, 16, 17, 32.  To the extent he is referencing the criminal case now pending in the Eastern District of Virginia, that prosecution is plainly covered by the same abstention principles.  *See Hicks v. Miranda*, 422 U.S. 332, 349 (1975) ("[W]here state criminal proceedings are begun against the federal plaintiffs after the federal complaint is filed but before any proceedings of substance on the merits have taken place in the federal court, the principles of *Younger v. Harris* should apply in full force."); *see also Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 437 (1982) (applying *Younger* when "in the federal-court litigation the sole issue has been whether abstention is appropriate"); *Deaver*, 822 F.2d at 67 (suit filed in anticipation of forthcoming indictment).  Manafort cannot rely on the second prosecution as the basis for his injury-in-fact, therefore, because the "prospective" relief he seeks here—*i.e.*, the relief that is not foreclosed even under Manafort's interpretation of *Younger*—cannot be directed against that second prosecution.

Manafort's standing must instead derive from hypothetical future prosecutions beyond the two pending ones.  In the context of seeking relief against potential future criminal prosecutions, however, courts ordinarily find standing only in narrow circumstances—*i.e.*, where a plaintiff seeks to engage in prohibited conduct but is being "chilled" from doing so based on a sufficiently imminent threat of prosecution.  *See Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2342-43 (2014) (describing examples where the Court has permitted such pre-enforcement review).

Here, Manafort's assertions—and certainly the allegations in his Complaint—do not establish a specific, non-speculative risk of future prosecution.  *See Arpaio v. Obama*, 797 F.3d 11, 21 (D.C. Cir. 2015) (a claim based on "predicted future injury . . . bears a more rigorous burden to

establish standing," and a court "may reject as overly speculative those links which are predictions of future events (especially future actions to be taken by third parties)").  Additionally, Manafort does not identify any *future* conduct he wishes to engage in but is being "chilled" from pursuing; he instead expresses concern that the Special Counsel might prosecute him for additional *past* conduct.  *See* Pl.'s Opp. at 37.  There is no basis for recognizing standing in this context, when there is no "chill" as to any future conduct.  *See Navegar, Inc. v. United States*, 103 F.3d 994, 998-99 (D.C. Cir. 1997).  Thus, even if Manafort were genuinely seeking only prospective relief that had no effect on his ongoing prosecutions, his claims must still be dismissed for lack of standing to bring such a pre-enforcement challenge.

### B.    Manafort Mischaracterizes the Governing Abstention Principles

#### 1.    The D.C. Circuit's *Juluke* Decision Is Inapplicable

Manafort's opposition relies heavily on the D.C. Circuit's decision in *Juluke v. Hodel*, 811 F.2d 1553 (D.C. Cir. 1987), but that decision does not control here.  *Juluke* was an appeal from three separate cases, all of which involved a group of individuals who sought to protest outside the White House.  *Id.* at 1555.  Two of the cases were criminal prosecutions brought against individuals (Snyder and Fennelly) who, on multiple occasions, protested outside the White House; were arrested, prosecuted, and convicted; and who then appealed from their convictions.  *See id.*  The third case was a civil action brought not only by Snyder and Fennelly, but also by other individuals such as Juluke, who had accompanied Snyder and Fennelly during their prior protests but each time withdrew before being arrested.  *See id.*  The plaintiffs in the civil action argued that the regulations prohibiting their protest violated the First Amendment, and thus they sought to enjoin the regulations' enforcement.  *See id.*

On appeal, the D.C. Circuit addressed whether the civil action was proper under *Younger*. The court held that the civil action could proceed, because the plaintiffs "never sought to enjoin

the existing prosecutions" but instead "sought to enjoin *future* arrests for violations of the . . . regulations." *Id.* at 1557.   Unlike Manafort, however, the plaintiffs there were not just suing to enjoin a criminal proceeding but also to shield future conduct in which they wanted to engage.   *See id.* (noting that "[t]he appellants wished to continue their demonstration on the White House sidewalk").   Moreover, the D.C. Circuit expressly tied its analysis to the fact that—unlike Manafort—some of the civil plaintiffs were *not* being criminally prosecuted:   "When the civil action does not seek to enjoin an ongoing prosecution *and where the movants are not being prosecuted*, an injunction may issue." *Id.* (emphasis added).   "[I]t is clear that, *at least as to Juluke and Moss*, consideration of the claims for injunctive relief was proper despite the ongoing prosecution *of Snyder and Fennelly*." *Id.* (emphasis added); *see also id.* (distinguishing Supreme Court authority involving "identity of parties in the criminal and civil actions").

Here, unlike in *Juluke*, Manafort is not seeking to shield future conduct; even in his view he is only seeking to interfere with future criminal proceedings concerning past conduct.   And, unlike the relevant civil plaintiffs in *Juluke*, Manafort is presently being prosecuted and thus has adequate forums available in which to present his arguments—*i.e.*, by filing motions to dismiss the indictments in the underlying criminal actions.   *See* Fed. R. Crim. P. 12(b)(3)(A).   For Juluke and Moss—the two plaintiffs in *Juluke* who were not subject to prosecutions—their only recourse for challenging the regulations was to bring a civil action.   This important difference leads to different results under *Younger*. *See Doran v. Salem Inn, Inc.*, 422 U.S. 922, 928-30 (1975) (one corporation that was subject to criminal prosecution was barred from initiating a civil action, but two unrelated corporations not subject to prosecution were not barred under *Younger*); *see also* Wright & Miller, Fed. Prac. & Proc. § 4252 (noting that a criminal "defendant's inability to bring a federal action because of the pendency of a prosecution is personal to him and does not affect

other potential federal plaintiffs who are not the subject of pending prosecutions").

*Deaver* further confirms the narrow holding of *Juluke*. In *Deaver*, the court clarified that "*Juluke* assumed (but did not actually hold) that federal courts may extend *Doran* . . . to justify enjoining future *federal* arrests and prosecutions that chill the exercise of First Amendment rights." 822 F.2d at 70 n.8. That principle did not apply in *Deaver*, where the plaintiff was "neither asserting a violation of First Amendment rights nor complaining that [the] threatened indictment chills future behavior." *Id.*; *see also Christoforu*, 842 F. Supp. at 1456 ("The *Deaver* court noted that *Juluke* is limited to cases in which a plaintiff asserts First Amendment rights and seeks to protect future actions from prosecution."), *aff'd*, 61 F.3d 31 (11th Cir. 1995); *Hartford Assocs. v. United States*, 792 F. Supp. 358, 364 n.3 (D.N.J. 1992). Similarly here, Manafort has not pled a First Amendment (or any other constitutional) claim, nor has he alleged any "chill" as to future conduct. These later cases thus confirm that *Juluke* offers Manafort no support.[3]

### 2. Manafort Fails to Distinguish *Deaver* and Other Binding D.C. Circuit Precedents

Manafort seeks to distinguish *Deaver* (and the multitude of other cases holding that civil lawsuits cannot be used to collaterally attack criminal proceedings) on the basis that those cases "all involve efforts to enjoin a single, ongoing criminal indictment, not to redress a threatened exercise of *ultra vires* authority across a broad spectrum of jurisdictions and matters." Pl.'s Opp. at 16 n.3; *see also id.* at 15 ("[T]he problem with Deaver's request for injunctive relief was that it was brought to interfere with *one specific pending case*[.]" (emphasis in original)).

---

[3] While the court in *Juluke* also stated that "[e]ven as to Snyder and Fennelly, it is not clear that *Younger* principles should bar an injunction against *future* enforcement," 811 F.2d at 1557-58, that tentative statement was neither a holding nor an endorsement of that idea. As discussed below, courts have subsequently addressed that issue. *See* Part I.B.2, *infra*. Moreover, Manafort is factually distinguishable even from the plaintiffs in *Juluke* who were being prosecuted, because their civil claim (unlike Manafort's) was based on a "chill" of future conduct.

Manafort's description of what occurred in *Deaver* is incorrect:  The plaintiff did not simply seek to enjoin the impending criminal case.  Although that was the scope of the requested *preliminary injunction*, the plaintiff's underlying *complaint* sought broader relief:

> Deaver contends that the Act, from which Seymour derives such power as he may have to investigate, indict, and prosecute him, is unconstitutional in several respects in which it allegedly violates the principle of the separation of governmental powers, and prays that the Court *declare the Act invalid, permanently enjoin all further activity of the Independent Counsel directed towards him, and, in effect, impound the evidence Seymour has gathered to date*.

*Deaver*, 656 F. Supp. at 900-01 (emphasis added); *see also Deaver*, 822 F.2d at 66 (Deaver sought injunctive relief from the "*continued exercise of prosecutorial authority*" (emphasis added)).

Under Manafort's theory, at least some aspects of this relief should have been permitted because Deaver was not just seeking "to interfere with one specific pending case," and the relief Deaver sought was also broader than what was available in the underlying criminal action (*i.e.*, dismissal of a single indictment).  *See* Pl.'s Opp. at 15-16.  Nonetheless, the D.C. Circuit affirmed not only the denial of the preliminary injunction, but also directed that the *entire case* be dismissed. *See Deaver*, 822 F.2d at 68.  That holding is directly contrary to Manafort's arguments here.

Manafort also tries to undermine *Deaver* by pointing to language in *Juluke* suggesting that *Younger* bars federal court intervention in state but not federal criminal proceedings.  While *Juluke* declined to apply *Younger* to the facts at issue there, the D.C. Circuit's decision in *Deaver* makes clear that *Younger* principles also apply to federal court actions.  822 F.2d at 69-70.  Indeed, the D.C. Circuit recently explained that there is even *greater* reason for abstention when the prosecution is a federal one because the defendant already has access to an Article III forum.  *See In re Al-Nashiri*, 835 F.3d 110, 126-27 (D.C. Cir. 2016) (rejecting the argument that "abstention applies only to court systems that are wholly separate from the federal judicial establishment," because "the availability of legal remedies in Article III courts has historically *barred* criminal

defendants from receiving pretrial equitable relief"), *cert. denied*, 135 S. Ct. 354 (2017).

Manafort seeks to distinguish *In re Al-Nashiri* and *In re Sealed Case*, 829 F.2d 50 (D.C. Cir. 1987), simply by describing the factual contexts in which those decisions arose.  *See* Pl.'s Opp. at 16-17 & n.4  But the factual context for those decisions is irrelevant to the legal principles they embody; and both decisions' legal holdings confirm that *Deaver*, and the principles set forth in *Younger*, control civil lawsuits like Manafort's.  *See In re Al-Nashiri*, 835 F.3d at 118, 127; *In re Sealed Case*, 829 F.2d at 62 n.60; *see also Miranda v. Gonzales*, 173 F. App'x 840, 841 (D.C. Cir. 2006); *North v. Walsh*, 656 F. Supp. 414, 420-21 (D.D.C. 1987).

### 3.    The Underlying Principles Confirm that This Case Must Be Dismissed

If there were any doubt about the governing rule, the principles underlying the abstention doctrine confirm that Manafort's suit should be dismissed:  allowing it to proceed would be contrary to fundamental principles of equity, the final judgment rule, separation of powers, and intra-branch comity.  *See* MTD Mem. at 14-16.

*First*, it is a "basic doctrine of equity jurisprudence" that civil courts will not "enjoin criminal proceedings, as long as the defendant has an adequate legal remedy in the form of trial and direct appeal."  *In re Al-Nashiri*, 835 F.3d at 118.  Manafort asserts that "moving to dismiss a particular indictment . . . is anything but adequate" to "redress the repeated exercise of unlawful authority" he purportedly faces.  Pl.'s Opp. at 14.  But that argument is contrary to *Deaver*, which held that the Federal Rules of Criminal Procedure "provide *adequate, although limited,* opportunities for defendants to challenge *shortcomings in prosecutorial authority*."  822 F.2d at 71 (emphasis added); *see also Deaver v. United States*, 483 U.S. 1301, 1303 (1987) (Rehnquist, C.J., in chambers) ("There will be time enough for applicant to present his constitutional claim to the appellate courts if and when he is convicted of the charges against him.").

More fundamentally, although Manafort may prefer to have this Court decide his claims in

one fell swoop, *Younger* abstention is required even when the civil case seeks relief broader than

what is available in individual criminal cases.   In the analogous situation where plaintiffs have

sought class-wide civil relief—presumably to avoid having to present their claims on a case-by-

case basis in individual criminal proceedings—the Supreme Court has held that *Younger* applies.

*See Juidice v. Vail*, 430 U.S. 327, 330-31, 337 (1977); *O'Shea*, 414 U.S. at 499-502.   Indeed, the

Supreme Court has noted that "[t]he breadth of a challenge . . . has traditionally militated in *favor*

of abstention, not *against* it."   *Moore v. Sims*, 442 U.S. 415, 427 (1979).[4]   It is Manafort's burden

to show that the existing remedies are inadequate, *see Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 14

(1987), and he has not proven the inadequacy of case-by-case relief here.

    *Second*, Manafort's suit would undermine the final judgment rule.   Regardless of whether

Manafort "seek[s] dismissal of the pending indictment," Pl.'s Opp. at 19, he still could appeal his

civil claims separately and, in effect, challenge his prosecutions while they are ongoing.   *Deaver*,

822 F.2d at 71; *see also Di Bella v. United States*, 369 U.S. 121, 126 (1962) (discussing how

"intermediate appeal" is "especially inimical to the effective and fair administration of the criminal

law").   The final judgment rule thus supports dismissal of Manafort's civil claims.

    *Third*, Manafort's claims would interfere with separation of powers and inter-branch

comity.   He is, at bottom, asking this Court to decide the scope of the Special Counsel's authority

and thereby superintend the types of conduct that the Special Counsel may investigate and the

kinds of charges the Special Counsel may bring.   *See* Compl., Prayer for Relief ¶ (d).   But "[t]he

balance between the Executive and Judicial branches would be profoundly upset if the Judiciary

---

[4] Several courts of appeals have similarly recognized that, under *Younger*, the existing remedies may be adequate even if they cannot "do all that Plaintiffs wish they could[.]"   *31 Foster Children*, 329 F.3d at 1279; *see also, e.g.*, *Spargo v. N.Y. State Comm'n on Judicial Conduct*, 351 F.3d 65, 80 (2d Cir. 2003); *Palmer v. City of Chicago*, 755 F.2d 560, 575 (7th Cir. 1985); *Gardner v. Luckey*, 500 F.2d 712, 715 (5th Cir. 1974).

assumed superintendence over the law enforcement activities of the Executive branch[.]" *Reporters Comm. for Freedom of Press v. AT&T Co.*, 593 F.2d 1030, 1065 (D.C. Cir. 1978).

*Fourth* and finally, intra-branch comity also supports this conclusion.  Manafort responds that there is no concern here because "[t]his suit and the criminal action are pending in the same court."  Pl.'s Opp. at 19-20.  But nothing *requires* those circumstances, as demonstrated by the second indictment now pending in the Eastern District of Virginia.  This Court should not usurp that Court's authority to decide for itself the legality of the prosecution currently pending before it.  Thus, each of these key principles further supports dismissal of Manafort's claims.

### C.      There Is No Bad-Faith Harassment Warranting an Exception to *Younger*

In a last-ditch effort to avoid abstention, Manafort appeals to a narrow exception for when "there is a showing of 'bad faith' or 'harassment' by state officials responsible for the prosecution."  Pl.'s Opp. at 17 (quoting *Kugler v. Helfant*, 421 U.S. 117, 124 (1975)).

This argument is frivolous.  The standard for establishing the bad-faith exception to *Younger* is exceedingly high—it is limited to "cases of proven harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a valid conviction and perhaps in other extraordinary circumstances[.]"  *Perez v. Ledesma*, 401 U.S. 82, 85 (1971).  Here, nothing in the Complaint or elsewhere suggests that the prosecutions of Manafort are driven by bad faith, particularly given that both were initiated by indictments validly returned by grand juries.  *See Gerstein v. Pugh*, 420 U.S. 103, 118 n.19 (1975) ("[A]n indictment, 'fair upon its face,' and returned by a 'properly constituted grand jury,' conclusively determines the existence of probable cause[.]"); *cf. Hicks*, 422 U.S. at 351.

The mere fact of multiple prosecutions, moreover, does not establish bad faith, as confirmed by Manafort's own authority.  *See Phelps v. Hamilton*, 59 F.3d 1058, 1066 (10th Cir. 1995) (noting that "mere numbers alone do not tell the full story" because there may be valid

reasons for multiple prosecutions, such as "the events themselves were separated by time or jurisdiction"). Here, Manafort is being prosecuted in two Districts because his conduct occurred in multiple Districts, and he refused to waive venue to allow all of the charges to proceed in a single case. *See United States v. Manafort*, No. 17-cr-201 (D.D.C.), ECF No. 190 ¶ 3 (Feb. 22, 2018), ECF No. 191-1 at 3 n.2 (Feb. 20, 2018). The Special Counsel's compliance with venue restrictions does not constitute harassment. *Phelps*, 59 F.3d at 1066-68. The abstention principles set forth in *Younger* and *Deaver* thus squarely foreclose Manafort's lawsuit.

## II. Count I Should Be Dismissed Because it is Not a Cognizable APA Claim

Even if this civil action were not barred entirely for the reasons above, the Court should still dismiss Manafort's APA claim in Count I. The underlying criminal proceedings provide an adequate alternate remedy. And Manafort's claim, in any event, improperly seeks to challenge DOJ's internal assignment of responsibility.

### A. Manafort Has an Adequate Remedy Available in His Criminal Action

Only agency actions "for which there is no other adequate remedy in a court are subject to judicial review" under the APA, 5 U.S.C. § 704; here, Manafort has an adequate remedy in his criminal action. Manafort agrees that the Federal Rules of Criminal Procedure are "comprehensive," *Deaver*, 822 F.2d at 71, "with respect to a particular criminal prosecution." Pl.'s Opp. at 32. Accordingly, Manafort concedes that he has an adequate remedy as to any given prosecution. Manafort's sole objection is that Criminal Rule 12 motions can halt prosecutions only one at a time. *See id.* This, however, is not the kind of "yawning gap" between the remedies available that renders an alternate review procedure inadequate. *Citizens for Responsibility & Ethics in Wash. (CREW) v. Dep't of Justice*, 846 F.3d 1235, 1246 (D.C. Cir. 2017).

It is of no import that "the broadest relief that Mr. Manafort could secure in the pending criminal suit . . . is dismissal of that single proceeding," Pl.'s Opp. at 32, for the D.C. Circuit has

held that even where a comprehensive, broad-ranging suit "would be more effective" than "situation-specific" litigation, the latter still "affords an adequate, even if imperfect, remedy." *Garcia v. Vilsack*, 563 F.3d 519, 525 (D.C. Cir. 2009); *see also Women's Equity Action League v. Cavazos*, 906 F.2d 742, 751 (D.C. Cir. 1990) (APA review is unavailable even though the alternative review scheme "may be more arduous, and less effective in providing systemic relief"); *Council of and for the Blind of Del. Cty. Valley, Inc. v. Regan*, 709 F.2d 1521, 1532 (D.C. Cir. 1983) (en banc).  Manafort's APA claim is thus precluded, even if the remedies available in his criminal actions are not as expansive as what he seeks here.

**B.      The APA Does Not Permit a Private Party to Challenge DOJ Prosecutorial Assignments**

Count I also fails because Manafort effectively seeks to challenge an internal Government decision about how to assign responsibility over a particular matter.  Manafort fails to dispute that, under his view, virtually any employment or assignment decision is subject to APA review by persons who may be affected downstream by the relevant agency official.  These kinds of internal agency decisions, however, are not subject to judicial challenge by private parties, a result that finds expression in a variety of doctrines.

**1.      The Special Counsel Regulations Provide No Rights to Manafort**

Private parties cannot enforce internal agency rules that are intended solely to organize the agency and are for the benefit of the agency.  *See* MTD Mem. at 22-24.  Manafort concedes that the Special Counsel Regulations provide him no rights to enforce.  *See* Pl.'s Opp. at 27, 35 n.8. He offers several responses about why he is nonetheless permitted to bring an APA claim founded on the regulations, none of which is persuasive.

Manafort suggests that he is not asserting any "rights" under DOJ's regulations, but rather is asserting a question of "authority," *i.e.*, that under the regulations the Acting Attorney General

had an "*absence of power*" to issue the Appointment Order.  Pl.'s Opp. at 27-28 (emphasis in original).  This distinction is spurious.  Almost any claim premised on regulations that provide no enforceable rights could be characterized as challenging the "absence of power" under the regulations.  Thus, all of the cases holding that internal DOJ policies do not create rights enforceable by individuals, *see* MTD Mem. at 23, could easily have been re-characterized as challenging the prosecutors' absence of power pursuant to the policies.  Yet nothing in those decisions indicates that a different result would follow under that framing.[5]

Manafort seeks to distinguish those decisions as involving "non-binding guidelines," whereas the Special Counsel Regulations "have the force and effect of law."  Pl.'s Opp. at 29.  Manafort's own cited cases are inapposite, however, because nothing precludes DOJ from relying on the Attorney General's overall statutory authority in lieu of, or in combination with, the Special Counsel Regulations.  *See* MTD Mem. at 4 n.1 (listing examples of special attorneys appointed pursuant to Attorney General's statutory authority).   And even when the Special Counsel Regulations are invoked, nothing in the statutes or regulations provides enforceable rights to individuals *outside* the Executive Branch.  *See* 28 C.F.R. § 600.10.  The regulations are thus akin to executive orders that do not give private individuals rights to enforce in APA suits.  *See, e.g.*, *Air Transp. Ass'n of Am. v. FAA*, 169 F.3d 1, 8-9 (D.C. Cir. 1999); *Defs. of Wildlife v. Jackson*, 791 F. Supp. 2d 96, 120-21 (D.D.C. 2011).  The regulations are simply an internal rule of DOJ organization, not the basis for an APA suit.  *See Office of Special Counsel*, 64 Fed. Reg. 37,038,

---

[5] Manafort's reliance on *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682 (1949), and *Leedom v. Kyne*, 358 U.S. 184 (1958), in this context is also misplaced.  *See* Pl.'s Opp. at 27-28.  Those cases set forth the framework for a non-statutory *ultra vires* claim and do not address the requirements for a claim under the APA.  In any event, those cases confirm that, even for *ultra vires* claims, there must be a violation of an individual right.  *See Larson*, 337 U.S. at 693 ("It is a prerequisite to the maintenance of any action for specific relief that the plaintiff claim an invasion of *his legal rights*, either past or threatened." (emphasis added)); *Kyne*, 358 U.S. at 190.

37,041 (July 9, 1999); *cf. In re Sealed Case*, 829 F.2d at 64 (Williams, J., concurring) (explaining with respect to prior regulations that "[i]n substance the Regulations simply implement [the Attorney General's] organization of his department").

Nor does the fact that the Special Counsel Regulations were published in the C.F.R. automatically render those regulations enforceable by Manafort.  *See Lopez v. FAA*, 318 F.3d 242, 247 (D.C. Cir. 2003) *as amended* (Feb. 11, 2003) (explaining that "[t]he Supreme Court has . . . distinguished between the types of internal agency regulations that are reviewable," namely "between procedural rules benefiting the agency and procedural rules benefitting the party otherwise left unprotected by agency rules"); *see also United States v. Caceres*, 440 U.S. 741, 753- 55 & n.18 (1979); *Am. Farm Lines v. Black Ball Freight Serv.*, 397 U.S. 532, 538-39 (1970).  The Special Counsel Regulations here do nothing more than benefit the agency and, accordingly, they provide Manafort no rights on which he can rely as a basis for invalidating agency action.

## 2.     Manafort Does Not Satisfy the Zone of Interests Requirement

The "zone of interests" test is not a limit on standing, but rather "a limitation on the cause of action for judicial review conferred by the Administrative Procedure Act," foreclosing suit when a plaintiff's interests are "marginally related to or inconsistent with the purposes implicit in the statute" invoked.  *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1388- 89 (2014).  Manafort's claim falls outside the zone of interests of the relevant statutes here.

Manafort's primary argument is that he satisfies this threshold APA requirement because he is within the zone of interests of the Special Counsel Regulations.  As the Government explained, however, binding precedent holds that being within the zone of interests of a regulation is insufficient to obtain APA review.  *See* MTD Mem. at 25; *Am. Fed'n of Gov't Emps., AFL-CIO v. Rumsfeld*, 321 F.3d 139, 143-45 (D.C. Cir. 2003); *Town of Stratford v. FAA*, 285 F.3d 84, 89 (D.C. Cir. 2002) (rejecting view that zone-of-interest test could be satisfied by relying on an

"agency regulation implementing a statute"); *Nat'l Fed'n of Fed. Emps. v. Cheney*, 883 F.2d 1038, 1043 (D.C. Cir. 1989) ("It is clear then that appellants must be within the zone of interest of the statutes authorizing OMB Circular A–76, not OMB Circular A–76, itself.").  Manafort purports to distinguish these cases merely be describing the factual context in which they arose.  *See* Pl.'s Opp. at 25 n.6.  But again, the factual contexts for those decisions are irrelevant to the legal principles they announce.  The fact that a plaintiff relied on a Circular promulgated by a different agency, for instance, has no bearing on the holding that "[t]he Circular is not a statute" and thus cannot expand the scope of the cause of action created by Congress.  *Cheney*, 883 F.2d at 1043.

Manafort relies on two district court decisions that describe "the zone of interests protected by the applicable statutes *and regulations*[.]"  Pl.'s Opp. at 23-24.  But neither case suggests that the zone-of-interest inquiry may rely on a regulation alone; both courts concluded that the plaintiffs there were encompassed by the *statutory* zone of interests.  Moreover, the fact that courts "entertain suits where the agency violates not a statute but the agency's own regulations," *id.* at 24, is irrelevant:  Even if a regulation is enforceable, the plaintiff still must come within the *statutory* zone of interests to bring the underlying claim.

Manafort also relies on cases allowing individuals to sue under the Appointments Clause.  *See* Pl.'s Opp. at 21-23.  To be sure, private citizens often fall within the "zone of interests" of constitutional provisions.  *See generally Bond v. United States*, 564 U.S. 211, 223 (2011).  But the ability to bring suit under a constitutional provision sheds no light on whether Manafort may bring a non-constitutional APA claim based solely on the interests protected by a regulation.  Manafort cannot satisfy the APA's *statutory* zone-of-interests requirement by relying on *constitutional*

provisions not at issue in this case.[6]

Manafort does not appear to contend that he falls within the zone of interests protected by the relevant statutory provisions themselves.  *See* 5 U.S.C. § 301; 28 U.S.C. §§ 509-510.  Instead, Manafort argues that the interests of the regulations are somehow incorporated into the statutes, because "[w]hen agencies promulgate regulations that have the force and effect of law, they construe and implement the *statute* Congress has entrusted to them for administration."  Pl.'s Opp. at 24.  But that principle ordinarily applies to regulations that "have the force and effect of law" in regulating primary conduct by citizens, *e.g.*, legislative rules.  The Special Counsel Regulations, however, do not govern the actions of private parties but instead relate to "matters of agency management or personnel."  *Office of Special Counsel*, 64 Fed. Reg. at 37,041.

At most, Manafort vaguely suggests that the DOJ statutes evince an interest in political accountability, from which his claims "are not so removed . . . as to be 'marginal.'"  Pl.'s Opp. at 25.  Yet Manafort does not dispute that the DOJ statutes are grants of authority to the Attorney General, not limitations on the Attorney General's authority.  *See* MTD Mem. at 25-26; Pl.'s Opp. at 25.  Any implicit interest in accountability reflected in these provisions therefore concerns accountability *to the Attorney General*, not an interest cognizable by persons outside the agency. Nothing in the statutes supports the assumption that "Congress authorized th[is] plaintiff"—a criminal defendant or other private citizen—to bring suit to enforce a purported "accountability" interest. *Lexmark*, 134 S. Ct. at 1389.

---

[6] Manafort also contends that the Government's zone-of-interests argument cannot be reconciled with the argument that the criminal action provides an adequate remedy.  *See* Pl.'s Opp. at 23.  But the zone-of-interests requirement is part of the APA statutory cause of action; it is a separate question what claims Manafort could raise pursuant to Criminal Rule 12.  In any event, the criminal action provides an adequate *forum* to raise his arguments regardless of whether those arguments would succeed.  *See* MTD Mem. at 17; *CREW*, 846 F.3d at 1246.

Finally, Manafort contends that he need not satisfy the zone-of-interests test if he identifies a "legal wrong" he has suffered.  Pl.'s Opp. at 25-27 (quoting 5 U.S.C. § 702).  That language in § 702 is designed to distinguish a claim asserting a statutory violation from a claim asserting the violation of a common-law or other pre-existing right.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990); *see also Pa. R.R. Co. v. Dillon*, 335 F.2d 292, 294-95 (D.C. Cir. 1964).  Here, the claim asserted in Count I—that the Appointment Order contravenes DOJ regulations promulgated under DOJ statutory authority—is clearly attempting to allege a statutory injury, not a common-law injury.  *See* Pl.'s Opp. at 24-25.

The only plausible common-law interest that Manafort identifies is a property interest, purportedly violated by the search of his home.  *See id.* at 26.  But this case is not about Manafort's property; in his own estimation, it is about his efforts to challenge the legality of future criminal prosecutions.  *See id.* at 16 ("The only remedy that would be adequate in this context is one that directly addresses whether the Special Counsel has legal jurisdiction and authority[.]").  And there is no common-law right in not being criminally prosecuted.  *See, e.g.*, *Cobbledick v. United States*, 309 U.S. 323, 325 (1940) ("Bearing the discomfiture and cost of a prosecution for crime even by an innocent person is one of the painful obligations of citizenship.").  Thus, Manafort cannot bring a freestanding APA claim to prohibit future prosecutions simply because a warrant was previously issued authorizing the search of his home.  *See also* Part I.A, *supra*.

### 3.    The Appointment Order Does Not Constitute Final Agency Action

Manafort wholly ignores the Government's arguments that the Special Counsel's appointment is merely an interim step in an investigation, and that the Appointment Order does not itself determine any legal consequences outside of DOJ.  *See* MTD Mem. at 26-28.  Instead, Manafort's only argument is that the Appointment Order was a final decision about who should investigate certain matters, and that it generates legal consequences by granting authority within

DOJ which may be used to initiate legal proceedings.  *See* Pl.'s Opp. at 30-31.

Manafort's arguments would require the conclusion that almost any DOJ employment or assignment decision is final agency action.  But assignment of a prosecutor to an investigation is only an interim step in that investigation, not the consummation of the agency's decisionmaking with respect to the investigation.  And such internal decisions do not involve the kind of "legal consequences" that constitute final agency action, in part because they have no impact outside the agency.  *See* MTD Mem. at 26-28.  Indeed, even an agency's actual decision to take investigative or litigation steps that, in turn, impose obligations on private parties being investigated or sued, are not themselves final agency actions.  *See FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 242-43 (1980) (administrative complaint); *Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n*, 324 F.3d 726, 731-32 (D.C. Cir. 2003) (assertion of regulatory jurisdiction); *City of Oakland v. Lynch*, 798 F.3d 1159, 1166-67 (9th Cir. 2015) (filing forfeiture action).  Manafort, consequently, cannot satisfy the APA's threshold requirements with respect to Count I.

III.   **Count II Should Be Dismissed Because *Ultra Vires* Review is Unavailable**

Manafort's attempt to invoke *ultra vires* review also fails.  The claim alleged in Count II of the Complaint is that the Special Counsel has improperly exceeded the Acting Attorney General's authorization.  Manafort offers scant defense of this claim, and instead tries to improperly expand his Count I challenge—*i.e.*, by arguing that it is not just an APA claim but also should be incorporated into Count II and analyzed under the doctrine of *ultra vires*, non-statutory review.  Both claims fail, and each is addressed in turn.

A.   **Manafort's Claim that the Special Counsel Has Exceeded the Scope of Authority Granted by the Appointment Order Fails**

Count II of the Complaint alleges that, even assuming the Appointment Order is lawful, the Special Counsel has exceeded the scope of authority granted by the Order.  *See* Compl. ¶¶ 61,

63.  Given the significant limitations on when *ultra vires* review is available, Manafort cannot obtain such review here.  *See* MTD Mem. at 29-34.[7]

First, an *ultra vires* claim is unavailable where an alternative forum exists for hearing the claim.  *See* MTD Mem. at 30 (citing, *e.g.*, *Bd. of Governors of Fed. Reserve Sys. v. MCorp Fin., Inc.*, 502 U.S. 32, 43 (1991)).  Manafort does not appear to address this argument at all, and *ultra vires* review is precluded on this basis alone.  *See supra* Parts I.B.3, II.A.

Second, an *ultra vires* claim must allege agency action in excess of a statutory or constitutional command, not merely a violation of internal delegations of authority.  *See* MTD Mem. at 30-31.  Notably, Manafort fails to cite a single case in which an *ultra vires* claim premised on an internal agency delegation was permitted, and he offers no response to the numerous cases focusing specifically on constitutional and statutory commands.  Manafort seeks to distinguish the Government's cited cases as involving situations where "*internal* agency officials are alleged to have exceeded their *individual* authority under agency rules—but the action being challenged was within the *agency's* authority nonetheless."  Pls.' Opp. at 34 (emphasis in original).  But that description reflects Count II exactly:  Manafort is alleging that the Special Counsel has exceeded his individual authority under the Appointment Order, even though DOJ clearly has the overall statutory authority to prosecute Manafort for the charged crimes.  *See* 28 U.S.C. §§ 516, 547.  And that response, in any event, is a distinction without a difference:  Any claim that an agency official has "exceeded . . . the *agency's* authority" under regulations (which Manafort contends is

---

[7] Manafort does not defend the Declaratory Judgment Act as providing an independent basis for jurisdiction.  *See* MTD Mem. at 28-29.  Manafort relies on *Armstrong v. Exceptional Child Ctr., Inc.*, 135 S. Ct. 1378 (2015), and other similar cases, *see* Pl.'s Opp. at 33-34, all of which confirm that judicial review is available only if the requirements for an *ultra vires* claim are met.  *See, e.g.*, *Armstrong*, 135 S. Ct. at 1384-85 (noting that "[c]ourts of equity" cannot "disregard" the "express and implied statutory limitations" on judicial review).

reviewable) can equally be described as the agency official exceeding his "authority under agency rules" (which Manafort concedes is not reviewable).  Pl.'s Opp. at 34.  Manafort also asserts that his claim is not "about 'internal' delegations *within* the DOJ," and instead "concern[s] the scope of authority exercised by an official *outside* the DOJ."  *Id.* (emphasis in original).  But the Special Counsel is in fact a DOJ employee.  *See* 28 U.S.C. § 515(b); 28 C.F.R. § 600.3(b); Appointment Order ¶ (a).  Thus, this *ultra vires* claim based on an internal delegation is foreclosed.

Third, an *ultra vires* claim must be founded on the violation of an individual right.  *See* MTD Mem. at 30-31.  Manafort responds again that he is not challenging the violation of any rights but is instead challenging a lack of authority.  *See* Pl.'s Opp. at 35 n.8.  But lack of authority is a necessary—but not sufficient—element of an *ultra vires* claim.  *See supra* note 5 (citing *Larson*, 337 U.S. at 693; *Kyne*, 358 U.S. at 190).  Manafort makes no effort to explain why he has individual rights under the Appointment Order that he alleges the Special Counsel is violating.

Fourth, Manafort does not point to the kind of "specific," "clear," and "mandatory" "prohibition" on which an *ultra vires* claim must be based, or allege the kind of "obvious" or "apparent" excess that can be adjudicated through *ultra vires* review.  *See* MTD Mem. at 32-34.  Manafort still does not address how the Appointment Order is a sufficiently clear and specific prohibition to support his claim.  Manafort asserts that his past crimes could not "conceivably be thought to 'arise out of' either Mr. Comey's or the Special Counsel's investigation."  Pl.'s Opp. at 36-37.  The only way to reach that conclusion, however, is to read an implicit limitation into the phrase "arising out of"—*i.e.*, that matters "arise out of" an investigation only if they are uncovered for the very first time during that investigation.  There is no basis for reading that implicit limitation into the Appointment Order here, and certainly an implicit limitation cannot form the basis for an *ultra vires* claim—particularly when it would require the Court to adjudicate the relationship

between different investigations dealing with non-public, counter-intelligence matters.  *See* MTD Mem. at 32-34.

## B.   Manafort Should Not Be Permitted to Raise a New *Ultra Vires* Theory that Likewise Is Not Cognizable

Manafort's Complaint makes clear that Count II is brought only against the Special Counsel, and that it seeks to challenge the Special Counsel's actions "as beyond his jurisdiction under the Appointment Order."  Compl. ¶ 61; *see also id.* ¶ 63.  In response to the Government's motion to dismiss, however, Manafort now seeks to expand Count II to also encompass the claim alleged in Count I—*i.e.*, that the Appointment Order itself conflicts with DOJ's Special Counsel Regulations.  *See* Pl.'s Opp. at 33-35.  As previously noted, it is "well settled law that a plaintiff cannot amend his or her complaint by the briefs in opposition to a motion to dismiss."  *Kingman Park Civic Ass'n*, 27 F. Supp. 3d at 160 n.7.  This Court need not consider a claim that Manafort did not even allege in his Complaint.

In any event, Manafort's newly found claim would fail for substantially the same reasons as his other *ultra vires* claim.  First, as discussed at length, an alternative forum exists for this claim.  Second, this claim is likewise seeking to enforce an internal agency delegation, not a statutory or constitutional command.  Third, Manafort's claim is based on DOJ regulations which he has conceded do not provide him any individual rights to enforce.

Fourth and finally, Manafort's Count I theory again does not point to the kind of "specific," "clear," and "mandatory" "prohibition" on which an *ultra vires* claim must be based, or allege the kind of "obvious" or "apparent" excess required.  Manafort's theory is founded on a lack of "political accountability," *see* Pl.'s Opp. at 35, but he wholly ignores the overall regulatory framework—including the reporting requirements set forth in 28 C.F.R. § 600.8(b)—which provide a "resulting opportunity for consultation" throughout the investigation.  *Office of Special*

*Counsel*, 64 Fed. Reg. at 37,040; *see also* 28 C.F.R. § 600.7(a) (special counsel is to comply with Department of Justice rules, regulations, procedures, and policies); USAM § 6-4.200 (Tax Division must approve all criminal tax charges); USAM § 9-90.710 ("No prosecution under [the Foreign Agents Registration Act] may be instituted without the express approval of the National Security Division or higher authority."). Moreover, Manafort's theory again depends upon an implicit limit—*i.e.*, that the procedures in 28 C.F.R. § 600.4 *impliedly* limit the authority that the Attorney General (or Acting Attorney General) can grant at the outset. As discussed above, implied limitations are inconsistent with the basic requirements of an *ultra vires* claim.

### C.     Judicial Notice of the Testimony Is Proper But Also Unnecessary

Finally, Manafort questions the extent to which the Court can take judicial notice of the Acting Attorney General's testimony. *See* Pl.'s Opp. at 37-38. Even Manafort agrees, however, that the Court may appropriately consider "[t]he fact of the testimony." *Id.* Thus, the *fact* that the Acting Attorney General testified that the Special Counsel is operating within his authority can properly be considered as part of the overall inquiry into the plausibility of Manafort's *ultra vires* claims. *See Williams v. Lew*, 819 F.3d 466, 473 (D.C. Cir. 2016); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *see also Hurd v. Dist. of Columbia*, 864 F.3d 671, 686-87 (D.C. Cir. 2017).

In any event, there are ample grounds on which Manafort's claims should be dismissed that do not depend in any way on the Acting Attorney General's testimony. To the extent the Court has any doubts about the propriety of considering the testimony, the Court should simply ignore it and dismiss the Complaint on one of the purely legal bases discussed above.

### CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint with prejudice.

Dated: March 2, 2018

Respectfully submitted,

JOHN R. TYLER
Assistant Director

*/s/ Daniel Schwei*
DANIEL SCHWEI (N.Y. Bar)
Senior Trial Counsel
ANJALI MOTGI (TX Bar No. 24092864)
Trial Attorney
United States Department of Justice
20 Massachusetts Avenue, NW
Washington, DC 20530
Tel: (202) 305-8693
Fax: (202) 616-8470
Daniel.S.Schwei@usdoj.gov