```
 1                 IN THE UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF COLUMBIA
 2

 3      Paul J. Manafort, Jr.,          ) Civil Action
                                        ) No. 18-CV-11
 4                        Plaintiff,    )
                                        ) MOTIONS HEARING
 5      vs.                             )
                                        ) Washington, DC
 6      U.S. Department of Justice,     ) April 4, 2018
        et al.,                         ) Time:  10:15 a.m.
 7                                      )
                          Defendants.   )
 8      _____

 9                    TRANSCRIPT OF MOTIONS HEARING
                              HELD BEFORE
10           THE HONORABLE JUDGE AMY BERMAN JACKSON
                    UNITED STATES DISTRICT JUDGE
11      _____

12                      A P P E A R A N C E S

13      For the Plaintiff:      Kevin M. Downing
                                LAW OFFICE OF KEVIN M. DOWNING
14                              601 New Jersey Avenue, NW
                                Suite 620
15                              Washington, DC 20001
                                (202) 754-1992
16                              Email: Kevindowning@kdowninglaw.com

17      For the Defendants:     Daniel Stephen Garrett Schwei
                                Anjali Motgi
18                              John Russell Tyler
                                U.S. DEPARTMENT OF JUSTICE
19                              Civil Division, Federal Programs Branch
                                20 Massachusetts Avenue, NW
20                              Washington, DC 20530
                                (202) 305-8693
21                              Email: Daniel.s.schwei@usdoj.gov
                                Email: Anjali.motgi@usdoj.gov
22                              Email: John.tyler@usdoj.gov

23      Court Reporter:         Janice E. Dickman, RMR, CRR
                                Official Court Reporter
24                              United States Courthouse, Room 6523
                                333 Constitution Avenue, NW
25                              Washington, DC  20001
                                202-354-3267
```

1          THE COURTROOM DEPUTY:  Your Honor, this morning we

2     have civil action No. 18-11, Paul J. Manafort, Jr., versus the

3     United States Department of Justice, et al.

4          Will counsel for the parties please approach the

5     lectern, identify yourself for the record and the party or

6     parties you represent, please.

7          MR. DOWNING:  Good morning, Your Honor.  Kevin

8     Downing and Thomas Zehnle for the plaintiff.

9          THE COURT:  All right.  Good morning.

10          MR. SCHWEI:  Good morning, Your Honor.  Daniel Schwei

11     from the Department of Justice on behalf of the United States.

12     Joining me at counsel table is John Tyler and Anjali Motgi,

13     also from the Department of Justice.

14          THE COURT:  All right.  Good morning.

15          Before I start asking questions and permitting you to

16     argue your positions, I want to just state what this hearing is

17     about and what it's not about.  We're here in a hearing in a

18     civil case filed by Mr. Manafort, who was indicted in two

19     separate cases by the Office of Special Counsel.  He has filed

20     a two-count complaint seeking declaratory and injunctive

21     relief.

22          Count One alleges that the order issued by the deputy

23     attorney general appointing the special counsel exceeds the

24     authority set forth in the Department of Justice Special

25     Counsel Regulations, in 28 C.F.R. § 600.4, and, therefore, it's

```
1    an ultra vires action on the part of the deputy attorney

2    general, in violation of the Administrative Procedure Act.  The

3    appointment order was excerpted and paraphrased throughout the

4    pleadings, so I thought it was useful to start with what it

5    actually says.  And the appointment order says the following:

6              The Special Counsel is authorized to conduct the

7    investigation confirmed by then FBI Director James Comey and

8    testimony before the House Permanent Select Committee on

9    Intelligence on March 20th, 2017.  In other words, it's a

10   referral of a preexisting, ongoing investigation.  The order

11   then says:  Including, one, any links and/or coordination

12   between the Russian government and individuals associated with

13   the campaign of President Donald Trump.  And, any matters that

14   arose or may directly arise from the investigation.  And,

15   three, any other matters within the scope of 28 C.F.R. §

16   600.4(a).  And that's the Department of Justice Special Counsel

17   Regulation, which states that the jurisdiction of a special

18   counsel shall also include the authority to investigate and

19   prosecute federal crimes committed in the course of and with

20   the intent to interfere with the special counsel's

21   investigations, such as perjury or obstruction of justice.

22             In particular, plaintiff has objected to the language

23   in the order that provided, from the outset, that the special

24   counsel may investigate, quote, any matters that arose or may

25   arise directly from the investigation.
```

1         I note that the plaintiff does not base his challenge

2    on a claim that the appointment order exceeds the attorney

3    general's authority under the statute that authorizes him to

4    appoint a special counsel, 28 U.S. Code § 515, just the

5    regulation.  So that's Count One.

6         Count Two alleges that even if the deputy attorney

7    general was permitted to grant the special counsel this

8    authority, the special counsel exceeded the scope of the

9    authority he was granted when he indicted Mr. Manafort because

10    the allegations do not arise out of the investigation into the

11    election and the allegations of Russian interference in the

12    election.

13         There's a prayer for relief at the end of the

14    complaint.  Plaintiff asks for an order declaring the

15    appointment order to be invalid and setting it aside, and asked

16    the Court to issue a number of declarations about the scope of

17    the special counsel's authority.  The prayer for relief also

18    asks for an order setting aside, quote, Any action taken

19    against Mr. Manafort, close quote.  And in paragraph 63 of the

20    complaint, it states that the indictment, quote, should be set

21    aside.

22         Now, Mr. Manafort says he didn't actually ask for the

23    indictment to be dismissed in his pleading, but in case I

24    thought he did, he's not, and that that request has been

25    waived.  So, I am looking forward to finding out what that

1    means.

2            In the meantime, the Department of Justice has moved

3    to dismiss the complaint.  It says, first of all, that the

4    plaintiff in this case cannot bring a federal civil action to

5    interfere with an ongoing criminal prosecution.  With respect

6    to Count One, the Department of Justice says that the

7    Administrative Procedure Act only creates a cause of action for

8    claimants would do not have an adequate remedy at law; and he

9    has one.

10           They also say that the APA claim is flawed because

11   the special counsel regulations don't create legal rights that

12   can be enforced in a civil lawsuit, and that there's been no

13   final agency action that's challengeable under the APA.  And,

14   they further argue that Count Two fails for lack of

15   jurisdiction because it cites no legal basis for judicial

16   review.

17           I also want to note that Mr. Manafort has filed a

18   motion in his criminal case seeking to dismiss the indictment

19   on the same two grounds.  First, that the appointment of the

20   special counsel was an ultra vires act by the deputy attorney

21   general that was contrary to the terms of the DOJ special

22   counsel regulations, and because the indictment exceeds the

23   scope of the authority granted to special counsel in the

24   appointment order.

25           While there is, obviously, some overlap between these

1    motions, I want to emphasize that this is not the hearing on

2    that motion.  There's been a date schedule for that hearing and

3    we're not having it today.  The issues today largely revolve

4    around whether the -- the question of whether it's appropriate

5    to attack a criminal indictment through the use of civil

6    process, whether the APA is available when a criminal defendant

7    can invoke, and here has invoked, a remedy available to him

8    under the Federal Rules of Criminal Procedure.  But, there's no

9    question that we may need to touch on some issues that have

10   come up in the criminal case while we're here today.

11          So, I would like to start with counsel for Mr.

12   Manafort.  And I'm sure you all have a lot to say, but as any

13   lawyer who's argued a motion in this courtroom can tell you, or

14   warn you, depending on how you look at it, I have a lot of

15   questions.  So I'm going to start there.

16          MR. DOWNING:  Sure.

17          THE COURT:  And then when I'm done, if there's

18   something that you didn't get to tell me that you think I

19   should hear, I will absolutely give you the opportunity to do

20   that.  It's seldom am I taken up on that offer, but I'll make

21   it to you, as I do to everyone else when we're done.

22          So, I want to start with the *Younger* doctrine and how

23   that affects this lawsuit.  I think there is no question that,

24   as you argued, that the *Younger* case, which said federal courts

25   should not interfere in state prosecutions, turned, in part, on

1    questions of federalism.  And the D.C. Circuit emphasized that

2    in the case you cited, the *Juluke* case.  But why am I not bound

3    by the D.C. Circuit's rejection of a civil challenge to a

4    federal independent counsel's authority in the *Deaver* case,

5    which came after *Juluke*?  Why isn't *Deaver* the beginning and

6    end of your civil case?

7         MR. DOWNING:  Sure.  First of all, I'm glad you said

8    the name of the case first, because we didn't know if it was

9    *Juluke* or *Juluke*.

10        THE COURT:  I don't know either, but I'm going with

11   *Juluke*.

12        MR. DOWNING:  So I wasn't quite sure about that.

13        Your Honor, I think *Deaver* was -- is an interesting

14   case because it does seem close to what we're seeking here,

15   except -- and I did clarify for the Court the other day, and we

16   have agreed that we are not moving for a dismissal of any of

17   the criminal indictments.  So we took that off the table.  We

18   are not seeking that relief and I want that to be clear with

19   the Court, and I think in the papers we were clear.  So the

20   next question is, well, what are we seeking?

21        THE COURT:  I was going to ask you that.

22        MR. DOWNING:  Right.  And this is why we think we're

23   a lot closer to *Juluke,* and *Juluke* is still good law here in

24   the Circuit, which is we're looking at the prospective conduct

25   of the Office of Special Counsel.  And in particular, if in

1    fact we were --

2          THE COURT:  That's what happened in *Deaver*.  He

3    actually hadn't been indicted yet.  He was told he was going to

4    be indicted.  And he came in and he brought a civil action to

5    invalidate the independent counsel's appointment.  So why isn't

6    that absolutely on all fours with what you just said?

7          MR. DOWNING:  We, right now, don't -- we're not

8    moving to stop the special counsel from continuing a criminal

9    prosecution.  *Deaver* did it on the eve of an indictment.  And

10   quite frankly, what's interesting in *Deaver*, the Court noted

11   that the Court did not believe that *Deaver* could make the case

12   out on the merits; that was important to that Court.  It also

13   said a few other things, but it said on the merits.

14         The other thing about *Deaver*, *Deaver* addressed

15   whether or not defending against a single criminal indictment

16   would meet the level of harm to allow for injunctive relief.

17   The concurring opinion made very clear this was about the

18   defense of a single criminal indictment.  What we're looking at

19   here and the relief we're seeking is from multiple

20   indictments --

21         THE COURT:  Well, you just said that's not the relief

22   you're seeking.

23         MR. DOWNING:  No, no, for the future.

24         THE COURT:  How do you know there's going to be more

25   in the future?

1        MR. DOWNING:  How did they know in *Juluke* that the

2   D.C. was going to continue to arrest them for engaging in the

3   same protest?  I mean, it's likely that if the government --

4   and the government has said they have a continuing

5   investigation.  Under that scenario they are free to go and

6   bring any other charges they believe they're authorized to

7   believe (sic), even though our claim is they don't have the

8   authority.  And we would have to follow them and go to every

9   single jurisdiction, or come back to every single jurisdiction

10  and allow this to go on and only be able to stop it at each and

11  every instance, not to be able to do it ahead of time.

12       THE COURT:  Let's go back to what you're seeking, if

13  you're not seeking the invalidation of an indictment.  I would

14  like to know, in your prayer for relief you say the Court

15  should grant the following relief:  An order and judgment

16  setting aside the appointment order and declaring it invalid,

17  arbitrary and capricious and abuse of discretion, otherwise not

18  in accordance with law.  So you're asking me to set aside the

19  appointment order as a whole.

20       MR. DOWNING:  Yes.

21       THE COURT:  But the only part of it that you say is

22  illegal is (b)(ii).  So how do I get to set aside its entire --

23       MR. DOWNING:  I'm sorry.  Let me back up.  In the

24  context of all our complaint, we're saying that (b)(ii) is what

25  is violative of the special counsel regulations.  We do not

1    attack the specific jurisdiction that was given with respect to

2    coord -- potential coordination between the campaign and the

3    government.  We do not attack that.  We attack (b)(ii), that's

4    what we're attacking.  So that's what we would seek for this

5    Court to set aside.

6            THE COURT:  So you're not asking me to set aside the

7    appointment order, you're asking me to say that that paragraph

8    has to go out of the appointment order?

9            MR. DOWNING:  Correct, Your Honor.

10           THE COURT:  And you're no longer asking me to declare

11   ultra vires and set aside all actions against Mr. Manafort

12   pursuant to the appointment order?

13           MR. DOWNING:  We are not, Your Honor.

14           THE COURT:  So that means you're withdrawing Count

15   Two?

16           MR. DOWNING:  We are, Your Honor.

17           THE COURT:  All right.  Now, then you're asking for

18   an order and judgment declaring that Mr. Mueller lacks

19   authority to investigate business dealings not arising from the

20   original jurisdiction set out in the appointment order?

21           MR. DOWNING:  Yes, Your Honor.

22           THE COURT:  All right.  Well, how is that a ripe

23   claim at this point?

24           MR. DOWNING:  Well, the appointment order is a final

25   order.  It's an order that granted the jurisdiction, whatever

1    that jurisdiction may be, to the special counsel; it's final.

2    So our attack on that order is with respect to the issuance of

3    the order on May 17th that authorized a special counsel to be

4    appointed and to conduct certain investigations.

5            THE COURT:  But if you're no longer saying that

6    you're suffering actual, concrete harm, which would give you

7    standing to challenge this, you're not asking me to do anything

8    about anything that's happening to you, how do you have

9    standing under the APA?  Why is this ripe under the APA?  Why

10   does my order address anything?

11           MR. DOWNING:  What we've -- what we are not doing is,

12   we are not doing now, we are not seeking relief that we are

13   going to seek in each of those criminal cases.  We've taken

14   that off the table.

15           THE COURT:  Right.  So I'm trying to figure out --

16           MR. DOWNING:  But the harm continues.  There's no

17   doubt that Mr. Manafort continues to be harmed by an ongoing

18   investigation by the special counsel.  But the fact that --

19           THE COURT:  How do you know it's under (b)(ii), as

20   opposed to (b)(i)?  They're not looking at links.

21           MR. DOWNING:  All we've seen so far is -- other than

22   links, we haven't seen anything else.  There's been no

23   evidence, there's been no discovery of anything else.  That's

24   all we've seen.  So it is ripe.  It is a harm, it's an ongoing

25   harm.  And under the APA it says if there's no other adequate

1    remedy -- and chasing indictment after indictment is not an

2    adequate remedy, we do not believe it is.  We believe we have a

3    ripe case for an APA determination of whether or not the

4    appointment order exceeded the scope of the authority of

5    the attorney general --

6              THE COURT:  Well, doesn't *Deaver* specifically say

7    that being prosecuted isn't irreparable harm because you get to

8    appeal and it has to be -- and so it's not the subject of an

9    injunction?

10             MR. DOWNING:  *Deaver* seems to say that, but I will

11   point out that *Deaver* --

12             THE COURT:  *Deaver* says that.

13             MR. DOWNING:  No, *Deaver* says "a," a criminal case.

14   And it says it in one or more parts, and the concurring opinion

15   points out that they are only talking about bringing a criminal

16   case.  And we believe multiple counts, superseding counts,

17   multiple cases, whatever can come in the -- up in the future is

18   very different than what *Deaver* was facing.

19             THE COURT:  But you do agree that after *Deaver*, it's

20   no longer binding precedent in this Circuit that *Younger* only

21   applies to state court prosecutions?

22             MR. DOWNING:  I would agree that Deaver said that.  I

23   would also agree that *Deaver* seemed to be decided a lot more on

24   the merits of the claim for the injunction, because the Court

25   spent a lot of time saying that *Deaver* did not have a

1    meritorious claim, did not feel they had a real constitutional

2    challenge to the Act.  *Deaver* was not an APA case.  *Deaver* was

3    trying to bring a motion to -- for injunctive relief based on a

4    constitutional violation.  The Court said we don't see it, we

5    don't think you can make it.

6            THE COURT:  Well, I don't think they were talking

7    about the issue of constitutional avoidance.  If we don't have

8    to deal with the constitutional claim, we won't.  And they said

9    he'll have plenty of time to do that in his appeal.  So, it's

10   not irreparable in the meantime and it's not appropriate for an

11   injunction.

12           Well, I'm not exactly sure why you think the *Juluke*

13   case is so helpful to you.  In that case several of the

14   plaintiffs had already been convicted and they appealed.  The

15   question was whether the Court should have entertained a

16   parallel civil action brought by other individuals, not the

17   people who had been charged on *Younger* grounds.  And this was a

18   challenge to a regulation under which people could be

19   prosecuted in the future, not a challenge to the prosecution.

20           And the Court specifically differentiated a case

21   where you're challenging an ongoing prosecution and a case

22   where the movants are not being prosecuted.  And it seems to me

23   you're trying to have it both ways.  You're saying to me, Well,

24   I'm not actually moving to dismiss the indictment, but my

25   problem is that he is being prosecuted.  Seems to me you're

1    saying exactly the thing that *Juluke* differentiated itself

2    about.

3          MR. DOWNING:  No, actually, I'm saying the same thing

4    as *Juluke* because they can bring new charges, they can bring

5    further indictments, they can continue to investigate.  That's

6    very different than us dealing with the two indictments that

7    are at hand, which we've agreed we will do those separately in

8    each of the criminal cases.  But we were talking about what the

9    special counsel can do in the future.  It's exactly like

10   *Juluke*.

11         And I would like to point out that while the

12   beginning of the opinion talks about the two --

13         THE COURT:  Well, no, in *Juluke* there was a

14   regulation in question about people's conduct and whether those

15   people's conduct would violate the law or not.  It wasn't about

16   the scope of what a prosecutor could prosecute.

17         MR. DOWNING:  No, but the second half of *Juluke* was

18   about what the government could do.  Can the government

19   continue to enforce what was said to be, at the time, an

20   unlawful regulation?  We're talking about the unlawful

21   implementation of a regulation.

22         But I would like to make one other point.  *Juluke*

23   went on to say that they don't know -- the Court didn't know if

24   the analysis would be any different for the two defendants that

25   were criminally prosecuted.

1          THE COURT:  Okay.

2          MR. DOWNING:  So it wasn't just for the two that

3   weren't prosecuted.  The first -- those are the two that

4   brought the case.  But the Court said for the two that were

5   charged, we don't know if the analysis is any different.

6          THE COURT:  Well, explain to me why you have an APA

7   claim now about charges that haven't been brought?

8          MR. DOWNING:  The appointment order is the action by

9   the government that we're challenging.

10          THE COURT:  And how are you affected by it?  How do

11   you have standing to challenge it if you're saying the one

12   basis that gives me standing to challenge it is no longer an

13   issue in this case?  You're saying I might be affected by this

14   in the future.  Where's the case or controversy for Article III

15   purposes?

16          MR. DOWNING:  Well, it's not hypothetical.  There's

17   an ongoing investigation, so we're harmed by an ongoing

18   investigation, right now.

19          THE COURT:  How do you know that there are other

20   charges involving him that aren't lawfully being pursued?  How

21   can that even be -- why isn't that not ripe?

22          MR. DOWNING:  The ripeness comes from what has

23   happened to the client.  The remedy is a different issue.  The

24   ripeness -- he has been charged for conduct that is outside of

25   the scope of this special counsel regs.  That's our contention.

1    He has been harmed.  The remedy we're seeking in this action is

2    a different issue.  But he has harm, real harm, and he has it

3    right now.

4            The remedy -- the situation of where do we have to

5    bring an action to have a remedy is different than us having an

6    APA claim, where a Court can say, You know what, Mr. Manafort,

7    you're right, this is an unlawful order.

8            THE COURT:  But you're asking me to issue,

9    essentially, an advisory opinion to tell him what he can and

10   can't do in the future.

11           MR. DOWNING:  Well, we are seeking that, but the

12   first thing we're seeking is for you to set aside the order,

13   which is clearly within the purview of a judge in an APA case.

14           THE COURT:  But how do I know now that whatever it is

15   that I'm supposed to stop him from doing is in violation of the

16   order, when you've already said that at least half of the order

17   is lawful?

18           MR. DOWNING:  Well, I wouldn't qualify it as half,

19   but it's part of the order.

20           THE COURT:  All right.  Section (b)(i) --

21           MR. DOWNING:  Right.  The scope, as interpreted by

22   the government as to what (b)(ii) is, is giant.  It's huge.  I

23   mean, they basically said if we're investigating, it arises out

24   of the investigation, which is a self-fulfilling prophecy,

25   which is exactly what these regs were put in place to stop.

1          So there is real harm right now, and there is a real

2     issue on the table.  The Court has a record of what the special

3     counsel has done, how it's interpreted the scope of that

4     appointment order.  And so it is ripe and there is a real harm

5     out there right now.

6          THE COURT:  Well, if -- then let's get to Count One.

7     Why don't you have an adequate remedy at law, since you have

8     made that exact complaint in the forum that you're legally

9     allowed to bring it?

10          MR. DOWNING:  And I go back to *Juluke* because the

11     fact is, we would just have to keep chasing this, if in fact we

12     can prove that this is unauthorized, that it's beyond the scope

13     of the jurisdiction, then what the Court is saying, that we

14     have to just sit and wait for every time for the Court -- for

15     the Office of Special Counsel to exceed its jurisdiction and

16     then go into the next court and the next court, whereas if you

17     rule --

18          THE COURT:  Well, nobody gets to bring a lawsuit if

19     they haven't had the harm happen yet.

20          MR. DOWNING:  We have the harm.  What we're asking

21     for, a ruling on the order --

22          THE COURT:  Well, then the harm is a harm for which

23     you have an adequate remedy at law.

24          MR. DOWNING:  We don't --

25          THE COURT:  If I find or Judge Ellis finds that you

1    are correct, why wouldn't that be the remedy?  Why wouldn't

2    that solve your problem?  If you have a legal interpretation of

3    the scope of the order, that would be binding in the future,

4    wouldn't it?

5              MR. DOWNING:  I don't know what the binding nature of

6    that would be with respect to an indictment on different facts

7    in a different jurisdiction.  I don't know the answer to that.

8    But I do know if I get an order here, and you say that the

9    jurisdiction as exercised to date is beyond the scope of the

10   appointment order and in violation of the regs, now we have

11   something in hand to go and stop the special counsel when they

12   issue a grand jury subpoena in an ongoing investigation; we can

13   move to quash.  We'll have an order that says the scope has

14   been exceeded, and that is the difference.  And I think that's

15   what they needed in *Juluke*.

16             THE COURT:  Why wouldn't you have that?  Why

17   wouldn't -- if I issue an order saying that he's exceeded the

18   scope of his authority in your criminal case, why isn't that as

19   good?

20             MR. DOWNING:  I think it only applies to that

21   criminal case.  I think in an APA case it applies to that

22   appointment order, no matter where it goes.

23             THE COURT:  Well, didn't --

24             MR. DOWNING:  That's our concern, Your Honor.

25             THE COURT:  Didn't the District Court in the *North*

1     case reject your argument that it's not ripe unless and until

2     something happens?

3               MR. DOWNING:  Not my argument, no, because we've had

4     the harm; it's happened, and it's happened on multiple

5     occasions and it continues to happen.  Just the ongoing grand

6     jury investigation is a harm.  And under the APA we don't have

7     to show irreparable harm.  We have to show final action.  And

8     something that this Court can take a look at as a final action

9     as an abuse of discretion.

10              We have the regs that are put together, they're very

11    succinct, they're very clear that they're implementing --

12              THE COURT:  Well, let's talk about the regs.  The

13    regs are issued pursuant to a statute, 28 U.S. Code § 515.  It

14    says the attorney general or any other officer of the

15    Department of Justice or any attorney specially appointed by

16    the attorney general under law may conduct any kind of legal

17    proceeding, civil or criminal, including grand jury

18    proceedings.

19              So, you agree that under the terms of the statute,

20    when the appointment order was issued, the deputy attorney

21    general was acting as the attorney general after the attorney

22    general had reused himself?

23              MR. DOWNING:  We agree.

24              THE COURT:  And so is there any other statute, other

25    than 28 U.S. Code § 515, that governs the scope of a special

1    counsel's authority?

2             MR. DOWNING:  No.  But the second half of the statute

3    is what the regs implement, which is that that conduct is to be

4    specifically directed by the attorney general.

5             THE COURT:  All right.

6             MR. DOWNING:  And that's what gives rise to the

7    special counsel regulations.

8             THE COURT:  Are you claiming that the statute was

9    violated in this case?

10            MR. DOWNING:  Yes.

11            THE COURT:  Where is that in your complaint?

12            MR. DOWNING:  Well, we cite in the complaint the

13   implementing regulations as being the basis for the review of

14   this Court.  But the --

15            THE COURT:  You said the regulations have been

16   violated in your motion, in your complaint, and you -- there's

17   not one sentence where you said the statute was violated.

18            MR. DOWNING:  That's correct.  But the regulations

19   implement the statute.  I don't know how it would be not clear

20   to the Court that the very underpinnings of the authority of

21   the regulations is from 515; that's what the reg. derives its

22   authority from, it's from that statute.

23            THE COURT:  That's still different from saying did

24   they violate the regulation or did they violate the statute?

25   You've not alleged in your complaint that they violated the

1    statute.  Are you telling me now that it's your position they

2    violated the statute?

3              MR. DOWNING:  It is, Your Honor.

4              THE COURT:  Okay.  Now, what language in the statute

5    was violated?

6              MR. DOWNING:  The language I just read to you, that

7    the attorney must specifically -- the special attorney must be

8    specifically directed by the attorney general.  And that's what

9    gave rise to the special counsel regs.

10             But what we do with respect to an APA claim is for

11   this Court to assess whether or not a government official

12   abused its discretion.  There has to be some basis to do that,

13   there has to be some manageable rules or factors or policies or

14   procedures that were there.  That's why, in our APA claim, we

15   cite the regs.  The regs are the standard by which the conduct

16   of the acting attorney general is judged in an APA case.

17             THE COURT:  What's the basis for your claim that

18   there's any private right of action under those regs?  How can

19   you, on the one hand, tell me that I should apply the plain

20   language of the regs, when the regs themselves expressly state

21   that, quote, they're not intended to, do not and may not, be

22   relied upon to create any rights enforceable at law or equity

23   in any manner, civil, criminal, or administrative.  That's

24   § 600.10 of the regulation that you're asking me to apply in

25   this case.

1          MR. DOWNING:  Correct.

2          THE COURT:  So what am I supposed to do about that?

3     Ignore it?

4          MR. DOWNING:  Yes, of course.

5          THE COURT:  Why does that work?

6          MR. DOWNING:  The question is -- the question is, is

7     this reviewable by the Court?  Our cause of action doesn't

8     arise because of the regs.  The regs don't give us --

9          THE COURT:  You just said your cause of action

10    arises --

11         MR. DOWNING:  The regs are the basis for the review

12    of the conduct.  The APA gives us the cause of action, Your

13    Honor.  And they can write anything they want in the bottom of

14    a reg.  We didn't bring a cause of action under the reg.  We

15    brought an APA claim saying that the acting attorney general

16    violated the regulations.  That's the --

17         THE COURT:  And, therefore, it was not in accordance

18    with law under the APA.  The APA has to be an action that's not

19    in accordance with the law.  And the law that you say it's not

20    in accordance with is the reg.  And the reg. says this doesn't

21    have the force of law, this is for our internal management

22    within our department.  So how do you get past that to create a

23    cause of action under the APA?

24         You can't sue under every single regulation under the

25    APA; some you can and some you can't.

1          MR. DOWNING:  Your Honor, there is a presumption that

2     government officials are held accountable under the APA.  The

3     carve-out is very small.  Very small.  And it has to be,

4     generally, explicitly carved out by Congress, or be of such a

5     nature that the Court really is not in a position to hear a

6     case and make judgments about the government official.  This is

7     certainly not that situation.

8          But, what I'm --

9          THE COURT:  The kind of regs that you're talking

10    about that have the force and effect of law often arise in

11    statutes where the agency is accorded authority to promulgate

12    regulations to implement the statute.  Congress didn't ask the

13    Department of Justice to implement regulations to implement the

14    statute.  The statute gives attorneys very broad authority.

15    And the Department of Justice, in organizing itself, came up

16    with rules that it was going to follow.  And we'll get to the

17    question of whether it even violated them or not.

18         But, why do you get to sue under them?  What is your

19    best case for the proposition that when the regs specifically

20    say that's not what this regulation is intended to do, that you

21    can then bring a lawsuit under it?

22         MR. DOWNING:  What the agency says does not govern

23    APA review.  What Congress says governs APA review.  Every

24    agency in the land would like to say that these rules don't

25    create any rights, can't be the basis for anything.

1          THE COURT:  Then why didn't you bring the lawsuit

2     saying that the statute was violated?  You brought a lawsuit

3     saying the regulation was violated.

4          MR. DOWNING:  Because the regs are the standard of

5     conduct, that's what's been created.  Whether it was a policy,

6     whether an agency issues factors -- and, Your Honor, we would

7     be happy to brief more on this issue.  But even if it was just

8     factors, if a government agency had no regs, but issued to the

9     public saying we consider the following factors when we make

10    decisions, but they don't create any private rights or anything

11    else, they're still the standard by which the government

12    decisions can be judged in a court of law.  That's the

13    question.  Has Congress carved it out or is it something that

14    just can't be heard by a court of law because it's such a

15    special area of executive branch authority?  For instance,

16    foreign policy.

17         THE COURT:  For instance, there are cases that talk

18    about law enforcement.  The *Heckler* case, why doesn't this fall

19    squarely within how the agency exercises its discretion to

20    enforce the law?

21         MR. DOWNING:  Those cases deal with the discretion

22    not to act of the government, but it doesn't create any

23    enforceable rights on the decision not to act.

24         THE COURT:  How does the identification of a

25    prosecutor who's going to go ahead and prosecute something a

1    final agency action until he does something?

2         MR. DOWNING:  That's a different agency.  This is the

3    Office of Special Counsel.  We're talking about the Office of

4    the Attorney General making a decision about authorizing

5    someone who otherwise has no powers as a federal prosecutor to

6    have the powers and authority of a U.S. attorney.  That is

7    certainly final action with respect to the Office of Special

8    Counsel being able to conduct their investigation, and it's

9    final action with respect to the decision of the acting

10   attorney general, we believe.

11        THE COURT:  Assuming you can sue for a violation of

12   these regulations, what is the basis for your claim that the

13   regulations on their face limit the attorney general's

14   appointment authority?  You say in your complaint that the

15   appointment order authorizes the special counsel from the start

16   to investigate matters that arise out of his investigation.

17   And where in the regulation is that specifically prohibited?

18   Says, in paragraph (a), Original jurisdiction.  The

19   jurisdiction of a special counsel shall be established by the

20   attorney general, period.

21        And then in paragraph (b) it says, Additional

22   jurisdiction.  If, in the course of his or her investigation,

23   the special counsel concludes that additional jurisdiction

24   beyond that specified in the original is necessary, then you

25   have to go and you have to say can I cover that, too, and you

1    get permission.  But, if you got the permission in your

2    original jurisdiction, why is that prohibited by the reg?

3              MR. DOWNING:  So now we're getting to the merits of

4    the case?  Or are we still talking about whether or not we've

5    made out a cause of action?  We've made out a cause of action

6    because we say that the specific jurisdiction -- which, by the

7    way, the reg. says has to be a specific factual description of

8    the matter, that's in point one in the appointment order.

9              Point two does not exist in the regs.  You can't say

10   in anything arising out of it.  Point two is what we say

11   violates the regs because the regs then say for additional

12   jurisdiction the special counsel has to come back to the

13   attorney general, the attorney general has to have some type of

14   consideration to determine whether or not the special counsel

15   is granted additional jurisdiction.  And that, Your Honor --

16             THE COURT:  That's how you're interpreting this reg.

17             MR. DOWNING:  Yes.

18             THE COURT:  But is there any explicit prohibition in

19   the text of this regulation, or in the statute, that bars the

20   attorney general from choosing to do a broad grant from the

21   get-go?

22             MR. DOWNING:  Well, I would say yes.  I would say the

23   text, the history, and the adoption of the regs are the reason

24   why the attorney general can't do that.  I mean, these regs --

25             THE COURT:  Once we're looking at the history, then

1    aren't you saying that it's not the text, it's sort of

2    ambiguous and you want me to rely on the history when I think

3    about what it means?

4            MR. DOWNING:  Well, I think if you're going to ignore

5    the history, which is the abuses of the independent counsel,

6    that's what gave rise to the special counsel regulations,

7    that's what gave rise to the attorney general having to comply

8    with certain requirements to keep close-knit on the special

9    counsel, to not have an independent counsel again.  So --

10           THE COURT:  Let's say I agree with you about the

11   intent behind the regulations, my question is:  Is there

12   anything explicit in the statute of this regulation that bars

13   the attorney general from saying at the start that I'm

14   broadening it out, that's part of your original jurisdiction?

15   If it arises under your investigation, go for it, I'm telling

16   you that now.  What prohibits --

17           MR. DOWNING:  Cannot do that.  That's the second part

18   of the reg.  Its additional jurisdiction has to be specifically

19   granted by the acting attorney general, that's part two.

20   That's to keep clamps on the Office of Special Counsel from

21   doing anything and everything they want.  That's it, right

22   there.

23           THE COURT:  All right.  Now, my question is, though,

24   so you're saying it's explicit, I can get this from the plain

25   text of the regulation and I don't have to look at the history

1    and all these things that you want me to look at?

2             MR. DOWNING:  I think the history is important to put

3    this in context as to what the reason for the regs are.

4             THE COURT:  Well, I guess my question is once I go

5    beyond the text, aren't we in a world where I have to defer to

6    the agency's interpretation of its own regulations?

7             MR. DOWNING:  Well, you're always going to pay some

8    discretion to the agencies, but this has not been committed to

9    the agency.  That's when we go back to did Congress say there's

10   no judicial review here?  That's not the case; there is

11   judicial review, but it is in the context of that regulation, I

12   agree.  Those are the rules, those are the factors, the

13   policies that the agency implemented out of the statute and

14   that's the standard by which you can judge their conduct.

15            THE COURT:  Well, if the Congress didn't say, Agency,

16   I want you to come up with regulations cabining your authority

17   and Congress just said "anything," you can prosecute anything,

18   if there's no violation of the statute here, then why do the

19   regulations matter?

20            MR. DOWNING:  The regulations matter in the context

21   of the special counsel.  That's what the regulations -- there's

22   special counsel regulations.  It's the Department of Justice

23   saying these are the rules by which the department will be

24   bound in exercising authority under the statute.  That's --

25   they're implementing regulations.  They're used in APA cases

1    all the time.  The question is, what is the standard for you to

2    apply with respect to that appointment order?  It's the very

3    regs that the agency adopted.

4            We're not asking you to go far afield of that, to

5    input your own discretion in there.  It's the question of

6    whether or not under those factors in the regs that were set

7    out, the requirements, did the acting attorney general violate

8    the regs when he issued this appointment order.  And it is a

9    relatively straightforward, simple question.  And it doesn't

10   require you to get into foreign policy or get into complicated

11   maritime law.  And that's why we think this case can be heard.

12           THE COURT:  All right.  Well, let's talk about the

13   merits for a minute, because I want to understand the theory

14   behind the lawsuit.  Paragraph (b)(i) of the appointment order

15   authorizes the special counsel to conduct a preexisting

16   investigation; basically, to take it over.  The investigation

17   confirmed by then FBI Director James Comey in testimony before

18   the House Permanent Select Committee including the following:

19   Now, is it fair to say that the word "including" means

20   including but not limited to?  I mean, when he says take over

21   this investigation, the one that then Director Comey told the

22   counsel -- told the senate about, which includes.  Was that

23   meant to be an outer boundary or was that meant to be,

24   essentially, an example?

25           MR. DOWNING:  It has to be a specific description of

1    the matter to be investigated.  If it is not, it is in

2    violation of the regs.

3            THE COURT:  All right.  So it says -- one of the

4    things that it says it includes is any links and/or

5    coordination, but coordination is not necessary.  Any links

6    between the Russian government and individuals associated with

7    the campaign of President Donald Trump.

8            Now, you don't dispute that Paul Manafort was an

9    individual associated with the campaign?

10           MR. DOWNING:  No.

11           THE COURT:  And, obviously, Manafort, his company had

12   an office in Russia?

13           MR. DOWNING:  I dispute that.  He did not.

14           THE COURT:  Never had an office in Russia?

15           MR. DOWNING:  Never.  Never had an office in Russia,

16   Your Honor.

17           Now, Your Honor, look, in all seriousness, I mean, if

18   we're going to get into the merits of the case and the facts,

19   we're at a basis here where the review is you accept our

20   allegations as true in the complaint.  We are not attacking the

21   specific description here; we have not.  We are not contesting

22   (1); we're contesting (2)(i).  That's our claim here.  We are

23   not, in this action, contesting (1)(i).  We're not.

24           THE COURT:  All right.  My question is:  If an

25   investigation of any links between an individual associated

1    with the campaign in Russia was authorized in paragraph (b)(i),

2    couldn't it fairly cover an investigation of Mr. Manafort?

3          MR. DOWNING:  For any links while he's with the

4    campaign with Russian government, yes, but not more than that.

5          THE COURT:  Well, does it say when he was with the

6    campaign?  It just says any links between the Russian

7    government and individuals associated with the campaign.  You

8    alleged in your complaint that the indictment, the charges are

9    not matters that arose from the investigation because they

10   don't have anything to do with the election and collusion with

11   the government.  But do they have to?

12         MR. DOWNING:  Yes.

13         THE COURT:  Where does it say that?

14         MR. DOWNING:  They do.

15         THE COURT:  Where does that appear in the order?

16         MR. DOWNING:  Because the nature of the investigation

17   had to do with the campaign having -- well, let me back up for

18   a minute.  The question is contacts with campaign associates of

19   the campaign with the Russian government during the campaign.

20   If it's not about the campaign, I have no idea what this

21   investigation would be about.  It's about the Trump campaign.

22         The question arose out of Comey's investigation.  And

23   by the way, Your Honor, we're happy to do plenty of briefing on

24   this issue as to what Jim -- Mr. Comey testified up at the Hill

25   as to what the nature of the investigation was at the time.

1          THE COURT:  Well, I'll tell you what he said.  He

2     said:  I've been authorized by the Department of Justice to

3     confirm that the FBI, as part of our counterintelligence

4     mission, is investigating the Russian government's efforts to

5     interfere in the 2016 presidential election, and that includes

6     investigating the nature of any links between individuals

7     associated with the Trump campaign and the Russian government

8     and whether there was any -- and whether there was any

9     coordination between the campaign and Russia's efforts.  As

10    with any counterintelligence investigation, this will also

11    include an assessment of whether any crimes were committed.

12    Because it is an open and ongoing investigation, and it's

13    classified, I cannot say more about what we're doing and who's

14    conduct we're examining.

15          So that's the investigation that paragraph (1)

16    transferred to Mr. Mueller and said that you can look at not

17    only any matters that arise from it, but any matters that arose

18    from it.  In other words, anything that was already under

19    investigation; correct?

20          MR. DOWNING:  Are you asking me, is it correct that

21    the order says, or is it correct to interpret it that way?

22          THE COURT:  Well, it didn't just say, "matters that

23    arise," it said, "matters that arose or arise," didn't it?

24          MR. DOWNING:  Correct.  And we say that whole thing

25    is in violation of the regs.  If it's not in the specific

1      description in point one and it otherwise hasn't been the part

2      of additional jurisdiction, we say it's in violation of the

3      regs.

4              THE COURT:  All right.  Well, if it's your contention

5      that the problem here is the fact that there was not specific

6      factual guidance given as to what else could be investigated,

7      is that still your argument after the filings that have been

8      made in this case, in the criminal case?

9              MR. DOWNING:  Most certainly.  I didn't think we were

10     going to get into that today, but we have some definite

11     thoughts about --

12             THE COURT:  Well, it's a little bit the elephant in

13     the room.  And, yes, we're going to talk about it more and I

14     just want to know --

15             MR. DOWNING:  The acting attorney --

16             THE COURT:  -- you've already said (b).  Count Two is

17     dropped, right?  You said you're no longer pursuing Count Two.

18             MR. DOWNING:  We did say that, yes.

19             THE COURT:  So that issue of whether the

20     investigation was expanded improperly by Mr. Mueller is not an

21     issue for today.  But you still you got Count One and whether

22     the prosecution fell under (b)(i).  And you say it didn't

23     because he needed specific authorization.

24             MR. DOWNING:  He needed additional jurisdiction

25     specifically granted by the acting attorney general.  And

1    not -- I'm not going to get into this today because we're not

2    here on the facts, but I will comment on one thing:  One of the

3    most important delegations of authority is the delegation of

4    authority to a special counsel.  And the acting attorney

5    general had no written memorialization of that on May 17th.

6    The first time we see it is August 6, after several search

7    warrants had been executed, one of which at Mr. Manafort's

8    residence, which was made public, it was publicized everywhere.

9          Yes, we have major issues with what really happened

10   here.  And we do think, Your Honor, in the APA adjudication,

11   the question is what is the administrative record on the day

12   that appointment order was issued?  And we have not seen

13   anything about the appointment order produced by the United

14   States government to support what was granted as authority on

15   May 17th.

16          THE COURT:  Well, just the idea of an administrative

17   record leading to the appointment of the special counsel, that

18   would be about whether there needs to be a special counsel,

19   wouldn't it?  How would that illuminate what the order consists

20   of?

21          MR. DOWNING:  So the question that comes in -- and,

22   again, Mr. Rosenstein has testified about this.  First question

23   that comes in as to whether or not he's going to appoint a

24   special counsel is, okay, what is the evidence in front of me?

25   What do we have evidence of?  And does it concern a conflict

1    that we have at the department?  And with respect to that

2    conflict, what am I going to empower the special counsel to do?

3    That's the question on day one.

4            So, there needs to be a record that is set by the

5    acting attorney general as to his decision-making on day one as

6    to what the appointment of a special counsel, if any, is going

7    to be and the scope of it.

8            THE COURT:  Well, what's the best case, your best

9    legal case for the proposition that this order is final agency

10   action subject to review under the APA?

11           MR. DOWNING:  I'm sorry.  One more time.

12           THE COURT:  What is your best case for the

13   proposition that this order is final agency action subject to

14   review under the APA?

15           MR. DOWNING:  The action was the appointment of the

16   special counsel on that day.

17           THE COURT:  What is your best legal case that tells

18   me that's a final agency action?  Because what about -- I don't

19   understand what it is about the order that gave rise to any

20   legal wrong or harm to the plaintiff.

21           MR. DOWNING:  The order is the appointment of special

22   counsel.

23           THE COURT:  Right.

24           MR. DOWNING:  And the order is sending Mr. Manafort

25   to be investigated by the special counsel, not to be

1   investigated by the Department of Justice.  On that day that

2   was the harm caused to him.  On that day there was final

3   action.

4          THE COURT:  So you're admitting that he was already

5   part of the investigation before it went?

6          MR. DOWNING:  I'm not admitting anything.  If he was

7   part of the investigation on that day and the investigations

8   were transferred from the Department of Justice to -- you asked

9   me about what's my best legal argument.

10          THE COURT:  I asked you for a case.

11          MR. DOWNING:  If he was -- well, it's factual, if on

12   that day he was part of this appointment order, it was

13   contemplated that he was going to be investigated by the Office

14   of Special Counsel; that's my best argument as to why this

15   appointment order is final to him.  Because it sent him over to

16   be investigated by the special counsel.

17          THE COURT:  But you can be investigated and nothing

18   happens to you.

19          MR. DOWNING:  We would prefer that.  Your Honor, we

20   would have preferred that.  It would have been a better result.

21          THE COURT:  You can get indicted and you can get

22   acquitted, you can get indicted and convicted and appeal and

23   overturned.  That's what *Deaver* and *North* and all these cases

24   are talking about in saying that this isn't what the APA is

25   about.  You have to wait until the harm is crystallized, you

1    have to challenge it, follow all the legal bases that you have

2    to challenge it.  You can't just get an injunction to stop it.

3    And now you're saying don't even stop the things I know have

4    happened to me, stop something that I don't even know is going

5    to happen to me.  I don't really understand what's left to your

6    case.

7            MR. DOWNING:  We'll, I've said this a few times.

8    First of all, the cases you cited earlier are not APA cases.

9            THE COURT:  That's true, because nobody challenges

10   prosecutions under the APA.  Do you have one case that supports

11   this?

12           MR. DOWNING:  Well, Your Honor, that's an interesting

13   question because a couple of years ago, maybe it was four years

14   ago, there was a case brought here in D.C. District Court, and

15   it was called *Z Street*.  And the action was bought saying that

16   the IRS was holding up an application for their nonprofit

17   status, and their holding up of that process was causing harm

18   to them.  And the D.C. District Court says, sorry,

19   Anti-Injunctive Act, can't bring an APA case against the IRS;

20   too bad.  Went up to the D.C. Circuit, and the D.C. Circuit

21   said, Well, it may be the IRS, it may be an issue of the

22   Anti-Injunction Act, but we don't think it is here, and the

23   harm was caused by the delay.  The delay in and of itself was

24   harm.  So delay in and of itself is harm in that case --

25           THE COURT:  Delaying agency action can be actionable

1    under the APA.

2            MR. DOWNING:  Correct.

3            THE COURT:  That's different.

4            MR. DOWNING:  The harm -- what I'm saying to you is

5    the harm here -- they had delay as a harm.  We have been thrown

6    into being investigated by the special counsel on that day.

7    That action for Mr. Manafort on that day was a final action by

8    the Department of Justice.

9            THE COURT:  Do you have a case, a single legal case

10   that suggests that being thrown -- that being the subject of an

11   investigation, an ongoing investigation is actionable under the

12   APA, as opposed to you have to wait and challenge it legally?

13           MR. DOWNING:  I don't know that I have an APA case

14   for that proposition.

15           THE COURT:  All right.  Okay.

16           MR. DOWNING:  And, Your Honor, if you're asking me

17   the question, is this a case of first impression?  Well,

18   certainly it is, and it is the first case to be brought under

19   the special counsel regulations.

20           THE COURT:  All right.  I think that pretty much

21   covers the questions I had for you.  Is there anything that --

22   other points you want to make to me?

23           MR. DOWNING:  Can I have a moment to confer, Your

24   Honor?

25           THE COURT:  Yes.

1          MR. DOWNING:  Thank you.

2          (Pause.)

3          MR. DOWNING:  Briefly, Your Honor.  First of all, I

4     renew my offer to brief some of the issues that we were talking

5     about today, to further brief it.  I think it would be

6     important.  I did also want to point out, you asked a question

7     about the enforceability of the regulations.  I think *U.S. v.*

8     *Nixon* dealt with this issue where the question was if the AG

9     promulgates a regulation, then why does he have to be bound by

10    it? because he can also delete them or get rid of them.  And

11    *U.S. v. Nixon* says, well, while they're on the books, that

12    they're enforceable against the attorney general.

13          So, I just want to leave with that point because of

14    your question about the agency saying it's internal

15    housekeeping, when in fact they're up there, they're active,

16    they're listed as current regulation.

17          THE COURT:  Is there any similar provision in those

18    regulations to the one here that specifically disavows any

19    notion that it could create legal rights or remedies?

20          MR. DOWNING:  I will check that.

21          THE COURT:  All right.  And I can look at it myself.

22    All right.  Thank you.

23          MR. DOWNING:  Thank you.

24          THE COURT:  Okay.  Counsel for the Department of

25    Justice, I'm going to give you an opportunity to respond to all

1    that because I want to hear your response, but I just have a

2    couple of questions to start with.  And one was with respect to

3    the *Deaver* case.

4            MR. SCHWEI:  Yes.

5            THE COURT:  The Court certainly noted there that no

6    federal court had ever enjoined a federal prosecution before.

7    And it didn't feel that *Younger* had to be limited to state

8    prosecutions.  But, would it be reading too much into it to say

9    that it stands for the proposition that a federal court can't

10   enjoin a federal prosecution?  I mean, wasn't part of *Deaver*

11   that there was a constitutional question they wanted to avoid?

12   That's not applicable in this case, is it?

13           MR. SCHWEI:  I don't think the *Deaver* decision stood

14   for the proposition that federal courts could never enjoin

15   federal prosecutions in the sense that the *Younger* exceptions

16   might not apply, or something to that effect.  But I think what

17   it does squarely hold is that, at a minimum, those same *Younger*

18   principles should still apply to federal prosecutions.

19           And that's squarely where Manafort's civil claim is

20   here today, that it's based on the existing indictments as

21   alleged in the complaint.  They've tried to shift away from

22   that theory now, but at a minimum, the operative pleading here

23   is based on the existing indictments.  And we think the *Deaver*

24   decision is actually on all fours.

25           I'm happy to discuss more about how the scope of

1    remedy in *Deaver* is actually the same as what -- is the same

2    theory about what they're articulating today because not only

3    as Your Honor mentioned earlier, that there was the timing

4    issue of Mr. Deaver had not yet been indicted, but Mr. Deaver

5    was actually seeking far more than just an injunction against a

6    single indictment.  The district court specifically noted that

7    *Deaver* was seeking a declaration that the entire independent

8    counsel act was invalid, an injunction against all future

9    exercises of authority by the independent counsel, and also

10   some relief as to the evidence that the independent counsel had

11   gathered against Mr. Deaver.

12            And so that's the scope of the complaint in *Deaver*,

13   and the D.C. Circuit specifically held that the entire

14   complaint needed to be dismissed.  And so that notwithstanding

15   the relief that Mr. Deaver sought in the civil case being

16   broader than what was available under Rule 12 of the Rules of

17   Criminal Procedure, the D.C. Circuit still held that the entire

18   claim needed to be dismissed.  And that's on all fours here.

19            THE COURT:  So it's your position that his waiver

20   that we got in a footnote, that he's not seeking to invalidate

21   the indictments anymore and the removal of Count Two, doesn't

22   change your argument that he still has an adequate remedy at

23   law?

24            MR. SCHWEI:  Absolutely, Your Honor.  And I think --

25   just a couple things about that footnote in particular.  They

1    say that they are waiving a request for dismissal of the

2    indictment.  It's not clear what else they might be waiving.  I

3    think here today they've articulated a theory of, well, we

4    aren't ever going to use this in the two existing prosecutions,

5    we're only seeking relief as to future prosecutions.

6            Our position is that's exactly what happened in

7    *Deaver* itself.  Additionally, we don't think there's standing

8    for it because the operative pleading here doesn't actually

9    allege anything about these future prosecutions.  But even if

10   there were standing, and even if *Deaver* didn't control here, in

11   the broader *Younger* framework, courts have rejected exactly

12   this type of pleading tactic where litigants try to say we're

13   not challenging our existing prosecution, we're only trying to

14   challenge future prosecutions.

15           The Fifth Circuit rejected it in *Ballard versus*

16   *Wilson*, the First Circuit rejected it in *United Books versus*

17   *Conte*.  The *Wright & Miller* treatise, although not binding,

18   says that it would be inappropriate.  And the reason for that

19   is plain, is because as a practical matter, if a Court were to

20   adjudicate the claim brought in this civil case, that would,

21   practically speaking, have an effect on the ongoing

22   prosecutions.

23           And here, Manafort admits that that is what he is

24   seeking.  In his opposition, I believe it's on page 14, they

25   say --

1          THE COURT:  I think it's just about the same page

2     where he says he's not seeking to dismiss the indictment, he

3     says, but it will have an affect on the prosecution.

4          MR. SCHWEI:  Precisely, Your Honor.  They admit that

5     it may have an affect on the special counsel's willingness and

6     ability to proceed with the existing prosecutions.  And so,

7     really, this notion of bifurcating, we're not challenging the

8     existing prosecutions, but we are challenging future ones, as a

9     practical matter, would still have the same interference and

10    plainly interfere with the special counsel's ongoing

11    prosecutions, which is what *Deaver* and *Younger* are exactly

12    designed to prevent.

13         THE COURT:  All right.  Well, let's say I don't apply

14    the *Younger* doctrine in this case and I don't think he has an

15    adequate remedy at law.  If I bought all of those theorys and

16    we're actually now looking at the regs themselves, how can the

17    government argue that this individual, who was clearly a

18    subject of the special counsel's investigation, doesn't fall

19    within the zone of interest that the independent counsel

20    regulations were designed to protect?

21         I mean, to say that these are just about internal

22    operations and not meant to cabin the scope of special counsel

23    investigations, they, on their face, appear designed to talk

24    about the scope of the investigation, the scope of the

25    authority.  They're not about, you know, computer systems or

1    internal operations of the Department of Justice, are they?

2              MR. SCHWEI:  I think, Your Honor, there's a two-part

3    answer.  Specifically, with respect to the zone of interest

4    issue, the D.C. Circuit has held in several cases that it is

5    not enough to fall within the zone of interest of a regulation,

6    the plaintiff must point to a statute.  And here, the governing

7    statutes are delegations of authority to the Department of

8    Justice, to the attorney general, they are grants of authority,

9    not limitations on his authority enforceable by private

10   parties.

11             And specifically, with respect to § 515, obviously we

12   agree with Your Honor, that no statutory claim has actually

13   been pled here.  But specifically, with respect to 515, in *In*

14   *re:  Sealed Case*, the D.C. Circuit held that § 515 is for the

15   government's benefit.  That specific direction language is for

16   the government's benefit, it's for ensuring accountability for

17   the specially pointed attorneys to the attorney general.  And

18   that section is not a limit on the attorney general's authority

19   to prosecute.  And that's consistent with, I believe, an Eighth

20   Circuit decision that we cited in our briefs about how he

21   cannot fall within the zone of interest of those regulations.

22   And I think that sort of blends into the question of

23   enforceability of the regulations.

24             And as I understand Manafort's argument, the fact

25   that they are regulations codified in the C.F.R. somehow means

1    they are automatically enforceable by private parties, and that

2    is simply not correct under the APA.  In *American Farm Lines*

3    *versus Black Ball Freight Services*, the Supreme Court said that

4    regulations, even if codified in the C.F.R., when they are

5    procedural and for the benefit of the agency, they may not be

6    enforceable by private parties.

7            And I think turning to some of the more directly

8    analogous precedence that Your Honor mentioned, the numerous

9    decisions involving other DOJ policies where courts have held

10   them not to be enforceable, that's exactly in line with the

11   argument here, that the regulations are for the benefit of the

12   government.  The *Federal Register* notice makes that clear, in

13   addition to the provision of the regulations expressly codified

14   in 600.10 about not providing any rights to private parties.

15   And that type of language in 600.10 has been relied upon by

16   courts in a variety of context, including with respect to, for

17   example, the DOJ, U.S. Attorney's manual, where the D.C.

18   Circuit in *United States versus Blackley* relied on similar

19   language in the United States Attorney's manual to hold that

20   that manual was not enforceable.

21           And so, even if, you know, even if it were somehow

22   possible to satisfy zone of interest by coming within the zone

23   of interest of a regulation, clearly, Manafort or any private

24   individual would not be within the zone of interest of a

25   regulation that expressly says it is not intended to confer any

1    rights on any such private individuals.

2              THE COURT:  Are you arguing that the appointment of

3    the special counsel is an act that's completely committed to

4    the discretion of the agency and, therefore, not reviewable at

5    all?

6              MR. SCHWEI:  Your Honor, we did not understand the

7    claim at issue in the complaint to be going to the mere fact of

8    the special counsel's appointment.  We under --

9              THE COURT:  Scope.

10             MR. SCHWEI:  Correct.  The specific paragraph

11   (b)(ii), the inclusion of that provision in the appointment

12   order, I think it is helpful that they have clarified that

13   today, that they are not seeking to invalidate the entire

14   appointment order, but only that provision.  So I think, you

15   know, the notion of an administrative record going to the

16   appointment of the special counsel is not really tied to the

17   claim they're advancing.

18             But what it does demonstrate is the danger of

19   allowing these claims to proceed, because what they've said

20   today is they think an administrative record about the

21   appointment of the special counsel is appropriate, they think a

22   decision from this Court would be helpful to allow them to

23   superintend the activities of the special counsel, which is, at

24   the end of the day, a law enforcement investigation.  And the

25   notion that civil courts should be entering orders and then

1    supervising and enforcing those orders over ongoing law

2    enforcement investigations, I think would be a tremendous

3    incursion of the separation of powers.  It was rejected by the

4    D.C. Circuit in the *AT&T* decision and it animates a number of

5    the Court's *Younger* decisions, including *O'Shea versus*

6    *Littleton*, which, going back to an earlier topic, that case

7    perfectly demonstrates why simply because a plaintiff wants a

8    broader, more systemic remedy in the civil case, that doesn't

9    mean that civil relief is appropriate, as opposed to just

10   raising the claims in the individual criminal proceedings.

11          THE COURT:  Well, and doesn't this fall within the

12   whole -- you didn't emphasize the *Heckler* jurisprudence, but

13   the idea of using the APA to get the courts to get involved in

14   how an agency either is or isn't using its law enforcement

15   authority, those cases seem to support that that would be the

16   wrong thing to do.

17          MR. SCHWEI:  Absolutely, Your Honor.  I think that's

18   an additional reason why allowing this claim to move forward,

19   those principles underlying those decisions counsel against the

20   type of relief and the type of judicial review that they are

21   suggesting here.  We didn't raise that argument because of the

22   narrowness of how we understood Manafort's claim, although

23   there is some, you know, we think, ambiguity about the precise

24   scope of that claim.

25          THE COURT:  Well, if your theory is that the

1    appointment order was lawful on its face, why is the deputy

2    attorney general's testimony that you submitted to me something

3    that I should even consider?  I wasn't sure how his legal

4    opinion should govern mine, or why that evidence was necessary,

5    or what point you're making with it.

6         MR. SCHWEI:  So, first of all, we don't think it's

7    necessary.  We think this case can and should be decided just

8    by consulting *Deaver* and could be dismissed on that ground

9    alone.  And no reference to the acting attorney general's

10   testimony would be necessary for what we view as the principal

11   defect of this is a collateral civil challenge attacking a

12   criminal prosecution.

13        But for some of the later arguments, we brought the

14   acting attorney general's testimony to this Court's attention

15   because we do think it does information the plausibility of the

16   allegations.  We think under no circumstances have they

17   plausibly alleged the type of extreme error necessary for an

18   ultra vires claim.  I think they've now actually abandoned that

19   claim in any event, so none of that discussion really matters

20   because by waiving Count Two they've waived their ultra vires

21   claim.

22        THE COURT:  Well, I think they're saying Count One

23   was the deputy attorney general acting outside the scope of his

24   authority and that's the ultra vires claim.  And Count Two was

25   the special counsel accounting outside of the scope of his

1    authority.  So Count Two is gone.

2            I guess, in terms of Count One, they're still saying

3    that including (b)(ii) in the order was an ultra vires action

4    by the deputy attorney general.  Mr. Downing is nodding at me,

5    so I think I've got that right.

6            MR. DOWNING:  Correct, Your Honor.

7            THE COURT:  All right.

8            MR. SCHWEI:  The point I was making, that the basis

9    for judicial review on Count One is solely the APA.  This

10   alternative theory of ultra vires nonstatutory review was

11   solely under Count Two.  And so I don't think any of that

12   briefing really matters anymore.  You know, we think the

13   principal defect here is that it's a collateral civil challenge

14   to an ongoing criminal prosecution.

15           There are additional reasons under the APA why Count

16   One must fail, but we think --

17           THE COURT:  Can you talk about the final agency

18   action aspect of it for a minute?

19           MR. SCHWEI:  Yes, Your Honor.  I don't think this is

20   an issue of first impress at all.  I think it's squarely

21   governed by *FTC versus Standard Oil of California*, the Supreme

22   Court decision which held that the filing of an administrative

23   complaint is not final agency action.  The D.C. Circuit's

24   decision in *Reliable Automatic Sprinkler Company* held that an

25   agency's assertion of jurisdiction over somebody they might

1       initiate proceedings against is not final agency action.  And I

2       think that's exactly what we have here, that he is challenging

3       the appointment of the special counsel, or at least the grant

4       of -- some grant of jurisdiction to the special counsel.  That

5       in itself does not determine any legal rights or consequences.

6       It is even earlier than, you know, what the Supreme Court in

7       the D.C. Circuit rejected in those cases.

8                And so the mere grant of authority to an employee

9       within the agency has never been held to be final agency

10      action.  And the implications of that claim are quite striking,

11      that anytime an agency decides who within the agency, or hires

12      an employee to come on board the agency to do something, that

13      that somehow constitutes final agency action, subject to

14      judicial challenge, well before that employee ever actually

15      does anything against the private individual, that would

16      drastically expand the scope of review available under the APA.

17               THE COURT:  All right.  Does it matter to the

18      resolution of this case whether Mr. Manafort's Ukrainian and

19      Russian ties were already under investigation at the time of

20      the handoff to the special counsel?  Does it have anything to

21      do with this case?  Am I supposed to pay any attention to the

22      recent filings in the criminal case in connection with the

23      resolution of this case?

24               MR. SCHWEI:  We think the clearest way to resolve

25      this civil case is to dismiss it pursuant to the *Deaver* and

1     *Younger* line of cases for which the criminal filing in that

2     case has no relevance, except to demonstrate the adequacy of

3     that alternative forum for litigating these very same issues.

4     I don't think the Court needs to wade into the ultimate merits

5     to resolve this case.  The clearest way forward would be to

6     dismiss it under *Deaver* and specifically not address the

7     merits.

8         Manafort's counsel suggested that in the *Deaver*

9     decision they somehow did address the merits.  I think Your

10     Honor correctly pointed out that they actually only discussed

11     the concept of constitutional avoidance.  Footnote 11 of the

12     decision actually makes clear that they do not view the merits

13     as appropriately before them because that's the very reason for

14     dismissing the claim under this abstention doctrine.

15         And so I think that's the clearest way forward here.

16     Your Honor obviously has discretion about how to resolve these

17     cases on its own docket.  But, the clearest way forward for

18     this civil suit would be dismissal.

19         THE COURT:  All right.  Since he talked about it a

20     lot, I know you've dealt with it in your brief and I've read it

21     and it predated *Deaver*, but if you can -- if you want to just

22     address the *Juluke* case and why that sort of -- it was one

23     opinion, but it was in a criminal and a civil case, why that

24     isn't -- is or isn't what he says it is in terms of this case.

25         MR. SCHWEI:  Correct.  So, there are -- as Your Honor

1    noted, there were multiple appeals at issue.  I think there are

2    two factors that distinguish *Juluke* from the present case,

3    which is, number one, the civil plaintiffs there were seeking

4    to challenge a regulation that governed their primary conduct

5    that they wanted to engage in in the future.  And so they were

6    arguing there was this chill on what they believed was First

7    Amendment protected activity.

8              And, number two, those particular civil plaintiffs

9    were not being criminally prosecuted and so they had no other

10   judicial forum in which to litigate the legality of the

11   regulations that they thought chilled their conduct.

12             Both of those distinguish us from Mr. Manafort here

13   today because, number one, there's no allegation of future

14   conduct that he alleges as being chilled, certainly no

15   constitutionally-based conduct.  Instead, what he's claiming is

16   that he is concerned about additional prosecutions based on

17   past conduct.  That's very different from the type of

18   pre-enforcement case that *Juluke* relies on.

19             And, second, Mr. Manafort clearly is being criminally

20   prosecuted and so he does have adequate forums available in

21   which to raise the very same arguments he is seeking to raise

22   through this civil case.  As Your Honor noted, there's been a

23   motion filed both in the criminal case in the District of

24   Columbia, but he has also filed the same motion or a similar

25   motion raising the same arguments in the Eastern District of

1    Virginia criminal case.  And I think that underscores how the

2    claims that Mr. Manafort seeks to present in this civil

3    proceeding can and will be adjudicated in those other civil --

4    criminal cases.

5              THE COURT:  All right.  Is there anything else that

6    you didn't get to say that you want to say?

7              MR. SCHWEI:  The last thing I would say, in terms of

8    the enforceability of the regulations, Mr. Manafort's counsel

9    referenced the *Nixon* case.  I think that's a very different

10   case, where the question there was simply about are the

11   regulations sufficiently enforceable to create a live Article

12   III dispute, the type of dispute that is capable of judicial

13   resolution, as opposed to a purely intra-branch executive

14   dispute.  That's clearly not what we have here.

15             Here, Manafort is trying to assert rights under the

16   regulations exactly the same way numerous litigants have tried

17   with respect to the U.S. Attorney's manual and other policies,

18   and we think those are the more applicable precedents about how

19   these internal DOJ policies are not enforceable.

20             THE COURT:  Okay.  Thank you.

21             MR. SCHWEI:  Thank you.

22             THE COURT:  It's actually the government's motion,

23   but if you have anything to say briefly in reply that you

24   haven't said before, I'll let you do it.  Otherwise, I think I

25   can take this matter under advisement.  I've had good argument

1    and good briefing by everybody.

2              MR. DOWNING:  I will stick with briefly.  I just

3    wanted to point out that a point I made earlier about the regs

4    and what is needed by the Court to review agency action under a

5    judicially manageable standard, I think the seminal DC -- DDC

6    case on that is *Clifford v. Pena*, 77 F.3d 1414.

7              THE COURT:  All right.  Thank you.

8              MR. DOWNING:  Thank you, Your Honor.

9              THE COURT:  All right.  Thank you very much,

10   everyone.  Obviously, I'm not going to rule today.  I'm going

11   to take this matter under advisement.  And I appreciate all the

12   input from today.  Thank you.

13                             *   *   *

14

15

16

17

18

19

20

21

22

23

24

25

1      CERTIFICATE OF OFFICIAL COURT REPORTER

2

3

4           I, JANICE DICKMAN, do hereby certify that the above

5      and foregoing constitutes a true and accurate transcript of my

6      stenograph notes and is a full, true and complete transcript of

7      the proceedings to the best of my ability.

8                     Dated this 4th day of April, 2018.

9

10

11                     /s/_____

12                     Janice E. Dickman, CRR, RMR
                       Official Court Reporter
13                     Room 6523
                       333 Constitution Avenue NW
14                     Washington, D.C. 20001

15

16

17

18

19

20

21

22

23

24

25