**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| PAUL J. MANAFORT, JR., <br><br>                *Plaintiff*, <br><br>       v. <br><br> U.S. DEPARTMENT OF JUSTICE, ROD J. ROSENSTEIN, and ROBERT S. MUELLER III, <br><br>               *Defendants*. | No. 1:18-cv-00011-ABJ |

## DEFENDANTS' SUPPLEMENTAL MEMORANDUM REGARDING PLAINTIFF'S LACK OF STANDING

In a Minute Order dated April 5, 2018, this Court permitted the parties to file supplemental memoranda "addressing the question of whether the Court has subject matter jurisdiction over Count I now that plaintiff has withdrawn any claim for declaratory or injunctive relief relating to the pending indictments, and he seeks prospective relief, including an order 'enjoining the Special Counsel's future *ultra vires* exercise of authority under' the Appointment Order."  The United States respectfully submits this response, explaining that Manafort indeed lacks standing to pursue prospective relief against speculative future prosecutions.

Dismissal of Manafort's Complaint is therefore warranted not only because he lacks standing, but also because his claim is precluded under the abstention doctrine recognized in *Younger v. Harris*, 401 U.S. 37 (1971), and *Deaver v. Seymour*, 822 F.2d 66 (D.C. Cir. 1987).  The Court has discretion to dismiss Manafort's Complaint on either or both grounds.  *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585 (1999) ("[D]istrict courts do not overstep Article III limits when they . . . abstain under *Younger v. Harris* without deciding whether the parties present a case or controversy." (citation omitted)).  Given Manafort's shifting characterizations of what exactly he is seeking through this lawsuit, the Government respectfully submits that dismissal on both standing and abstention grounds would provide the clearest resolution of this matter.  Nonetheless, as discussed at the recent hearing, Manafort's latest characterization of his claim fails for the independent reason that he lacks standing to seek prospective relief against speculative future actions.  *See, e.g.*, Mot. to Dismiss Hr'g Tr. at 40-42 [hereafter "MTD Tr."].

**1.**  Under Article III, plaintiffs bear the burden of establishing subject-matter jurisdiction. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  Indeed, it is "presume[d] that federal courts lack jurisdiction unless the contrary appears affirmatively from the record." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006).  And in determining whether

standing exists, "the Court looks to the face of the complaint[.]"  *Prisology v. Fed. Bureau of Prisons*, 74 F. Supp. 3d 88, 93 (D.D.C. 2014), *aff'd*, 852 F.3d 1114 (D.C. Cir. 2017).

Here, as previously discussed in the Government's reply brief, *see* ECF No. 28 at 5-7, Manafort's Complaint contains no allegations whatsoever regarding potential future prosecutions. Nor does it allege any injuries purportedly stemming from ongoing investigations unconnected to the two existing prosecutions.  *Cf.* Compl. ¶ 58 (describing only past injuries purportedly caused by the Appointment Order).  Thus, the operative pleading plainly does not establish an "actual or imminent" injury associated with hypothetical future proceedings.  *Lujan*, 504 U.S. at 560; *see also Arpaio v. Obama*, 797 F.3d 11, 21 (D.C. Cir. 2015) (a claim based on "predicted future injury . . . bears a more rigorous burden to establish standing," and a court "may reject as overly speculative those links which are predictions of future events").

2.  Even apart from this pleading deficiency, Manafort cannot plausibly establish standing for several additional reasons.  At the motion-to-dismiss hearing, Manafort relied on the D.C. Circuit's decision in *Juluke v. Hodel*, 811 F.2d 1553 (D.C. Cir. 1987).  *See* MTD Tr. at 8-9, 14.  But the type of standing recognized in *Juluke* and other pre-enforcement cases is inapplicable here.

The typical pre-enforcement case involves a plaintiff who wishes to engage in private conduct, but is "chilled" from doing so based on a governmental proscription of that conduct and a sufficiently significant risk of prosecution for violating that proscription.  *See, e.g.*, *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2342-43 (2014); *Juluke*, 811 F.2d at 1555-56.  Here, Manafort does not seek to challenge any regulation of his primary conduct; he merely seeks to challenge the Special Counsel's authority to prosecute him.  *See* MTD Tr. at 14.  Standing is much harder to establish when the challenged provision only authorizes the government to act but does not actually regulate conduct.  *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 412 (2013)

("[B]ecause [the statute] at most *authorizes*—but does not mandate or direct—the surveillance that respondents fear, respondents' allegations are necessarily conjectural."); *see also United Presbyterian Church v. Reagan*, 738 F.2d 1375, 1378-80 (D.C. Cir. 1984) (Scalia, J.) (explaining why a "chill" does not provide standing when the challenged policy "issues no commands or prohibitions . . . and sets forth no standards governing [private] conduct").

Moreover, Manafort does not argue that he is actually "chilled" from engaging in any future conduct; he is instead complaining about the possibility of additional prosecutions based on *past* conduct. Thus, he cannot show that he was "effectively coerced" into foregoing conduct that he believes was lawful—an important part of how pre-enforcement plaintiffs typically establish standing. *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 129 (2007).

For Manafort to establish standing, then, he must "satisfy the requirement that threatened injury . . . be certainly impending." *Clapper*, 568 U.S. at 410. But he cannot do so based on speculative, unsupported assertions about potential future prosecutions. *See id.* at 410-14. Nor can Manafort avoid the "certainly impending" requirement simply based on actions he (or others) have taken in response to the speculative potential of future prosecutions. *Id.* at 415-18 & n.7.

Indeed, even in pre-enforcement cases the plaintiff must establish a "genuine threat of enforcement[.]" *MedImmune, Inc.*, 549 U.S. at 129; *see Susan B. Anthony List*, 134 S. Ct. at 2345-46. Here, even were the Court to go beyond the allegations of the Complaint and examine the assertions of Manafort's counsel, Manafort still has not established any such genuine threat. The mere fact of past prosecutions does not itself prove "a specific live grievance" as to potential future prosecutions. *Golden v. Zwickler*, 394 U.S. 103, 109-10 (1969). And Manafort offers no concrete information whatsoever regarding the potential future prosecutions about which he is concerned— only the bare assertion that "[t]here's no doubt that Mr. Manafort continues to be harmed by an

ongoing investigation by the special counsel."  MTD Tr. at 11; *see also id.* at 15, 19.  Absent

additional factual detail, this Court cannot ensure that Manafort's claim presents a live dispute.

Manafort's obligation here, moreover, is not only to establish an injury-in-fact, but an

injury that would be "redressed by a favorable decision." *Lujan*, 504 U.S. at 561.  At the motion-

to-dismiss hearing, Manafort clarified that he is not challenging the Appointment Order as a whole,

only any future investigations or prosecutions arising out of ¶ (b)(ii) of the Order.  *See* MTD Tr.

at 9-12, 16-17, 30.  To establish standing, then, Manafort must demonstrate that the purported

future actions he is concerned about are authorized solely by ¶ (b)(ii) of the Order—otherwise

invalidation of that provision would not redress any purported injuries flowing from those

proceedings.  But here, Manafort's bare assertions do not establish a genuine threat of any future

prosecutions, let alone future prosecutions authorized solely under ¶ (b)(ii) of the Appointment

Order.  Thus, Manafort fails at every step to bring his claim within the type of standing recognized

in pre-enforcement cases, as well as to satisfy other bedrock Article III requirements.

**3.**  Manafort also suggested at the hearing that, even if he is seeking a prospective remedy,

a sufficiently concrete dispute exists now because "he has been charged for conduct that is outside

of the scope of th[e] special counsel reg[ulation]s," and that is a "real harm" that exists "right now."

MTD Tr. at 15-16.  The two existing prosecutions, however, are the very ones for which Manafort

has expressly disclaimed any remedy.  *See* MTD Tr. at 8.  And "a plaintiff must demonstrate

standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Envtl.*

*Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000).  Thus, to seek prospective relief against additional

future prosecutions, Manafort must establish an injury-in-fact associated with *those* potential

future prosecutions—not the pre-existing ones for which he is no longer seeking any relief.  And

as noted above, the mere fact of prior prosecutions does not establish standing to seek prospective

relief against future ones.  *See O'Shea v. Littleton*, 414 U.S. 488, 495 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief[.]"); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 105-08 (1983).

Manafort's broad theory of standing—in which past prosecutions authorize plaintiffs to seek civil relief overseeing potential future investigations and prosecutions—only further underscores the stark separation-of-powers concerns implicated by his claim.  The doctrine of standing is "founded in concern about the proper—and properly limited—role of the courts in a democratic society."  *Warth v. Seldin*, 422 U.S. 490, 498 (1975).  Accordingly, "standing requirements are especially rigorous when reaching the merits of a case would raise questions about the proper scope of judicial authority."  *Chenoweth v. Clinton*, 181 F.3d 112, 115 (D.C. Cir. 1999).  Here, the motion-to-dismiss hearing confirmed the breadth of Manafort's requested prospective relief.  *See* MTD Tr. at 18 (Manafort is seeking an order to have "in hand to go and stop the special counsel when they issue a grand jury subpoena in an ongoing investigation").  Particularly given that law-enforcement matters are traditionally regarded as "a 'special province' of the Executive," *United States v. Armstrong*, 517 U.S. 456, 464 (1996), Manafort's broad theories of standing are especially inappropriate for the type of intrusive claim he is asserting here.

**4.**  Accordingly, Manafort lacks standing to pursue his requested relief.  His claim is also precluded under the *Younger* and *Deaver* abstention doctrine, regardless of how he characterizes the particular relief he is seeking.  *See* ECF No. 16-1 at 11-19; ECF No. 28 at 2-14.  Thus, given Manafort's frequently changing descriptions of his requested relief—and to prevent Manafort from trying to evade a standing-based dismissal by further re-characterizing his claims—the Government respectfully submits that dismissal of the Complaint both for lack of standing and on abstention grounds would provide the clearest and most comprehensive resolution of this matter.

Dated: April 11, 2018

Respectfully submitted,

JOHN R. TYLER
Assistant Director

*/s/ Daniel Schwei*
DANIEL SCHWEI (N.Y. Bar)
Senior Trial Counsel
ANJALI MOTGI (TX Bar No. 24092864)
Trial Attorney
United States Department of Justice
20 Massachusetts Avenue, NW
Washington, DC 20530
Tel: (202) 305-8693
Fax: (202) 616-8470
Daniel.S.Schwei@usdoj.gov