# U.S. District Court
## District of Columbia (Washington, DC)
## CIVIL DOCKET FOR CASE #: <u>1:18–cv–00011–ABJ</u>

MANAFORT v. U. S. DEPARTMENT OF JUSTICE et al

Assigned to: Judge Amy Berman Jackson

Cause: 05:551 Administrative Procedure Act

Date Filed: 01/03/2018

Date Terminated: 04/27/2018

Jury Demand: None

Nature of Suit: 899 Administrative Procedure Act/Review or Appeal of Agency Decision

Jurisdiction: U.S. Government Defendant

**Plaintiff**

**PAUL J. MANAFORT, JR.**     represented by     **Kevin M. Downing**
LAW OFFICE OF KEVIN M. DOWNING
601 New Jersey Avenue, NW
Suite 620
Washington, DC 20001
(202) 754–1992
Email: kevindowning@kdowninglaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**U. S. DEPARTMENT OF JUSTICE**     represented by     **Anjali Motgi**
U.S. DEPARTMENT OF JUSTICE
Federal Programs Branch, Civil Division
20 Massachusetts Avenue, NW
Washington, DC 20530
(202) 305–0879
Fax: (202) 616–8470
Email: anjali.motgi@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Daniel Stephen Garrett Schwei**
U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW
Washington, DC 20530
(202) 305–8693
Fax: (202) 616–8470
Email: daniel.s.schwei@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

John Russell Tyler
U.S. DEPARTMENT OF JUSTICE
Civil Division
20 Massachusetts Avenue, NW
Washington, DC 20001
(202) 514–2356
Fax: (202) 616–8470
Email: john.tyler@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**ROD ROSENSTEIN**
*in his official capacity as Acting Attorney
General*

represented by   **Anjali Motgi**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Daniel Stephen Garrett Schwei**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John Russell Tyler**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**ROBERT S. MUELLER, III**
*in his official capacity as Special Counsel*

represented by   **Anjali Motgi**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Daniel Stephen Garrett Schwei**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John Russell Tyler**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Movant**

**FREEDOM WATCH, INC.**
*TERMINATED: 02/14/2018*

represented by   **Larry E. Klayman**
KLAYMAN LAW FIRM
2020 Pennsylvania Avenue, NW
Suite 345
Washington, DC 20006
(561) 558–5536
Fax: (310) 275–4963

Email: leklayman@gmail.com
*TERMINATED: 02/14/2018*

**Movant**

**DAVID ANDREW CHRISTENSON**
P.O. Box 9063
Miramar Beach, FL 32550
*TERMINATED: 02/21/2018*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 01/03/2018 | 1 | | COMPLAINT against All Defendants ( Filing fee $ 400 receipt number 0090−5271681) filed by PAUL J. MANAFORT, JR. (Attachments: # 1 Exhibit Exhibit A – Appointment Order, # 2 Exhibit Exhibit B – Indictment, # 3 Civil Cover Sheet, # 4 Summons (DOJ), # 5 Summons (Liu), # 6 Summons (Mueller), # 7 Summons (Rosenstein), # 8 Summons (Sessions))(Downing, Kevin) (Entered: 01/03/2018) |
| 01/03/2018 | | | Case Assigned to Judge Ketanji Brown Jackson. (sth) (Entered: 01/03/2018) |
| 01/03/2018 | 2 | | SUMMONS (5) Issued Electronically as to ROBERT S. MUELLER, III, ROD ROSENSTEIN, U. S. DEPARTMENT OF JUSTICE, U.S. Attorney and U.S. Attorney General (Attachments: # 1 Notice and Consent)(sth) (Entered: 01/03/2018) |
| 01/17/2018 | 3 | | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed on United States Attorney General. Date of Service Upon United States Attorney General 01/17/18. (Downing, Kevin) (Entered: 01/17/2018) |
| 01/19/2018 | 4 | | NOTICE of Appearance by Daniel Stephen Garrett Schwei on behalf of All Defendants (Schwei, Daniel) (Entered: 01/19/2018) |
| 01/19/2018 | 5 | | NOTICE of *Development in Pending Case* by ROBERT S. MUELLER, III, ROD ROSENSTEIN, U. S. DEPARTMENT OF JUSTICE (Schwei, Daniel) (Entered: 01/19/2018) |
| 01/19/2018 | 6 | | NOTICE of Appearance by John Russell Tyler on behalf of All Defendants (Tyler, John) (Entered: 01/19/2018) |
| 01/19/2018 | 7 | | NOTICE of Appearance by Anjali Motgi on behalf of All Defendants (Motgi, Anjali) (Entered: 01/19/2018) |
| 01/19/2018 | 8 | | Case directly reassigned to Judge Amy Berman Jackson by consent. Judge Ketanji Brown Jackson is no longer assigned to the case. (ztnr) (Entered: 01/22/2018) |
| 01/23/2018 | 9 | | MOTION to Intervene by FREEDOM WATCH, INC. (Klayman, Larry) (Entered: 01/23/2018) |
| 01/24/2018 | 10 | | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed as to the United States Attorney. Date of Service Upon United States Attorney on 1/23/2018. Answer due for ALL FEDERAL DEFENDANTS by 3/24/2018. (Downing, Kevin) (Entered: 01/24/2018) |
| 01/24/2018 | 11 | | |

| | | | |
|---|---|---|---|
| | | | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. U. S. DEPARTMENT OF JUSTICE served on 1/23/2018 (Downing, Kevin) (Entered: 01/24/2018) |
| 01/24/2018 | 12 | | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. ROBERT S. MUELLER, III served on 1/22/2018 (Downing, Kevin) Modified date of service on 1/25/2018 (znmw). (Entered: 01/24/2018) |
| 01/24/2018 | 13 | | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. ROD ROSENSTEIN served on 1/23/2018 (Downing, Kevin) (Entered: 01/24/2018) |
| 01/24/2018 | 14 | | ERRATA by PAUL J. MANAFORT, JR 3 Summons Returned Executed as to U.S. Attorney General. (Attachments: # 1 Corrected Proof of Service for Attorney General Sessions)(Downing, Kevin) (Entered: 01/24/2018) |
| 01/26/2018 | 15 | | MOTION to Intervene and Join by DAVID ANDREW CHRISTENSON (td) (Entered: 01/30/2018) |
| 02/02/2018 | 16 | | MOTION to Dismiss *for Failure to State a Claim Upon Which Relief Can Be Granted* by ROBERT S. MUELLER, III, ROD ROSENSTEIN, U. S. DEPARTMENT OF JUSTICE (Attachments: # 1 Memorandum in Support, # 2 Exhibit – Rosenstein Testimony, # 3 Text of Proposed Order)(Schwei, Daniel) (Entered: 02/02/2018) |
| 02/02/2018 | 17 | | SUPPLEMENTAL MEMORANDUM in support re 15 MOTION to Intervene filed by DAVID ANDREW CHRISTENSON. "Leave to file granted. Docket as Supplemental Memo in support of Motion to Intervene," signed by Amy B. Jackson on 02/02/2018 (Attachments: # 1 Exhibit)(jf) Modified on 2/6/2018 (znmw). (Entered: 02/05/2018) |
| 02/06/2018 | 18 | | Memorandum in opposition to re 9 MOTION to Intervene filed by ROBERT S. MUELLER, III, ROD ROSENSTEIN, U. S. DEPARTMENT OF JUSTICE. (Attachments: # 1 Text of Proposed Order)(Schwei, Daniel) (Entered: 02/06/2018) |
| 02/12/2018 | 20 | | MOTION for Protective Order filed by DAVID ANDREW CHRISTENSON. "Leave to file GRANTED. File as a Motion for Protective Order" signed by Judge Amy B. Jackson on 02/12/2018(zjf) Modified on 3/23/2018, unsealed pursuant to Minute Order filed 3/22/2018; (znmw). (Entered: 02/13/2018) |
| 02/13/2018 | 19 | | Memorandum in opposition to re 15 MOTION to Intervene filed by ROBERT S. MUELLER, III, ROD ROSENSTEIN, U. S. DEPARTMENT OF JUSTICE. (Attachments: # 1 Text of Proposed Order)(Motgi, Anjali) (Entered: 02/13/2018) |
| 02/13/2018 | 21 | | CERTIFICATE OF SERVICE re 19 Memorandum in opposition to re 15 MOTION to Intervene by ROBERT S. MUELLER, III, ROD ROSENSTEIN, U. S. DEPARTMENT OF JUSTICE . (Motgi, Anjali) Modified on 2/14/2018 to add docket link (jf). (Entered: 02/13/2018) |
| 02/13/2018 | 23 | | ERRATA re 17 Supplemental Memorandum, filed by DAVID ANDREW CHRISTENSON. "Leave to file GRANTED. Leave to file under seal denied since original pleading was not sealed" signed by Judge Amy B. Jackson on 02/13/2018 (jf) (Entered: 02/16/2018) |

| | | | |
|---|---|---|---|
| 02/14/2018 | 22 | | ORDER. Freedom Watch, Inc.'s 9 Motion to Intervene is hereby DENIED. See Order for details. SO ORDERED. Signed by Judge Amy Berman Jackson on 2/14/2018. (lcabj2) (Entered: 02/14/2018) |
| 02/16/2018 | 24 | | Memorandum in opposition to re 16 MOTION to Dismiss *for Failure to State a Claim Upon Which Relief Can Be Granted* filed by PAUL J. MANAFORT, JR. (Attachments: # 1 Text of Proposed Order)(Downing, Kevin) (Entered: 02/16/2018) |
| 02/20/2018 | 25 | | Unopposed MOTION for Extension of Time to File Response/Reply as to 16 MOTION to Dismiss *for Failure to State a Claim Upon Which Relief Can Be Granted* by ROBERT S. MUELLER, III, ROD ROSENSTEIN, U. S. DEPARTMENT OF JUSTICE (Attachments: # 1 Text of Proposed Order)(Schwei, Daniel) (Entered: 02/20/2018) |
| 02/20/2018 | | | MINUTE ORDER granting 25 Motion for Extension of Time to File Response/Reply. Defendants must file their reply by March 2, 2018. SO ORDERED. (lcabj2) (Entered: 02/20/2018) |
| 02/21/2018 | 26 | | ORDER. David Andrew Christenson's 15 motion to intervene is hereby DENIED. See Order for details. SO ORDERED. Signed by Judge Amy Berman Jackson on 2/21/2018. (lcabj2) (Entered: 02/21/2018) |
| 02/22/2018 | 27 | | LEAVE TO FILE DENIED– Eighth Supplemental Motion to Intervene and Join filed by David Andrew Christenson. This document is unavailable as the Court denied its filing. "Leave to file DENIED. Intervention motion has been denied" Signed by Judge Amy Berman Jackson on 02/22/2018. (jf) (Entered: 02/26/2018) |
| 02/27/2018 | 29 | | LEAVE TO FILE DENIED– Ninth Supplemental Motion to Intervene and Join filed by David A. Christenson. This document is unavailable as the Court denied its filing. "Leave to file DENIED. Received after motion to intervene was denied" Signed by Judge Amy Berman Jackson on 02/27/2018. (jf) (Entered: 03/05/2018) |
| 02/27/2018 | 30 | | MOTION to Unseal Document 20 Sealed Document filed by DAVID ANDREW CHRISTENSON by DAVID ANDREW CHRISTENSON. "Leave to file GRANTED As A Motion To Unseal Dkt. 20" signed by Amy B. Jackson on 02/27/2018 (jf) (Entered: 03/06/2018) |
| 03/02/2018 | 28 | | REPLY to opposition to motion re 16 MOTION to Dismiss *for Failure to State a Claim Upon Which Relief Can Be Granted* filed by ROBERT S. MUELLER, III, ROD ROSENSTEIN, U. S. DEPARTMENT OF JUSTICE. (Schwei, Daniel) (Entered: 03/02/2018) |
| 03/08/2018 | | | Set/Reset Hearings: A Motion's Hearing in this case is scheduled for Wednesday, April 4, 2018, at 10:00 AM in Courtroom 3 before Judge Amy Berman Jackson. (jth) (Entered: 03/08/2018) |
| 03/20/2018 | 31 | | LEAVE TO FILE DENIED– Emergency Motion to Intervene filed on behalf of all americans filed by David Andrew Christenson This document is unavailable as the Court denied its filing. "Leave to file DENIED. Movant has already been denied permission to intervene in this case and no further pleading may be docketed" Signed by Judge Amy Berman Jackson on 03/20/2018. (jf) (Entered: 03/26/2018) |

| | | |
|---|---|---|
| 03/22/2018 | | MINUTE ORDER granting 30 Motion to Unseal Document. The Clerk of Court is directed to unseal, and make available on the public docket, David Andrew Christenson's 20 motion for a gag order. SO ORDERED. Signed by Judge Amy Berman Jackson on 3/22/2018. (lcabj2) (Entered: 03/22/2018) |
| 03/29/2018 | 32 | LEAVE TO FILE DENIED– Writ of Mandamus and Prohibition submitted by David Andrew Christenson. This document is unavailable as the Court denied its filing. "Leave to file DENIED" Signed by Judge Amy Berman Jackson on 03/29/2018. (jf) (Entered: 04/02/2018) |
| 04/04/2018 | | Minute Entry for Proceedings held before Judge Amy Berman Jackson: Motion Hearing held on 4/4/2018 re: Defendants 16 MOTION to Dismiss *for Failure to State a Claim Upon Which Relief Can Be Granted*. The 16 Motion was Heard and Taken Under Advisement. (Court Reporter: Janice Dickman) (jth) (Entered: 04/04/2018) |
| 04/05/2018 | | MINUTE ORDER. The parties may submit supplemental memoranda, which may not exceed five pages, by April 11, 2018, addressing the question of whether the Court has subject matter jurisdiction over Count I now that plaintiff has withdrawn any claim for declaratory or injunctive relief relating to the pending indictments, and he seeks prospective relief, including an order "enjoining the Special Counsel's future ultra vires exercise of authority under" the Appointment Order. See Pl.'s Mem. of Law in Opp. to Defs.' Mot. to Dismiss [Dkt. # 24] at 11. SO ORDERED. Signed by Judge Amy Berman Jackson on 4/5/2018. (lcabj2) (Entered: 04/05/2018) |
| 04/05/2018 | 33 | TRANSCRIPT OF PROCEEDINGS before Judge Amy Berman Jackson held on April 4, 2018; Page Numbers: 1–55. Date of Issuance: April 4, 2018. Court Reporter/Transcriber Janice Dickman, Telephone number 202–354–3267, Transcripts may be ordered by submitting the <a href="http://www.dcd.uscourts.gov/node/110">Transcript Order Form</a><P></P><P></P>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<P>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<P></P> Redaction Request due 4/26/2018. Redacted Transcript Deadline set for 5/6/2018. Release of Transcript Restriction set for 7/4/2018.(Dickman, Janice) (Entered: 04/05/2018) |
| 04/11/2018 | 34 | SUPPLEMENTAL MEMORANDUM to re 16 MOTION to Dismiss *for Failure to State a Claim Upon Which Relief Can Be Granted*, Order,,, Set Deadlines,, *Regarding Plaintiff's Lack of Standing* filed by ROBERT S. MUELLER, III, ROD ROSENSTEIN, U. S. DEPARTMENT OF JUSTICE. (Schwei, Daniel) (Entered: 04/11/2018) |
| 04/11/2018 | 35 | SUPPLEMENTAL MEMORANDUM to re 16 MOTION to Dismiss *for Failure to State a Claim Upon Which Relief Can Be Granted Regarding Subject–Matter Jurisdiction* filed by PAUL J. MANAFORT, JR. (Downing, Kevin) (Entered: |

| | | | |
|---|---|---|---|
| | | | 04/11/2018) |
| 04/27/2018 | 36 | 35 | ORDER. Pursuant to Federal Rules of Civil Procedure 12 and 58, and for the reasons stated in the accompanying Memorandum Opinion, it is hereby ORDERED that defendants' 16 Motion to Dismiss is GRANTED. This is a final appealable order. SO ORDERED. Signed by Judge Amy Berman Jackson on 4/27/2018. (lcabj2) (Entered: 04/27/2018) |
| 04/27/2018 | 37 | 11 | MEMORANDUM OPINION. Signed by Judge Amy Berman Jackson on 4/27/2018. (lcabj2) (Entered: 04/27/2018) |
| 06/25/2018 | 38 | 8 | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 36 Order on Motion to Dismiss, 37 Memorandum & Opinion by PAUL J. MANAFORT, JR. Filing fee $ 505, receipt number 0090–5552917. Fee Status: Fee Paid. Parties have been notified. (Downing, Kevin) (Entered: 06/25/2018) |

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| PAUL J. MANAFORT, JR.,        ) | |
|        ) | |
|          *Plaintiff*,    ) | Civ. No. 1:18-CV-00011-ABJ |
|        ) | |
|       v.         ) | Judge Amy Berman Jackson |
|        ) | |
| UNITED STATES DEPARTMENT OF  ) | |
| JUSTICE, *et al.*,       ) | |
|        ) | |
|       *Defendants.*    ) | |
|        ) | |

## NOTICE OF APPEAL

Notice is hereby given that Plaintiff Paul J. Manafort, Jr. hereby appeals to the United States Court of Appeals for the District of Columbia Circuit from this Court's order and memorandum opinion in the above-captioned case, entered on the 27th day of April 2018 (Dkt. Nos. 36, 37), granting Defendants' motion to dismiss the Complaint, and from all rulings and orders merged therein, and all other underlying or related orders, rulings, and findings.

Dated:   June 25, 2018
         Washington, D.C.

Respectfully submitted,

/s/ Kevin M. Downing
Kevin M. Downing
(D.C. Bar #1013984)
601 New Jersey Avenue, N.W.
Suite 620
Washington, D.C.  20001
(202) 754-1992
kevindowning@kdowninglaw.com

/s/ Thomas E. Zehnle
Thomas E. Zehnle
(D.C. Bar #415556)
601 New Jersey Avenue, N.W.
Suite 620
Washington, D.C.  20001
(202) 368-4668
tezehnle@gmail.com

*Counsel for Paul J. Manafort, Jr.*

## CERTIFICATE OF SERVICE

I hereby certify that on June 25, 2018, I electronically filed the foregoing Notice of Appeal with the Clerk of the Court using the Court's ECF system, which will send notice of this filing to all parties.

/s/ Kevin M. Downing
Kevin M. Downing

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                        )
PAUL J. MANAFORT, JR.,                  )
                                        )
            Plaintiff,                  )
                                        )
      v.                                )          Civil Action No. 18-0011 (ABJ)
                                        )
U. S. DEPARTMENT OF JUSTICE, *et al.*,  )
                                        )
            Defendants.                 )
_____)

## MEMORANDUM OPINION

Plaintiff Paul J. Manafort Jr., who has been indicted in two criminal cases brought by the Office of Special Counsel, filed a civil complaint against the Department of Justice ("DOJ"), Special Counsel Robert S. Mueller III, and Acting Attorney General Rod J. Rosenstein, alleging that the Department exceeded its authority when it issued the order appointing the Special Counsel (the "Appointment Order"), and that the Special Counsel exceeded his authority as well. Compl. [Dkt. # 1]. Manafort has refined his claims since the case was originally filed, and in this civil case, he is only asking the Court to enjoin future actions against him under the Appointment Order. But as the D.C. Circuit has made clear, "[p]rospective defendants cannot, by bringing ancillary equitable proceedings, circumvent federal criminal procedure." *Deaver v. Seymour*, 822 F.2d 66, 71 (D.C. Cir. 1987). Therefore, defendants' motion to dismiss the complaint will be granted.

Count I of the complaint, brought against DOJ and the Acting Attorney General, alleges that the Acting Attorney General issued an Appointment Order that did not comport with the applicable DOJ regulation. *See* Compl. ¶¶ 50–59; 28 C.F.R. § 600.4. Therefore, according to Manafort, the grant of authority to the Special Counsel was an *ultra vires* action on the part of the Acting Attorney General in violation of the Administrative Procedure Act ("APA"). *See*

Compl. ¶¶ 50–59.  Count II, brought only against the Special Counsel, alleges that even if the Appointment Order was valid, the Special Counsel exceeded the scope of the authority he was given when he indicted Manafort, because the charges did not arise out of the investigation into the 2016 presidential election and the allegations of Russian interference in the election.  *Id.* ¶¶ 60–67.

Plaintiff seeks declaratory and injunctive relief.  The complaint requests "an order and judgment setting aside the Appointment Order and declaring it invalid," and it asks for "an order and judgment declaring *ultra vires* and setting aside all actions taken against Mr. Manafort pursuant to the Appointment Order," which would include the pending criminal indictments. Compl. at 17 ("Prayer for Relief"); *see also id.* ¶ 63 ("Mr. Mueller's actions must be set aside.").

On February 2, 2018, defendants filed a motion to dismiss the civil case pursuant to Federal Rule of Civil Procedure 12(b)(6).  Defs.' Mot. to Dismiss [Dkt. # 16] ("Defs.' Mot."); Defs.' Mem. in Supp. of Defs.' Mot. [Dkt. # 16-1] ("Defs.' Mem.").  They argue first that Manafort may not bring a federal civil action to interfere with his ongoing criminal prosecution.  Defs.' Mem. at 11–18.  Next, they contend that Count I should be dismissed for three reasons:  (1) the APA may only be invoked by claimants who do not have an adequate remedy at law, and Manafort has such a remedy in the Federal Rules of Criminal Procedure; (2) the Special Counsel regulations do not create legal rights that can be enforced through any lawsuit, including a civil suit brought under the APA; and (3) there has been no final agency action for purposes of the APA.  *Id.* at 11–28.  Defendants also argue that Count II fails to state a justiciable claim under the Declaratory

Judgment Act because the Act standing alone does not provide a basis for federal courts to exercise subject matter jurisdiction under Article III of the Constitution. *See id.* at 28–33.[1]

In the meantime, the Court set a motions schedule in the criminal case, and on March 14, 2018, Manafort filed a motion pursuant to Federal Rules of Criminal Procedure 12(b)(2) and 12(b)(3) to dismiss the indictment on the same two grounds: (1) because the appointment of the Special Counsel was an *ultra vires* act by the Acting Attorney General that was contrary to the terms of the DOJ Special Counsel regulations; and (2) because the indictment exceeds the scope of the authority granted to the Special Counsel in the Appointment Order. *United States v. Manafort*, No. 1:17-cr-201-1 (D.D.C. 2017), Def.'s Mot. to Dismiss the Superseding Indictment [Dkt. # 235] at 13–37. And on March 27, 2018, Manafort filed a similar motion to dismiss the indictment pending in the Eastern District of Virginia. *See United States v. Manafort*, No. 1:18-cr-83 (E.D. Va. 2018), Def.'s Mot. to Dismiss [Dkt. # 30]. While there is obvious overlap among the issues raised in the instant civil action and in the motions to dismiss the criminal cases, this opinion will not address, and should not be read as expressing any opinion about, the merits of those motions.

In any event, Manafort has significantly narrowed the scope of his civil case to reduce that overlap. In his opposition to the pending motion to dismiss, plaintiff appeared to back away from what seemed to be an unambiguous request that the Court deem the indictment to be invalid. When the complaint was filed, it alleged:

> The indictment raises stale allegations DOJ must have been aware of for nearly a decade; they are not matters that "arose from the investigation" into the 2016 election and alleged collusion with the Russian government. By ignoring the boundaries of the jurisdiction granted to the Special Counsel in

---

1       Plaintiff opposed the motion on February 16, 2018. Pl.'s Mem. of Law in Opp. to Defs.' Mot. [Dkt. # 24] ("Pl.'s Opp.). On March 2, 2018, defendants filed a reply. Defs.' Reply Mem. in Supp. of Defs.' Mot. [Dkt. # 28] ("Defs.' Reply").

the Appointment Order, Mr. Mueller acted beyond the scope of his authority. Mr. Mueller's actions must be set aside.

Compl. ¶ 63 (internal edits omitted); *see also* Prayer for Relief ¶ b (seeking "an order and judgment . . . setting aside all actions taken against Mr. Manafort pursuant to the Appointment Order"). But in a footnote to his opposition to defendants' motion to dismiss, plaintiff stated: "[t]o the extent the [c]omplaint can be read to seek dismissal of the indictment in the pending criminal case in this Court, Mr. Manafort expressly waives any such claim for relief in this civil case." Pl.'s Opp. at 11 n.2. At the hearing on the motion held on April 4, 2018, plaintiff disavowed any further interest in an order setting aside the indictments, *see* Tr. of Proceedings Held on Apr. 4 [Dkt. # 33] ("Tr.") at 7:12–20; *id.* at 10:10–13; *id.* at 11:11–14, and with that, he abandoned Count II. *Id.* at 10:14–16 ("The Court: So that means you're withdrawing Count Two? Mr. Downing: We are, Your Honor."). Thus, the only claim that is pending for purposes of this motion is Count I against the Department of Justice and the Acting Attorney General under the APA, and plaintiff has emphasized that with that claim, he seeks only "prospective relief: an order declaring invalid the *ultra vires* Appointment Order and enjoining the Special Counsel's future *ultra vires* exercise of authority under that Order." Pl.'s Opp. at 11; *see also* Tr. at 7:22–25; *id.* at 8:21–23.

Moreover, counsel further clarified at the hearing that plaintiff is not seeking an order setting aside the Appointment Order in its entirety; rather, he is only seeking to invalidate paragraph (b)(ii), which grants the Special Counsel the authority to investigate "any matters that arose or may arise directly from the investigation." Tr. at 9:12–10:9; *see also* Ex. A to Compl. [Dkt. # 1-1] ("Appointment Order").

But a civil case is not the appropriate vehicle for taking issue with what a prosecutor has done in the past or where he might be headed in the future. It is a sound and well-established principle that a court should not exercise its equitable powers to interfere with or enjoin an ongoing

4

criminal investigation when the defendant will have the opportunity to challenge any defects in the prosecution in the trial court or on direct appeal. Therefore, the Court finds that this civil complaint must be dismissed. The conclusion that this is the necessary outcome is reinforced by the requirement in the sole statute that plaintiff invokes – the Administrative Procedure Act – that a claimant may only seek relief under the Act if he lacks an adequate remedy at law. Plaintiff's claims about the legitimacy of the Appointment Order can be addressed in his criminal cases in accordance with the Federal Rules of Criminal Procedure, so the Court should not reach the merits of those claims here. Moreover, given the way plaintiff has re-characterized and altered his civil complaint to overcome these obstacles to the Court's exercise of its jurisdiction, it is not at all clear that there is any ripe, justiciable controversy left in this lawsuit for the Court to resolve, and there are certainly no allegations of impending irreparable harm that would justify injunctive relief.

<div align="center">**BACKGROUND**</div>

## I.    Regulatory Framework

As a general matter, litigation on behalf of the United States is "reserved to officers of the Department of Justice, under the direction of the Attorney General." 28 U.S.C. § 516. But Congress has expressly authorized the Attorney General to appoint Special Counsel. Section 515(a) of Title 28 of the United States Code provides:

> The Attorney General or any other officer of the Department of Justice, or any attorney specially appointed by the Attorney General under law, may, when specifically directed by the Attorney General, conduct any kind of legal proceeding, civil or criminal . . . which United States attorneys are authorized by law to conduct . . . .

28 U.S.C. § 515(a).

DOJ has promulgated a set of regulations that outline circumstances under which the Attorney General may appoint a Special Counsel and the procedure for doing so. The regulations

also describe the scope of a Special Counsel's authority and the nature of the ongoing relationship between a Special Counsel and DOJ. *See* 28 C.F.R. §§ 600.1–600.10. In his complaint, Manafort points to one of these regulations in particular.

The regulation that forms the basis for this lawsuit provides that the Special Counsel's original jurisdiction "shall be established by the Attorney General," 28 C.F.R. § 600.4(a), and that the "Special Counsel will be provided with a specific factual statement of the matter to be investigated." *Id.* The "original jurisdiction" of the Special Counsel also includes "the authority to investigate and prosecute federal crimes committed in the course of, and with intent to interfere with, the Special Counsel's investigation." *Id.*

Under the terms of this regulation, the Special Counsel may seek "additional jurisdiction" from the Attorney General "beyond that specified in his or her original jurisdiction" if the Special Counsel concludes that it "is necessary in order to fully investigate and resolve the matters assigned, or to investigate new matters that come to light in the course of his or her investigation." *Id.* § 600.4(b). At that point, the Attorney General "will determine whether to include the additional matters within the Special Counsel's jurisdiction or assign them elsewhere." *Id.*

## II.    **Factual Background**

The complaint alleges that by "early 2017, DOJ had publicly revealed that it was investigating allegations that President Trump's campaign colluded with Russian government officials and/or representatives to sway the outcome of the 2016 presidential election." Compl. ¶ 27.

The Director of the FBI at the time, James B. Comey, testified about the investigation in a hearing before the House Permanent Select Committee on Intelligence on March 20, 2017. He stated:

> I have been authorized by the Department of Justice to confirm that the FBI, as part of our counterintelligence mission, is investigating the Russian government's efforts to interfere in the 2016 presidential election, and that includes investigating the nature of any links between individuals associated with the Trump campaign and the Russian government and whether there was any coordination between the campaign and Russia's efforts.

James B. Comey, *HPSCI Hearing Titled Russian Active Measures Investigation*, FBI.gov (March 20, 2017), https://www.fbi.gov/news/testimony/hpsci-hearing-titled-russian-active-measures-investigation/layout_view.[2] Former Director Comey also specifically informed the Committee that "[a]s with any counterintelligence investigation, this will also include an assessment of whether any crimes were committed." *Id.* But he explained, "[b]ecause it is an open, ongoing investigation and is classified, I cannot say more about what we are doing and whose conduct we are examining." *Id.*

On March 2, 2017, Attorney General Jeff Sessions recused himself from the matter, and Deputy Attorney General Rod J. Rosenstein became the highest-ranking DOJ official with authority over the investigation. Compl. ¶¶ 28–29. On May 17, 2017, Acting Attorney General Rosenstein appointed Robert S. Mueller III to serve as Special Counsel for the Department of Justice. *Id.* ¶ 30.

---

[2] In evaluating the sufficiency of the complaint, the Court may consider "the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997). That includes the Court's ability to take judicial notice of "public record information." *Jankovic v. Int'l Crisis Grp.*, 494 F.3d 1080, 1088 (D.C. Cir. 2007); *see also Al-Aulaqi v. Panetta*, 35 F. Supp. 3d 56, 67–68 (D.D.C. 2014).

The Appointment Order states:

> By virtue of the authority vested in me as Acting Attorney General, including 28 U.S.C. §§ 509, 510, and 515, in order to discharge my responsibility to provide supervision and management of the Department of Justice, and to ensure a full and thorough investigation of the Russian government's efforts to interfere in the 2016 presidential election, I hereby order as follows:
>
> > (a) Robert S. Mueller III is appointed to serve as Special Counsel for the United States Department of Justice.
> >
> > (b) The Special Counsel is authorized to conduct the investigation confirmed by then-FBI Director James B. Comey in testimony before the House Permanent Select Committee on Intelligence on March 20, 2017, including:
> >
> > > (i) any links and/or coordination between the Russian government and individuals associated with the campaign of President Donald Trump; and
> > >
> > > (ii) any matters that arose or may arise directly from the investigation; and
> > >
> > > (iii) any other matters within the scope of 28 C.F.R. § 600.4(a).
> >
> > (c) If the Special Counsel believes it is necessary and appropriate, the Special Counsel is authorized to prosecute federal crimes arising from the investigation of these matters.
> >
> > (d) Sections 600.4 through 600.10 of Title 28 of the Code of Federal Regulations are applicable to the Special Counsel.

Appointment Order.

As part of the Special Counsel's investigation, plaintiff Manafort was indicted on October 27, 2017 in the United States District Court for the District of Columbia, and he was charged with twelve counts. Compl. ¶ 45; *see also* Indictment, Ex. B to Compl. [Dkt. # 1-2]. A five count superseding indictment was filed on February 16, 2018. *United States v. Manafort*, No. 17-cr-201-1 (D.D.C. 2017), Superseding Indictment [Dkt. # 201]. Manafort has also been indicted in the United States District Court for the Eastern District of Virginia and charged with thirty-two

counts. *See United States v. Manafort*, No. 1:18-cr-83 (E.D. Va. 2018), Superseding Indictment [Dkt. # 9].

## STANDARD OF REVIEW

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When considering a motion to dismiss under Rule 12(b)(6), the Court is bound to construe a complaint liberally in the plaintiff's favor, and it should grant the plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions. *See id.*; *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). In ruling upon a motion to dismiss for failure to state a claim, a court may consider "the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *St. Francis Xavier Parochial Sch.*, 117 F.3d at 624.

Subject matter jurisdiction is also an issue in this case, and the party invoking federal jurisdiction bears the burden of establishing it. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Since the elements of standing "are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof." *Id.* "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice," since the court "presumes that general allegations embrace those specific facts that are necessary to support the

9

19

claim." *Id.*, quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990). In considering jurisdiction, the Court "can elicit information outside the pleadings. This permits the court to undertake an independent investigation to assure itself of its own subject matter jurisdiction." *Haase v. Sessions*, 835 F.2d 902, 908 (D.C. Cir. 1987).

<div align="center">

**ANALYSIS**

</div>

**I.**     **Plaintiff may not use a civil action as a vehicle to attack a criminal prosecution.**

In *Younger v. Harris*, 401 U.S. 37 (1971), the Supreme Court invoked the longstanding public policy against federal court interference in state court proceedings, and it held that a threat of criminal prosecution does not rise to the level of harm that could justify injunctive relief. "The imminence of such a prosecution even though alleged to be unauthorized and hence unlawful is not alone ground for relief in equity which exerts its extraordinary powers only to prevent irreparable injury to the plaintiff who seeks its aid." *Id.* at 46, quoting *Beal v. Mo. Pac. R.R. Corp.*, 312 U.S. 45, 49 (1941).

The Court recited the reasons behind the policy: "[o]ne is the basic doctrine of equity jurisprudence that courts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief." *Id.* at 43–44. Second, the Court observed that "[t]his underlying reason for restraining courts of equity from interfering with criminal prosecutions is reinforced by an even more vital consideration, the notion of 'comity,' that is, a proper respect for state functions." *Id.* at 44.

While the *Younger* decision was thus animated, in part, by considerations of federalism, and the notion that state courts should review state statutes in the first instance, *see* 401 U.S. at 45,

<div align="center">

10

</div>

53, in the end, the Court emphasized: "our holding rests on the absence of the factors necessary under equitable principles to justify federal intervention." *Id.* at 54.

The D.C. Circuit has since applied this reasoning to hold that in light of traditional equitable principles, and concerns about finality, the subject of a criminal investigation may not bring a civil action to attack an impending federal prosecution either, and those precedents govern this case.

In *Deaver v. Seymour*, a former White House official who was the subject of an investigation being pursued by an independent counsel appointed under the Ethics in Government Act was informed that the independent counsel was about to ask the grand jury to return an indictment. 822 F.2d 66, 67 (D.C. Cir. 1987). The next day, he brought a civil action for declaratory and injunctive relief that would stay the prosecution while he challenged the constitutionality of the independent counsel's authority. *Id.* at 67–68. The trial court denied the motion for a preliminary injunction, and the D.C. Circuit affirmed. *Id.* at 68. The Court said: "[e]ven were we disposed to agree entirely with appellant's constitutional argument, we think he has no right to an injunction restraining a pending indictment in a federal court." *Id.*

The Court quoted the holding in *Younger v. Harris* "that the 'cost, anxiety, and inconvenience of having to defend against a single criminal prosecution' are not recognized as irreparable injuries justifying an equitable remedy." *Deaver*, 822 F.2d at 69, quoting *Younger*, 401 U.S. at 46. It observed that "[a]lthough it is surely true that an innocent person may suffer great harm to his reputation and property by being erroneously accused of a crime, all citizens must submit to a criminal prosecution brought in good faith so that larger societal interests may be preserved." *Id.* The Court went on to explain that it was for those reasons that "the Supreme Court has upheld federal injunctions to restrain state criminal proceedings only where the threatened prosecution chilled exercise of First Amendment rights." *Id.*

11

The next question to be resolved, then, was whether the *Younger* principle should be applied in a federal case involving a federal prosecution. *See Deaver*, 822 F.2d at 69. The Court acknowledged that it had recently stated in *Juluke v. Hodel*, 811 F.2d 1553, 1556–57 (D.C. Cir. 1987) that the *Younger* doctrine did not necessarily control in that situation. *Deaver*, 822 F.2d at 69. But it did not view the observation in *Juluke* as an impediment to dismissing Deaver's case. The Court reported that it could find no prior case in which a federal court had enjoined a federal prosecutor's investigation or presentment of an indictment. *Id.* More important, the Court recognized that a federal defendant will be afforded an opportunity under Federal Rule of Criminal Procedure 12(b) to move to dismiss an indictment based on defects in the prosecution. *Id.* at 70. It found that the very existence of the rule suggested that Deaver's challenge "is not to be raised in a preindictment civil injunctive action." *Id.*

> This implication is strengthened by the traditional reluctance . . . of an equity court to interfere with criminal proceedings. And we think the limited appealability of district court orders denying pretrial motions in criminal cases makes the implication that Deaver cannot bring this Rule 12(b)(1)-type claim to our court inescapable.

*Id.*

> For all of these reasons, the D.C. Circuit came to a clear and unequivocal conclusion:

> Congress has established a comprehensive set of rules governing federal criminal prosecutions – the Federal Rules of Criminal Procedure. These rules provide adequate, although limited, opportunities for defendants to challenge shortcomings in prosecutorial authority. . . . We cannot allow Deaver to avoid these rules – and thereby encourage a flood of disruptive civil litigation – by bringing his constitutional defense in an independent civil suit.

*Id.* at 71.

Manafort's situation falls squarely within the scope of this ruling, particularly since he has disavowed any interest in seeking the dismissal of the pending indictments through this action. Like Deaver, he is seeking injunctive relief to stop an ongoing investigation based on a concern

that he may suffer reputational harm or be forced to expend resources in his own defense in the future. *See id.* at 67–68; Pl.'s Suppl. Mem. of Law Regarding Subject-Matter Jurisdiction [Dkt. # 35] ("Pl.'s Suppl. Mem.") at 5 ("Without the relief sought by Count I, Mr. Manafort will continue to face the brunt of the Special Counsel's *ultra vires* authority, including additional search warrants, subpoenas, and possible indictments. Postponing review will thus result in onerous hardships for Mr. Manafort."). And as in *Deaver*, plaintiff's request for relief is predicated on a challenge to the legality of the grant of authority to the prosecutor. *See Deaver*, 822 F.2d at 67; Compl. ¶ 52. Manafort does not allege that his ability to exercise any constitutional right will be infringed while an investigation proceeds, so there is no basis to invoke an exception to the *Younger* principle. *See Deaver*, 822 F.2d at 71. And a ruling on the legitimacy of the prosecution in the context of this civil case would give rise to the same concerns about finality articulated by the *Deaver* Court.

Manafort argues that he is more similar to the plaintiffs whose cases went forward in *Juluke* than he is to Deaver. In *Juluke*, there were three cases consolidated for review by the Court of Appeals: separate appeals by two individuals who were criminally convicted of violating federal regulations governing demonstrations in front of the White House, and an appeal of a different trial court's decision to deny a temporary restraining order and enter judgment against those individuals, and two others, in a civil action seeking to enjoin the enforcement of the same regulations in the future. 811 F.2d at 1554. The government took the position that *Younger* supplied grounds for the dismissal of the appeal of the civil case, relying on the general principle that the validity of the regulations could be decided in the criminal case. *Id.* But the D.C. Circuit rejected that approach, distinguishing the case before it from one involving an attempt to enjoin an ongoing prosecution.

> [T]his is not the relief that the [appellants] sought. The appellants wished to continue their demonstration on the White House sidewalk, but faced almost certain prosecution in the future if they were to do so. Thus, they sought to enjoin *future* arrests for violations of the . . . regulations. They never sought to enjoin the existing prosecutions. Nor could adjudication of the criminal cases afford them adequate relief.

811 F.2d at 1557 (emphasis in original). Thus, the Court found that it was appropriate for the lower court to consider the claims for injunctive relief, at least as to the two protesters who were not already criminally charged. *Id.*

The fact that Manafort has narrowed his approach to focus only on future investigative steps by the Special Counsel does not cure the problem with his civil complaint or align him with the *Juluke* claimants planning future demonstrations. Unlike those individuals, Manafort does not allege that he faces a certain risk if he engages in future conduct, and he certainly does not allege that he will face prosecution if he engages in constitutionally protected conduct. His case involves an attempt to restrain the future activities of the prosecutor, so it is not at all analogous to the *Juluke* situation.

Manafort also directs the Court to language in the *Juluke* opinion that emphasizes the importance of concerns of federalism to the *Younger* decision. Pl.'s Opp. at 11, citing *Juluke*, 811 F.2d at 1156 ("*Younger*, at its core, is a case about the proper relationship between federal and state courts."). But the *Juluke* opinion predated the *Deaver* opinion; the *Deaver* Court was plainly aware of those observations, *see* 822 F.2d at 69; and since *Deaver*, the D.C. Circuit has been consistent in its teaching that *Younger* may be applied even where no issues concerning states' rights are at stake.

In *Jarkesy v. SEC*, 803 F.3d 9, 12 (D.C. Cir. 2015), the Court affirmed the dismissal of a civil lawsuit seeking to terminate a pending SEC administrative enforcement action brought under the Constitution and the Administrative Procedure Act. The Court wrote:

14

> True, *Younger* abstention is grounded in considerations of federalism not implicated here. But the rule derives from "the basic doctrine of equity jurisprudence that courts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury."

*Id.* at 26, quoting *Younger*, 401 U.S. at 43–44. And in *In re Al-Nashiri*, 835 F.3d 110, 117–18 (D.C. Cir. 2016), *cert. denied*, 138 S. Ct. 354 (2017), the Court affirmed the district court's decision to deny a habeas petitioner's motion to preliminarily enjoin his upcoming trial as an "enemy combatant" before a military commission and to hold his petition in abeyance until the criminal trial was complete. The Court quoted *Deaver* and *Jarkesy* and concluded, "[t]hus, where the issue the petitioner challenges can be litigated in pretrial motions and raised as a defense at trial, federal courts typically require the petitioner to navigate that process instead of skirting it." 835 F. 3d at 118.[3] Manafort has provided no reason for the Court to deviate from these principles, so his civil case will be dismissed.

## II. Count I under the APA must be dismissed since plaintiff has an adequate remedy at law.

Even if one focuses solely on the statutory basis for plaintiff's claim rather than equitable principles, Count I fails for very similar reasons.

The criminal motions and the civil action seek different relief: the invalidation of past action – the indictment – on the one hand, and a bar on future action on the other. But both ask the Court to make precisely the same determination: that the provision in the Appointment Order authorizing the Special Counsel to pursue "any matters that arose or may arise directly from the investigation" is invalid, and that the Special Counsel has no power to investigate Manafort under that provision. Thus, as the Court of Appeals observed in *Deaver*, 822 F.2d at 72, Manafort has

---

3 The *Younger* abstention doctrine was also extended by the Supreme Court to the context of military court-martial proceedings in *Schlesinger v. Councilman*, 420 U.S. 738, 756–57, 761 (1975), notwithstanding the absence of federalism concerns.

an adequate remedy at law in the form of his pending motions to dismiss or future motions to dismiss, and the lone remaining count in the civil complaint will be dismissed based on this essential requirement of the APA in addition to the *Younger* doctrine.

The Administrative Procedure Act provides for judicial review of "final agency action" only when "there is no other adequate remedy in a court." 5 U.S.C. § 704. This section of the APA "reflects Congress' judgment that 'the general grant of review in the APA' ought not 'duplicate existing procedures for review of agency action' or 'provide additional judicial remedies in situations where Congress has provided special and adequate review procedures.'" *Citizens for Responsibility and Ethics in Wash. ("CREW") v. DOJ*, 846 F.3d 1235, 1244 (D.C. Cir. 2017), quoting *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988).

"When considering whether an alternative remedy is 'adequate' and therefore preclusive of APA review," courts look for "'clear and convincing evidence' of 'legislative intent' to create a special, alternative remedy and thereby bar APA review." *CREW*, 846 F.3d at 1244, quoting *Garcia v. Vilsack*, 563 F.3d 519, 523 (D.C. Cir. 2009). "For example, where Congress has provided 'an independent cause of action or an alternative review procedure,'" courts have "found clear markers of legislative intent to preclude." *CREW*, 846 F.3d at 1245, citing *El Rio Santa Cruz Neighborhood Health Ctr. v. HHS*, 396 F.3d 1265, 1270 (D.C. Cir. 2005). Thus, in *CREW*, the D.C. Circuit held that the Freedom of Information Act ("FOIA") offers an "adequate remedy" within the meaning of section 704 "despite some mismatch between the relief sought" under the APA and "the relief available" under FOIA. 846 F.3d at 1246.

But, "[a]n alternative remedy will not be adequate under § 704 if the remedy offers only 'doubtful and limited relief.'" *Garcia*, 563 F.3d at 522, quoting *Bowen*, 487 U.S. at 901. And so, in the *Bowen* case, the Supreme Court concluded that the ability to obtain monetary relief in the

United States Claims Court was not the kind of "'special and adequate review procedure' that will oust a district court of . . . jurisdiction under the APA" since reviewability of a decision by the Claims Court was "doubtful," and the Claims Court lacked equitable powers to grant prospective relief. 487 U.S. at 904–05.

The D.C. Circuit has emphasized that because section 704 only requires an adequate alternative, "'the alternative remedy need not provide relief *identical* to relief under the APA' in order to have preclusive effect." *CREW*, 846 F.3d at 1245 (emphasis in original), quoting *Garcia*, 563 F.3d at 522. Rather, an alternative remedy need only offer relief of "the same genre" to preclude APA review. *El Rio*, 396 F.3d at 1272; *see CREW*, 846 F.3d at 1246 (dismissing APA claim even though relief under FOIA was not the same as relief under the APA); *Garcia*, 563 F.3d at 525 (affirming the dismissal of an APA claim in part because the alternative remedy offered "declaratory and injunctive relief against the agency itself, in addition to money damages," which was superior to relief that could be obtained under the APA).

Thus, "[t]he relevant question under the APA . . . is not whether" one lawsuit is "as effective as an APA lawsuit," but whether the remedy provided through alternative legal means is adequate. *Garcia*, 563 F.3d at 525.[4] Here, the Federal Rules of Criminal Procedure offer plaintiff precisely the kind of alternative relief that precludes duplicative APA review.

---

[4] The *Garcia* Court observed that an action for discrimination "against individuals may be adequate even if such actions 'cannot redress the systemic lags and lapses by federal monitors' and even if such suits . . . may be . . . less effective in providing systemic relief [] than continuing judicial oversight." 563 F.3d at 525, quoting *Women's Equity Action League v. Cavazos*, 906 F.2d 742, 751 (D.C. Cir. 1990). "This is because . . . 'situation-specific litigation affords an adequate, even if imperfect remedy.'" *Id.*, quoting *Women's Equity Action League*, 906 F.2d at 751 (explaining that third-party suits are an adequate remedy for alleged victims of statutory violations such as discrimination because they provide relief "of the same genre" as that offered by an APA claim).

Federal Rule of Criminal Procedure 12(b)(3) permits a defendant to file a motion to dismiss his indictment based on "a defect in instituting the prosecution." Fed. R. Crim. P. 12(b)(3)(A). Because Manafort is currently a defendant in a pending criminal case before the Court, he has been granted the opportunity to bring a motion challenging his prosecution, and he has already exercised that right by filing a motion advancing the very concerns set forth in the instant complaint. That motion has been fully briefed, and it was argued before this Court on April 19, 2018.

Plaintiff argues that the motion he filed in his criminal case does not provide an adequate remedy at law because the criminal rules do not contemplate prospective relief, and "do not provide any mechanism to address the potentially perpetual exercise of *ultra vires* authority." Pl.'s Opp. at 32. He maintains that he should be permitted to pursue this parallel civil action because the "broadest relief that [he] could secure in the pending criminal suit against him is dismissal of that single proceeding." *Id.*

But as the authorities set forth above demonstrate, the law does not require that a claimant must be able to obtain an identical remedy elsewhere, as long as the legal avenue available to him provides an "adequate" one. Further, there is no "yawning gap" between the relief Rule 12 affords and the relief plaintiff seeks under the APA. *See CREW*, 846 F.3d at 1246. If the Court grants Manafort's motion to the dismiss the indictment in the criminal case on the grounds that the Appointment Order exceeded the Acting Attorney General's authority, Manafort will have achieved the primary objective of this lawsuit: the issuance of an order to that effect. *See* Tr. at 18 ("But I do know if I get an order here, and you say that the jurisdiction as exercised to date is beyond the scope of the appointment order and in violation of the regs, now we have something in hand to go and stop the special counsel when they issue a grand jury subpoena in an ongoing

investigation; we can move to quash. We'll have an order that says the scope has been exceeded, and that is the difference.").

Furthermore, Manafort acknowledges that if the Special Counsel pursues additional charges against him under the challenged portion of the Appointment Order in the future, he will have the ability to challenge those prosecutions individually. *See* Pl.'s Opp. at 32. While a series of orders dismissing one indictment at a time is a different form of relief than a blanket order enjoining all future prosecutions, the remedies are certainly "of the same genre."

## III. It appears that the Court lacks subject matter jurisdiction over the only portion of the complaint plaintiff has asked it to consider.

Finally, the Court notes that it is not at all clear that there is a case or controversy to be heard in the wake of the surgery that plaintiff has performed on his own complaint. The only aspect of this case that is left standing is Manafort's effort to forestall unspecified and as yet unknown future developments in the Special Counsel investigation, and a claim of that nature, where the harm is purely speculative, raises significant standing and ripeness issues.

There was no question that the Court had subject matter jurisdiction over Count I of the complaint at the time it was filed, and plaintiff has not filed an amended complaint.[5] But after plaintiff truncated his action at the hearing, the Court invited the parties to submit supplemental memoranda "addressing the question of whether the Court has subject matter jurisdiction over Count I now that plaintiff has withdrawn any claims for declaratory or injunctive relief relating to

---

[5] Count II, which plaintiff has withdrawn, would have failed for lack of the subject matter jurisdiction required before a federal court may hear a case since it was predicated solely on the Declaratory Judgment Act which does not supply an independent basis for federal jurisdiction. *Ali v. Rumsfeld*, 649 F.3d 762, 778 (D.C. Cir. 2011) (dismissing plaintiffs' claim under the Declaratory Judgment Act because they had "not alleged a cognizable cause of action and therefore ha[d] no basis upon which to seek declaratory relief" since the Act does not "provide a cause of action" or an "independent source of federal jurisdiction"), quoting *C&E Servs., Inc. of Wash. v. D.C. Water & Sewer Auth.*, 310 F.3d 197, 201 (D.C. Cir. 2002).

the pending indictments, and he seeks prospective relief, including an order 'enjoining the Special Counsel's future *ultra vires* exercise of authority under' the Appointment Order." Min. Order (Apr. 5, 2018).

Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citation omitted); *see also Gen. Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004) ("As a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction."). "[S]ubject matter jurisdiction may not be waived, and . . . courts may raise the issue *sua sponte*." *NetworkIP, LLC v. FCC*, 548 F.3d 116, 120 (D.C. Cir. 2008), quoting *Athens Cmty. Hosp., Inc. v. Schweiker*, 686 F.2d 989, 992 (D.C. Cir. 1982). Thus, Federal Rule of Civil Procedure 12(h)(3) provides that a district court must dismiss a complaint when it is evident that it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3).

"To state a case or controversy under Article III, a plaintiff must establish standing." *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 133 (2011), citing *Allen v. Wright*, 468 U.S. 737, 751 (1984); *see also Lujan*, 504 U.S. at 560. Standing is a necessary predicate to any exercise of federal jurisdiction, and if it is lacking, then the dispute is not a proper case or controversy under Article III, and federal courts have no subject-matter jurisdiction to decide the case. *Dominguez v. UAL Corp.*, 666 F.3d 1359, 1361 (D.C. Cir. 2012). The plaintiff bears the burden of establishing standing, *Lujan*, 504 U.S. at 561, and he must demonstrate that (1) he has suffered an "injury-in-fact"; (2) the injury is "fairly traceable to the challenged action of the defendant"; and (3) it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 560–61, quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42

20

(1976) (internal edits omitted); *see also Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. Inc.*, 528 U.S. 167, 180–81 (2000).

To allege the first element of standing, injury-in-fact, a plaintiff must show that he has "suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016), quoting *Lujan*, 504 U.S. at 560. In a case alleging future harm, this means that the "threatened injury must be *certainly impending* to constitute injury in fact." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (emphasis in original), quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990); *see also Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*, 489 F.3d 1279, 1293 (D.C. Cir. 2007) (observing that the injury must be "certainly impending and immediate – not remote, speculative, conjectural, or hypothetical").[6]

While Manafort has identified harm he has suffered by virtue of the indictments that are already pending, *see* Pl.'s Suppl. Mem. at 3, now that he is not predicating his claim on those events, but rather on what might befall him in the future, it does not appear that he has identified any harm that is actual or imminent, and not hypothetical. Indeed, there are no factual allegations in the complaint related to possible future prosecutions.

Plaintiff likens himself to the *Juluke* plaintiffs, but this case does not allege that Manafort's own conduct will be chilled in any way by the possibility of future prosecution. *Compare Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2342–46 (2014) (holding that the plaintiffs established standing by alleging their intent to engage in political speech, which was arguably proscribed by statute, and the substantial threat of future administrative and criminal enforcement

---

6    The Supreme Court has observed that in some instances standing may be established "based on a 'substantial risk' that the harm will occur." *Clapper*, 568 U.S. at 414 n.5.

of the statute against them), and *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128–29 (2007) (concluding that a licensee was not required to terminate or breach license agreement prior to seeking declaratory judgment of patent invalidity because a live case or controversy existed due to the fact that its actions were "effectively coerced"), *with Clapper*, 568 U.S. at 412 (finding that respondents' theory of future injury was too speculative to satisfy the requirement that threatened injury must be "certainly impending" because the challenged statute at most "authorizes – but does not mandate or direct – the surveillance that respondents fear," so respondents' allegations "are necessarily conjectural"), and *United Presbyterian Church v. Reagan*, 738 F.2d 1375, 1378–80 (D.C. Cir. 1984) (determining that plaintiffs had no standing where the challenged policy "issues no commands or prohibitions . . . and sets forth no standards governing [private] conduct").

And even if Manafort can overcome the fairly low threshold of the injury-in-fact inquiry, an action that is limited to future action by the Special Counsel can hardly be deemed to be ripe. "The ripeness doctrine generally deals with when a federal court can or should decide a case. Part of the doctrine is subsumed into the Article III requirement of standing, which requires a petitioner to allege *inter alia* an injury-in-fact that is 'imminent' or 'certainly impending.'" *Am. Petroleum Inst. v. EPA*, 683 F.3d 382, 386 (D.C. Cir. 2012); *see also Lujan*, 504 U.S. at 560 (holding injury-in-fact must be "actual or imminent"). But "[e]ven if a case is 'constitutionally ripe,' . . . there may also be 'prudential reasons for refusing to exercise jurisdiction.'" *Am. Petroleum Inst.*, 638 F.3d at 386, quoting *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003). As the D.C. Circuit has explained:

> The fundamental purpose of the ripeness doctrine is "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties."

*Sprint Corp. v. FCC*, 331 F.3d 952, 957 (D.C. Cir. 2003), quoting *Nat'l Park Hosp. Ass'n*, 538 U.S. at 807–08.

While the constitutional aspect of ripeness may involve the same impending injury-in-fact requirement that is necessary for standing, the prudential aspect of ripeness requires more: a court must "balance[] 'the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'" *Nat'l Treasury Emps. Union v. United States*, 101 F.3d 1423, 1427–28 (D.C. Cir. 1996), quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967). The fitness of an issue for judicial decision depends on whether there are "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–81 (1985), quoting 13A Charles Alan Wright et al., *Federal Practice and Procedure* § 3532 (3d ed. 1984); *see Nat'l Treasury Emps. Union*, 101 F.3d at 1431 (holding that the case was not "fit[] for judicial review" because the facts upon which the case's resolution depended were not "fully crystalized") (citation omitted); *see also Sprint Corp.*, 331 F.3d at 956 ("Fitness of the issues for judicial decision is more likely to be found where 'the issue tendered is a purely legal one.'"), quoting *Abbott Labs.*, 387 U.S. at 149.

Since it is not clear at this point what actions, if any, the Special Counsel will take with respect to Manafort, and whether those future actions will be subject to attack for the same reasons set forth in the complaint, prudential considerations weigh against hearing an action to prohibit them now.

23

For all of these reasons, Manafort's civil case will be dismissed, and his concerns regarding the Special Counsel's investigation will be taken up in the criminal case.

A separate order will issue.

_Amy B Jach_

AMY BERMAN JACKSON
United States District Judge

DATE: April 27, 2018

| | |
|---|---|
| PAUL J. MANAFORT, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 18-0011 (ABJ) |
| | ) |
| U. S. DEPARTMENT OF JUSTICE, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## ORDER

Pursuant to Federal Rules of Civil Procedure 12 and 58, and for the reasons stated in the accompanying Memorandum Opinion, it is hereby

**ORDERED** that defendants' Motion to Dismiss [Dkt. # 16] is **GRANTED**. This is a final appealable order.

**SO ORDERED**.

Amy B Jack

AMY BERMAN JACKSON
United States District Judge

DATE: April 27, 2018

35